**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD TARGGART, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NEXT BRIDGE HYDROCARBONS, INC., KEN RICE, GEORGE PALIKARAS, ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, and GREGORY MCCABE,<br><br>　　　　　　　　　　Defendants. | Case No.:  1:24-cv-1927<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff Todd Targgart ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of documents filed by Next Bridge Hydrocarbons, Inc. ("NBH" or the "Company") with the United States Securities and Exchange Commission ("SEC"), wire and press releases, analyst reports and news articles, information readily obtainable on the Internet, and other available material and data. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**I.　NATURE OF THE ACTION**

　　1.　　This is a federal securities class action on behalf all persons or entities that acquired shares of NBH in connection with the Company's spin-off from Meta Materials, Inc.

("Meta Materials") on or around December 14, 2022, and were damaged as a result thereof (the "Class"). Plaintiff, on behalf of the Class, pursues remedies under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§77k, 77o (the "Securities Act").

2. NBH dates back several years to an earlier company named Torchlight Energy Resources, Inc. ("Torchlight"). Torchlight was an oil and gas company that operated primarily in the Orogrande Basin in West Texas under the control of Defendant Gregory McCabe.

3. In June 2021, Torchlight merged into a Canadian company named Metamaterial Technologies Inc. ("Metamaterial"). In connection with the merger, legacy Torchlight shareholders received shares of non-voting Meta Materials preferred stock (the "Preferred Stock"). The Preferred Stock corresponded to the oil and gas assets that Metamaterial acquired from Torchlight during the merger. Holders of the Preferred Stock would be entitled to receive either proceeds from the sale of the oil and gas assets or, if the assets were not sold by a certain date, equity in a spin-off entity created to take ownership of the assets.

4. Meta Materials did not sell the legacy Torchlight oil and gas assets and, consequently, proceeded with spinning off the oil and gas assets into NBH. To effectuate the spin-off, on July 14, 2022, NBH filed a registration statement on Form S-1 with the SEC, followed by several amendments and a final prospectus (collectively, the "Registration Statement"). The Registration Statement became "effective" on November 18, 2022.

5. On December 14, 2022, Meta Materials completed the spin-off of the oil and gas assets to NBH and, as a result, holders of Meta Materials' Preferred Stock received new shares in NBH pursuant to the Registration Statement (the "Spin-Off").

6. The Registration Statement contained untrue statements of a material fact and/or omitted to state material facts to make the statements therein not misleading. The Registration

Statement also violated specific disclosure provisions within Regulation S-K, which *inter alia* dictate what must be disclosed by issuers in registration statements. Consequently, Defendants violated Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§77k, 77o.

7. Shareholders who received NBH shares as a result of the Registration Statement and Spin-Off have been damaged as a result of Defendants' violations of the Securities Act.

## II. JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v(a)).

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 22 of the Securities Act (15 U.S.C. § 77v(a)).

11. NBH's shares are not publicly traded and are not eligible for electronic transfer. Upon information and belief, the majority of NBH's shares at all relevant times have been in the possession of NBH's transfer and distribution agent, Equiniti Trust Company, LLC f/k/a American Stock Transfer & Trust Company LLC (the "Transfer Agent"). The Transfer Agent and the majority of NBH's shares are located within this Judicial District.

12. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III. PARTIES

13. Plaintiff Todd Targgart acquired NBH shares pursuant and traceable to the

Registration Statement and suffered damages as a result thereof.

14. Defendant NBH describes itself as an energy company engaged in the development of oil and gas properties in the United States. It was incorporated in the State of Nevada on August 31, 2021, and operated as a subsidiary of Meta Materials prior to the Spin-Off. Subsequent to the Spin-Off, NBH operates independently from Meta Materials. NBH currently maintains its principal executive offices at 6300 Ridglea Place, Suite 950, Fort Worth, Texas.

15. Defendant Ken Rice ("Rice") was NBH's Chairman and Chief Financial Officer when the Registration Statement was initially filed. Rice signed the Registration Statement. Rice also served as Meta Materials' Chief Financial Officer. Rice resigned from NBH following the Spin-Off.

16. Defendant George Palikaras ("Palikaras") was NBH's President when the Registration Statement was initially filed. Palikaras signed the Registration Statement. Palikaras also served as Meta Materials' Chief Executive Officer. Palikaras resigned from NBH following the Spin-Off.

17. Defendant Robert L. Cook ("Cook") was one of NBH's directors when the Registration Statement was initially filed. Cook signed the Registration Statement. Cook also served as a director of NBH after the Spin-Off.

18. Defendant Clifton DuBose, Jr. ("DuBose") was NBH's Chief Executive Officer and Chairman of the Board of Directors prior to and/or after the Spin-Off. Prior to the Spin-Off, DuBose was an employee of Hudspeth Operating, LLC, which was one of NBH's subsidiaries. DuBose was 40 years old at the time of the Spin-Off.

19. Defendant Joseph DeWoody ("DeWoody") was NBH's President and one of its directors after the Spin-Off. Prior to the Spin-Off, DuBose was an employee of Hudspeth

4

Operating, LLC, which was one of NBH's subsidiaries. DeWoody was 40 years old at the time of the Spin-Off.

20. Defendant Lucas T. Hawkins ("Hawkins") was NBH's Chief Financial Officer after the Spin-Off. Hawkins was 36 years old at the time of the Spin-Off.

21. Defendant Delvina Oelkers ("Oelkers") was NBH's Chief Operating Officer after the Spin-Off. Oelkers was 36 years old at the time of the Spin-Off. Prior to the Spin-Off, Oelkers was an employee of Hudspeth Operating, LLC, which was one of NBH's subsidiaries.

22. Defendant Mia Pitts ("Pitts') was a director of NBH after the Spin-Off. Pitts was 38 years old at the time of the Spin-Off.

23. Defendant Kristin Whitley ("Whitley") was one of NBH's directors after the Spin-Off. Whitley was 38 years old at the time of the Spin-Off.

24. Defendant Gregory McCabe ("McCabe") was Chairman of Torchlight's Board of Directors before its merger with Metamaterial. McCabe owned approximately 13.5% of Meta Materials' common stock following the merger. Historically, McCabe has owned and/or controlled the majority of the oil and gas assets owned initially by Torchlight and now by NBH.

25. Defendants Rice, Palikaras, Cook, DuBose, DeWoody, Hawkins, Oelkers, Pitts, Whitley, and McCabe are sometimes referred to herein collectively as the "Individual Defendants." The Individual Defendants together with NBH are collectively, in whole or in part, referred to herein as the "Defendants."

## IV. BACKGROUND

26. Torchlight began operations in the oil and gas industry in 2010. It described its business model as one "focus[ed] on drilling and working interest programs within the United States that have a short window of payback, a high internal rate of return and proven and bookable

reserves. We currently have only one interest in an oil and gas project, the Marcelina Creek Field Development . . . . We anticipate being involved in multiple other oil and gas projects moving forward, pending adequate funding."

27. Between May and August 2020, Torchlight participated in discussions with several entities interested in a reverse-merger. In total, Torchlight engaged in negotiations with five companies. In each instance, the negotiations failed due to issues relating to Torchlight's disposition or sale of its oil and gas assets prior to the consummation of any transaction or disagreements over the valuation of the merging entity.

28. In September 2020, Torchlight's external investor relations representative, who had been monitoring Torchlight's efforts to pursue strategic alternatives, suggested that representatives of Torchlight have a virtual meeting with Palikaras. On September 4, 2020, McCabe and Torchlight's CEO at the time, John Brda, held a virtual meeting with Palikaras after which they signed a confidentiality agreement and proceeded to negotiate the structure for a transaction.

29. Similar to Torchlight's previous negotiations, issues arose concerning Torchlight's oil and gas assets, specifically "[Metamaterial's] desire that Torchlight divest the O&G Assets [oil and gas assets], the anticipated impact of that divestiture on Torchlight's market capitalization prior to closing the transaction (which the parties were using to determine Torchlight's valuation), the appropriate method for valuing the O&G Assets, and how the value of the O&G Assets should be allocated between each party's legacy stockholder base." According to the definitive proxy statement for the merger, these issues were resolved as follows:

> [Metamaterial] then suggested that the parties structure the transaction so that all of the value of the O&G Assets would be allocated to the legacy Torchlight stockholders, and on that basis agree on the pro forma ownership percentage of the Combined Company that would be allocated to each party's legacy stockholder

base. This proposal was attractive to Torchlight because it provided Torchlight with flexibility with respect to eventual divestiture of the O&G Assets (including the ability to structure and consummate the divestiture after the closing of the transaction with [Metamaterial]), while also ensuring that the value obtained in the divestiture would benefit investors in Torchlight's legacy oil and gas business, and providing those investors with a substantial ownership percentage of [Metamaterial's] business on an ongoing basis (which would have a large stockholder base and access to additional capital). The parties agreed to move forward on this basis, and after substantial negotiation, arrived at the 75%/25% ownership split described elsewhere in this proxy statement, with the ultimate Exchange Ratio generally subject to adjustment for shares issued by either company for its own benefit prior to the closing of the transaction to maintain the agreed ownership split.

30. On December 14, 2020, Metamaterial and Torchlight executed their agreement (referred to as the "Arrangement Agreement") memorializing the terms of the merger. In substance, the Arrangement Agreement was a reverse takeover of Torchlight by Metamaterial in order to facilitate a listing on the NASDAQ and broad access to the U.S. capital markets. Pursuant to the Arrangement Agreement, once Torchlight indirectly acquired all Metamaterial shares, the combined company would be renamed "Meta Materials Inc." and continue Metamaterial's operations.

31. Concurrent with the negotiation and execution of the Arrangement Agreement was the Certificate of Designation of Preferences, Rights and Limitations of the Series A Preferred Stock (the "Certificate of Designation"). Pursuant to the Certificate of Designation, upon a sale of Torchlight's oil and gas assets, the proceeds from any such transaction would be distributed to the Preferred Stock stockholders, or Meta Materials would pursue a spin-off.

32. On June 28, 2021, Metamaterial and Torchlight completed the merger, as described and agreed to in the Arrangement Agreement. In conjunction with the finalization of the merger, the combined company (*i.e.*, Meta Materials) declared a dividend that provided Torchlight's shareholders as of June 24, 2021 (*i.e.*, the record date) with shares of the Preferred

Stock on a one-for-one basis.

33. Meta Materials and/or Torchlight did not ultimately sell the oil and gas assets. Consequently, Meta Materials proceeded with the Spin-Off.

34. From October 2021 to December 2022, the Preferred Stock traded on over-the-counter markets under the ticker symbol "MMTLP".

35. On December 14, 2022, Meta Materials completed the Spin-Off and distributed NBH's equity to the Preferred Stock shareholders as of December 12, 2022 (*i.e.*, the record date). In total, Meta Materials distributed 165,472,241 shares of NBH to the Preferred Stock shareholders.

36. Immediately prior to the completion of the Spin-Off, McCabe owned and/or beneficially controlled 19,605,348 shares of Preferred Stock. Immediately following the Spin-Off, McCabe owned 12,826,492 shares of NBH. Upon information and belief, McCabe liquidated approximately 6.7 million shares of Preferred Stock on the eve of the Spin-Off. The Preferred Stock traded between $2.90 per share and $11.65 per share during the month before the Spin-Off (the average price was $8.15 per share). Consequently, McCabe's sale of Preferred Stock just prior to the Spin-Off resulted in proceeds of between $19.6 million and $78.9 million.

## V. THE REGISTRATION STATEMENT

37. The Registration Statement was negligently prepared and contained false statements of material fact or omitted to state other facts necessary to make the statements made not false or misleading.

38. In the Registration Statement, NBH represented in its financial statements that its oil and gas assets were worth:

- $45,663,480 as of December 31, 2021;

- $46,747,755 as of March 31, 2022; and
- $47,293,607 as of September 30, 2022.

39. NBH's oil and gas assets were not worth the amounts listed in the immediately preceding paragraph. In truth, NBH's oil and gas assets were at all relevant times substantively worthless.

40. NBH's predecessor parent company, Meta Materials, continuously tracked the value of the oil and gas assets and had full access to all relevant valuation information. Following the Spin-Off, Meta Materials reported in its filings with the SEC that the value of the oil and gas assets as of the date of the Spin-Off was "not substantive" and therefore increased its reserves on notes payable by NBH to Meta Materials that had historically been secured by the oil and gas assets.

41. In addition to the foregoing, the Registration Statement violated Item 404 of Regulation S-K, 17 C.F.R. §229.404, by failing to disclose required information pertaining to NBH's transactions with Masterson Hazel Partners, LP ("MHP"), including but not limited to the fact that DuBose serves as CEO of MHP's General Partner, Masterson Hazel Management, LLC, and DuBose's interest in the transactions.

## VI. CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons or entities that acquired shares of NBH in connection with the Company's spin-off from Meta Materials on or around December 14, 2022, and were damaged as a result thereof (previously defined as the "Class"). Excluded from the Class are Defendants, NBH's current and former officers and directors, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and

9

any entity in which the Individual Defendants have or had a controlling interest.

43. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by NBH or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

44. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

46. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a) whether Defendants violated the Securities Act;

    b) whether statements made by Defendants to the investing public in the Registration Statement misrepresented material facts about the business and operations of NBH; and

    c) to what extent the members of the Class have sustained damages and the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 11 of the Securities Act Against All Defendants

48. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

49. This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

50. The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51. The Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

52. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

53. By reason of the conduct herein alleged, each Defendant named herein violated, and/or controlled a person who violated, Section 11 of the Securities Act.

54. Plaintiff acquired NBH shares pursuant and/or traceable to the Registration Statement.

55. Plaintiff and the Class have sustained damages.

56. When they acquired their NBH shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action. Less than three years elapsed between the time that the securities upon which this count is brought were offered to the public and the time Plaintiff commenced this action.

## COUNT II

### Violation of Section 15 of the Securities Act Against the Individual Defendants

57. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

58. This count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against the Individual Defendants.

59. The Individual Defendants each were control persons of NBH by virtue of their positions as directors and/or senior officers of NBH immediately prior to the IPO. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of NBH.

60. The Individual Defendants were critical to effecting the Spin-Off, based on their signing and/or their authorization of the signing of the Registration Statement, by participating to execute the Spin-Off, and by having otherwise directed through their authority the processes leading to execution of the Spin-Off.

61. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding damages to Plaintiff and members of the Class pursuant to Section 11 of the Securities Act;

C. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

E. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: March 15, 2024　　　　　　　　　　　　**LEVI & KORSINSKY, LLP**

　　　　　　　　　　　　　　　　　　　　　　　/s/ Adam M. Apton
　　　　　　　　　　　　　　　　　　　　　　　Adam M. Apton
　　　　　　　　　　　　　　　　　　　　　　　33 Whitehall Street, 17th Floor
　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10004
　　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 363-7500
　　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 363-7171

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Todd Targgart*