## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **TODD TARGGART, individually and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 4:24-cv-00767-P** |
| **NEXT BRIDGE HYDROCARBONS, INC., et al.,** | § § § | |
| **Defendants.** | § § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**O'MELVENY & MYERS LLP**

Kristin Cope
State Bar No. 24074072
kcope@omm.com

2501 North Harwood Street, Suite 1700
Dallas, TX 75201-1663
Tel.: (972) 360-1900
Fax: (972) 360-1901

Abby F. Rudzin (*pro hac vice*)
arudzin@omm.com

1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Tel.: (212) 326-2000
Fax: (212) 326-2061

**WICK PHILLIPS GOULD & MARTIN LLP**

David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Paul T. Elkins
State Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788
Fax: (817) 332-7789

*Attorneys for Defendants Next Bridge Hydrocarbons, Inc.,*
*Robert L. Cook, Clifton Dubose, Jr., Joseph DeWoody, Lucas T. Hawkins,*
*Delvina Oelkers, Mia Pitts, Kristin Whitley, and Gregory McCabe*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

 A. The Defendants ...................................................................................... 3

 B. The Registration Statement ..................................................................... 4

  1. Oil and gas assets on the balance sheet.................................... 4

  2. Next Bridge's Audit Committee ................................................. 5

  3. The Option Agreement .............................................................. 5

  4. Cautionary Statement and Risk Factors..................................... 6

 C. Next Bridge's Subsequent SEC filings ..................................................... 7

 D. Procedural History ................................................................................... 7

ARGUMENT ..................................................................................................................... 8

I. Plaintiffs lack standing to bring their claims. ..................................................... 9

II. Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not subject to Section 11. .......... 12

III. The Registration Statement was not false or misleading. .................................... 12

 A. The Registration Statement did not misstate the value of the oil and gas
  properties................................................................................................ 13

  1. The Registration Statement did not state what the oil and gas
   properties "were worth." ........................................................... 13

  2. The Registration Statement warned investors that a lease
   cancellation could affect the value of the oil and gas properties. ........... 14

  3. Any valuation would be an inactionable opinion statement. .................. 17

 B. The Registration Statement did not materially misrepresent the quality
  of the future Audit Committee. .............................................................. 19

 C. Next Bridge did not have to disclose additional details about the Option
  Agreement................................................................................................ 20

IV. Plaintiffs' Section 15 claim fails........................................................................ 22

CONCLUSION................................................................................................................. 24

CERTIFICATE OF SERVICE ............................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*In re AFC Enter., Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) ..................................................................... 12

*Ahders v. SEI Private Tr. Co.*,
  982 F.3d 312 (5th Cir. 2020) ................................................................................... 23

*In re Alamosa Holdings, Inc.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2005) ................................................................... 10

*In re BankAmerica Corp. Sec. Litig.*,
  78 F. Supp. 2d 976 (E.D. Mo. 1999) ....................................................................... 16

*Braun v. Eagle Rock Energy Partners, L.P.*,
  223 F. Supp. 3d 644 (S.D. Tex. 2016) ..................................................................... 16

*In re Browning-Ferris Indus. Inc. Sec. Litig.*,
  876 F. Supp. 870 (S.D. Tex. 1995) ......................................................................... 14

*Denning v. Bond Pharmacy, Inc.*,
  50 F.4th 445 (5th Cir. 2022) ..................................................................................... 9

*Dennis v. Gen. Imaging, Inc.*,
  918 F.2d 496 (5th Cir. 1990) .............................................................................. 23, 24

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ..................................................................... 23

*In re Fannie Mae 2008 Sec. Litig.*,
  742 F. Supp. 2d 382 (S.D.N.Y. 2010) ..................................................................... 14

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
  53 F. Supp. 3d 882 (E.D. La. 2014) ......................................................................... 16

*Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
  951 F. Supp. 2d 479 (S.D.N.Y. 2013) ..................................................................... 15

*In re Francesca's Holdings Corp. Sec. Litig.*,
  No. 13-CV-6882, 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ........................... 21

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011) ..................................................................... 24

*In re Gen. Elec. Co. Sec. Litig.*,
  856 F. Supp. 2d 645 (S.D.N.Y. 2012) ..................................................................... 17

*Heck v. Triche*,
  775 F.3d 265 (5th Cir. 2014) .................................................................... 23

*Hippocratic Med. v. Food & Drug Admin.*,
  2023 WL 2913725 (5th Cir. Apr. 12, 2023) ............................................... 9

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) ..................................................... 18

*In re Jiangbo Pharm., Inc. Sec. Litig.*,
  884 F. Supp. 2d 1243 (S.D. Fla. 2012) ..................................................... 21

*Kane Enter. v. Macgregor (USA) Inc.*,
  322 F.3d 371 (5th Cir. 2003) ...................................................................... 9

*Kapps v. Torch Offshore*,
  379 F.3d 207 (5th Cir. 2004) .................................................................... 15

*Kounitz v. Slaaten*,
  901 F. Supp. 650 (S.D.N.Y. 1995) .............................................................. 9

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) .................................................................... 11

*In re Levi Strauss & Co. Sec. Litig.*,
  527 F. Supp. 2d 965 (N.D. Cal. 2007) ...................................................... 11

*McFarland v. Memorex Corp.*,
  493 F. Supp. 631 (N.D. Cal. 1980) ........................................................... 12

*Metz v. United Cntys. Bancorp.*,
  61 F. Supp. 2d 364 (D.N.J. 1999) ............................................................ 10

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
  761 F.3d 1109 (10th Cir. 2014) ................................................................ 18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................... 14, 17, 18

*In re Plains All. Am. Pipeline, L.P. Sec. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. 2018) ...................................................... 22

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  245 F. Supp. 3d 870 (S.D. Tex. 2017) ................................................ 13, 20

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ............................................................. 19

*In re Pretium Res. Inc. Sec. Litig.*,
    256 F. Supp. 3d 45 (S.D.N.Y. 2017).....................................................................17

*In re Reliant Sec. Litig.*,
    No. H-02-1810, 2004 WL 7347565 (S.D. Tex. Jan. 16, 2004)..................................12

*In re Safety-Kleen Corp.*,
    2002 WL 32349819 (D.S.C. Mar. 27, 2002) ...........................................................11

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)...............................................................................11, 12

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ...............................................................................22

*Stephens v. Uranium Energy Corp.*,
    No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) .................................21

*Truk Int'l Fund LP v. Wehlmann*,
    737 F. Supp. 2d 611 (N.D. Tex. 2009) .......................................................3, 15, 17

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d, 193 (S.D.N.Y. 2020)....................................................................15

*XOMA Corp. Sec. Litig.*,
    1990 WL 357807 (N.D. Cal. Dec. 27, 1991).............................................................12

*Yaroni v. Pintec Tech. Holdings Ltd.*,
    600 F. Supp. 3d 385 (S.D.N.Y. 2022).....................................................................14

**Statutes**

15 U.S.C. § 77k(a) ............................................................................................12, 13

15 U.S.C. § 77k(e) ................................................................................................10

15 U.S.C. § 77k(g) .................................................................................................9

15 U.S.C. § 77l...................................................................................................10

15 U.S.C. § 77l(a)(2)..............................................................................................13

**Regulations**

17 C.F.R. § 229.404(a)............................................................................................20

## INTRODUCTION

Apparently unhappy with the performance of Next Bridge Hydrocarbons, Inc., Plaintiffs have concocted a Securities Act claim that is inconsistent with the facts, the law, and common sense. Plaintiffs' primary complaint is that dollar figures attributable to oil and gas properties on Next Bridge's balance sheets in offering documents were not a true reflection of the properties' "value" or "worth." But Plaintiffs were told that the figures were derived from *costs*, and Plaintiffs do not allege that they did not accurately reflect the *costs* associated with those properties. Plaintiffs note that Next Bridge subsequently wrote down the assets on its balance sheets—though not the balance sheets published in the offering documents. But it is well-settled that changes in accounting judgment do not make earlier judgments incorrect. And the impairment resulted from a potential mineral lease expiration—a risk that Next Bridge had warned investors about repeatedly in the offering documents. In any event, asset valuations are classic opinion statements, which are actionable as misstatements only in very limited circumstances that Plaintiffs have not alleged here.

Plaintiffs tack on to their claim two other alleged misstatements, but neither has legs. First, Plaintiffs complain that the offering documents misstated the capabilities of the Audit Committee because the balance sheets were erroneous. Putting aside that the balance sheets were not, in fact, erroneous, the allegedly misdescribed Audit Committee *did not even exist* at the time the balance sheets were prepared or published. Second, Plaintiffs assert that Next Bridge should have disclosed additional details about a related-party transaction. A plain reading of the governing regulation, however, shows that Next Bridge had no obligation to disclose the transaction at all, let alone further details about it.

But Plaintiffs do not even have standing to set foot in the courthouse because they have no compensable injury. Section 11 of the Securities Act caps Plaintiffs' damages at Next Bridge's

offering price and permits recovery for only a specific injury: the difference between the amount Plaintiffs paid and the value of Next Bridge stock when Plaintiffs filed suit. The offering price was $0—so Plaintiffs did not pay anything for their Next Bridge stock—meaning their maximum damages are $0 and they can show no possible diminution in value. To the extent Plaintiffs say they "paid" for their Next Bridge stock by losing their shares in Next Bridge's former parent, Meta Materials, Inc., Plaintiffs only gave up the right to profit from a specific set of oil and gas properties, with the Next Bridge stock they received giving them the right to profit from the *same* set of oil and gas properties. There is no difference, so they have no cognizable injury under Section 11. Section 12, meanwhile, requires Plaintiffs to have sold or tendered their Next Bridge shares before they can recover any damages, and Plaintiffs do not plead that they have taken either action. So they likewise have no cognizable injury under Section 12. Plaintiffs' Section 11 claim against three of the individual Defendants likewise does not make it out of the gate because the plain language of the statute does not make them proper defendants.

Plaintiffs spill much ink describing Next Bridge's corporate history and complaining about various aspects of earlier transactions and public statements. They insert color pictures of various tweets and maps that are not relevant to, much less supportive of, their narrow claim based on allegedly false or misleading statements in Next Bridge's offering documents. Aspersions, innuendo, and fancy graphics do not substitute for factual allegations that establish standing and show a material misstatement in the offering documents. Plaintiffs' complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

This recitation of facts is taken from the Amended Complaint and Next Bridge's SEC filings so that the Court can consider "the full text of documents partially quoted in the complaint; the contents of relevant disclosure documents required to be filed with the SEC; the contents of

documents integral to the complaint; and documents actually filed with the SEC, even if they are not mentioned in the complaint." *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 616 (N.D. Tex. 2009) (McBryde, J.) (cleaned up).

### A.    The Defendants

Next Bridge is an oil and gas development company headquartered in Fort Worth, Texas. (AC ¶ 15.)  It dates back to a company named Torchlight Energy Resources, Inc.  (*Id.* ¶ 2). Torchlight was an oil and gas company that merged with Meta Materials, Inc., in June 2021. (*Id.* ¶ 3.)  In connection with the merger, Torchlight shareholders received shares of non-voting Meta preferred stock—not registered to be publicly traded—that "corresponded to the oil and gas assets that historically belonged to Torchlight." (*Id.*)  Holders of the preferred shares were entitled to receive proceeds from the sale of the Torchlight oil and gas assets or, if the sale was not completed by a certain date, equity in a spin-off entity holding the assets. (*Id.*)  Next Bridge is that entity, which Meta spun off in December 2022.  (*Id.* ¶ 5.)  The Next Bridge shares were issued pursuant to a Registration Statement & Prospectus filed on July 15, 2022 (Ex. A (collectively, the "Registration Statement")) and subsequently amended.  (*Id.* ¶ 4.)[1]  The shares were distributed to the holders of the Meta preferred stock on December 14, 2022.  (*Id.* ¶ 35.)

The individual Defendants include various Next Bridge current and former executives. Robert Lance Cook was a Next Bridge director before the spin-off and signed the Registration Statement.  (AC ¶ 16.)  Clifton Dubose, Jr., was employed by a Next Bridge subsidiary before the spin-off and became Next Bridge's Chief Executive Officer and Chairman of its Board of Directors after the spin-off.  (*Id.* ¶ 17.)  Joseph DeWoody and Delvina Oelkers were also employed by a Next Bridge subsidiary before the spin-off and subsequently served as Next Bridge officers after

---

[1] The Amended Complaint incorrectly stated the filing date as July 14, 2022.  (AC ¶ 4.)

the spin-off.  (*Id.* ¶¶ 19–20.)  Lucas T. Hawkins, Mia Pitts, and Kristin Whitley did not have positions before the spin-off but became Next Bridge officers or directors after the spin-off.  (*Id.* ¶¶ 18, 21–22.)  Plaintiffs have also named as a Defendant Gregory McCabe, though he held no position at Next Bridge before or immediately after the spin-off, only becoming a Next Bridge director in June 2023.  (*Id.* ¶ 23; App. 423.)

## B.    The Registration Statement

While it was still a Meta subsidiary, Next Bridge filed the Registration Statement and its amendments.  (AC ¶ 4.)  Plaintiffs complain about statements on three different topics in the Registration Statement.  (*Id.* ¶ 6.)

### 1.    Oil and gas assets on the balance sheet

Plaintiffs complain about a line item for "oil and natural gas properties" on Next Bridge's balance sheet as reported in the Registration Statement.  (AC ¶¶ 6(a), 81.)  The initial Registration Statement included Next Bridge's "Consolidated Balance Sheets" as of December 31, 2021, and March 31, 2022.  They include a line item for "Oil and natural gas properties," with figures of $45,663,470 and $46,747,755, respectively.  (*See* App. 102.)  A Final Prospectus was filed on November 18, 2022.  (Ex. B (Next Bridge Hydrocarbons, Inc., Amended Prospectus, filed November 18, 2022) (App. 131-263).)  The Final Prospectus gives the figure for "oil and natural gas properties" as of September 30, 2022, as $47,293,607.  (App. 237.)[2]  In both documents, the notes to the financial statements explain that for the "oil and natural gas properties," Next Bridge uses the full-cost method of accounting.  (*See, e.g.,* App. 089; *see also* App. 187-88; App. 192.)  This means that the costs of "exploration and development activities are capitalized as properties and equipment" for balance sheet purposes.  (App. 188; App. 192.)  The notes repeat these figures

---

[2]  This figure is also provided in the November 9 amended registration statement.  Interim amendments also contained the balance sheet as of June 30, 2022, but Plaintiffs do not complain about those figures.

in a separate table just for the oil and natural gas properties, describing the figures as "the capitalized costs for oil & natural gas properties of the Company":

| Date | Oil and Natural Gas Properties |
|------|-------------------------------|
| December 31, 2021 | $45,663,470 |
| March 31, 2022 | $46,747,755 |
| September 30, 2022 | $47,293,607 |

(*See* App. 111; App. 248.)

### 2.    Next Bridge's Audit Committee

Plaintiffs complain about the Registration Statement's description of Next Bridge's Audit Committee.   (AC ¶ 6(b).)   The Registration Statement described what Next Bridge's audit committee would look like after the spin-off, naming the individuals who would join the committee "upon their appointment to the Board." (*Id.* ¶ 83.)  The Registration Statement also explained that the individuals were qualified to sit on the Audit Committee and what its functions would be.  (*See id.*)

### 3.    The Option Agreement

Plaintiffs allege a regulatory violation based on the Registration Statement's alleged failure to disclose a related-party transaction that Plaintiffs refer to as the "Option Agreement." (AC ¶ 6(c); ¶¶ 89–90.)  But Plaintiffs concede that the Option Agreement was described in the Registration Statement.  (*See id.* ¶ 90.)  And it was listed in the Final Prospectus under the heading "Transactions with Stockholder Gregory McCabe" in the "Certain Relationships and Related Party Transactions" section.  (App. 206.)

On August 13, 2020, two Next Bridge subsidiaries entered into the Option Agreement (amended in September 2020) with Masterson Hazel Partners, LP ("MHP") and McCabe

Petroleum Company ("MPC").   (App. 095; App. 230; App. 249.)   MHP's general partner, Masterson Hazel Management LLC, was jointly owned by McCabe Petroleum Corporation and another entity.  (AC ¶ 93.)  The Option Agreement obligated MHP to drill and complete "at its sole cost and expense" wells that would satisfy the continuous development obligations for the "Hazel Project."  (AC ¶ 90.)  In exchange, MHP had the option to purchase the entire Hazel Project. (*Id.*)   If MHP exercised the option to buy the Hazel Project, then MPC agreed to "reduce its reversionary interest burdening Torchlight's proportionate interest in the Hazel Project . . . from 20% to not more than 12.5%."  (Ex. C (Option Agreement, dated August 13, 2020) (App. 266).) If MHP declined to exercise the option to buy the Hazel Project, then Next Bridge would be obligated to reimburse MHP for its drilling costs to the extent that the wells that MHP drilled produced revenues.  (App. 019; App. 206–07.)  The Final Prospectus disclosed the transaction as a related-party transaction, explaining that MPC was owned by Mr. McCabe.   (App. 206.) Plaintiffs allege that Mr. McCabe also held an interest in MHP that was not disclosed.  (AC ¶ 93.)

### 4.  Cautionary Statement and Risk Factors

At the beginning of the Registration Statement and the Final Prospectus, Next Bridge included a "Cautionary Statement Concerning Forward-Looking Statements."   (App. 004–05 (emphasis removed); App. 133–34 (same).)  The documents also described various "risk factors" for the Company.  (*See* App. 014–31; App. 143–61.)  One such risk factor:  "Our acreage must be drilled before lease expiration in order to hold the acreage by production.  In the highly competitive market for acreage, failure to drill sufficient wells in order to hold acreage will result in a substantial lease renewal cost, or if renewal is not feasible, loss of our lease and prospective drilling opportunities."  (App. 016; App. 146.)  Next Bridge further explained:

> ***In the event that we fail to meet our drilling obligations*** in the Orogrande Basin, whether because we are unable to obtain additional capital when required or otherwise, or if production ceases in the Midland Basin, ***our leases will expire***.  If

we have to renew such leases on new terms, we could incur significant cost increases, and we may not be able to renew such leases on commercially reasonable terms or at all. In addition, on certain portions of our acreage, third-party leases may become immediately effective if our leases expire. As such, our actual drilling activities may materially differ from our current expectations, which could adversely affect our business.

(App. 016; App. 146 (emphasis added).)

### C.     Next Bridge's Subsequent SEC filings

On March 31, 2023, Next Bridge filed its 2022 Annual Report on Form 10-K. (Ex. D (Next Bridge Hydrocarbons, Inc., 2022 Annual Report on Form 10-K, filed March 31, 2023) (App. 272–348).) It identified the carrying value on its balance sheet for the oil and gas assets as of December 31, 2022, as $79,695,928—an increase from the numbers in the Registration Statement, presumably because Next Bridge had incurred additional costs during the remainder of 2022 to develop the oil and gas wells. (*See* App. 331.)

On July 17, 2024, Next Bridge filed its 2023 Annual Report on Form 10-K. (Ex. E (Next Bridge Hydrocarbons, Inc., 2023 Annual Report on Form 10-k, filed July 17, 2024) (App. 350–668).) Among other things, it restated Next Bridge's consolidated financial statements for the year ending December 31, 2022. (*See* App. 352.) The Company explained that in looking at the financials for the year ended December 31, 2023, it found that "[a] triggering event" had occurred—namely, "the potential expiration of [an] underlying mineral lease." (*Id.*) Because "there was no assurance that the mineral lease would, in fact, be renewed before December 31, 2024," Next Bridge decided "to impair 100% of the carrying value of the Company's oil and natural gas assets as of December 31, 2022." (*Id.*)

### D.     Procedural History

On March 15, 2024, Plaintiff Todd Targgart filed an initial complaint in the Eastern District of New York, alleging violations of Sections 11 and 15 of the Securities Act on behalf of persons

or entities that acquired Next Bridge stock in connection with the Meta spin-off.  (*See* ECF No. 1.)  On August 3, that Court appointed Mr. Targgart, Steven Martinez, and Mohammad Limon as Lead Plaintiffs.  (ECF No. 22.)  On August 12, the case was transferred to this Court.  (ECF No. 28.)

Plaintiffs filed the Amended Complaint on September 9, 2024.  (ECF No. 41.)  Plaintiffs again bring their action on behalf of a putative class of persons or entities that acquired Next Bridge's common stock in connection with Next Bridge's spin-off from Meta.  (*Id.* ¶ 95.)  Plaintiffs continue to assert violations of Sections 11 and 15 of the Securities Act and also now allege a violation of Section 12(a)(2) of the Securities Act.  (*See id.* ¶¶ 115–54.)

Plaintiffs base their claims on three allegedly misleading statements.  First, Plaintiffs allege that the Registration Statements incorrectly state that Next Bridge's oil and gas properties "were worth" the figures on Next Bridge's balance sheets.  (AC ¶¶ 6(a), 81.)  Second, Plaintiffs allege that "the Registration Statement misstated . . . NBH and its Audit Committee's ability to present accurate financial statements."  (*Id.* ¶ 6(b).)  Third, Plaintiffs allege that the Registration Statement did not disclose sufficient "[i]nformation required under Item 404 of Regulation S-K concerning a related-party transaction."  (*Id.* ¶ 6(c).)

## ARGUMENT

Plaintiffs' claims fail for several reasons.  First, Plaintiffs lack Article III standing to invoke this Court's jurisdiction, because they cannot show a cognizable injury under the Securities Act.  Second, Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not subject to Section 11 liability at all.  Third, Plaintiffs fail to adequately allege any false or misleading statements in the offering documents.  Fourth, Plaintiffs' Section 15 claims fail for lack of a primary violation and because Plaintiffs fail to plead facts suggesting that any of the Individual Defendants were control persons.  The complaint should be dismissed in its entirety.

## I.  Plaintiffs lack standing to bring their claims.

To have Article III standing, Plaintiffs must plead, among other things, that they have suffered an injury that can be redressed by a favorable judicial decision.  *See Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451–52 (5th Cir. 2022) (affirming dismissal because injury was not redressable by damages sought).  Plaintiffs have not even pleaded facts suggesting an injury here: The Complaint contains only the bare-bones allegation that "Plaintiff [sic] and the Class have sustained damages."  (AC ¶ 108.)  That is not enough, because "a plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim."  *Kane Enter. v. Macgregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  The same rule applies to standing allegations.  *See, e.g.*, *All. for Hippocratic Med. v. Food & Drug Admin.*, 2023 WL 2913725, at *5 (5th Cir. Apr. 12, 2023) ("Plaintiffs must identify specific injuries that go beyond 'general averments' or 'conclusory allegations'" to establish standing.); *Kounitz v. Slaaten*, 901 F. Supp. 650, 654 (S.D.N.Y. 1995) (dismissing claim for lack of standing because plaintiff's general allegation that he had been "damaged financially" was insufficient to allege injury in fact).

In any event, any injury Plaintiffs claim to have suffered is not redressable under the Securities Act—the only basis for their claims.  Section 11(g) provides that "[i]n no case shall the amount recoverable under this section exceed the price at which the security was offered to the public."  15 U.S.C. § 77k(g).  The offering price of Next Bridge shares was $0.00, because Next Bridge shares were given to Meta preferred shareholders *at no cost*.  As the Registration Statement says:  "We are [] not asking you to make *any payment* or surrender or exchange any of your shares of Meta Series A Preferred Stock for shares of our Common Stock." (App. 033 (emphasis added); *see also* App. 042 (describing "determination of offering price" by explaining that "[n]o consideration will be paid for the shares of [NBH] Common Stock distributed in the Spin-Off"

(emphasis removed).)   Section 11(g)'s damages cap precludes Plaintiffs' ability to show a compensable injury giving rise to Article III standing.

Section 11(e)'s formula for calculating damages similarly precludes Plaintiffs' ability to recover damages here.  The statute permits Plaintiffs to recover at most "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and [] the value thereof as of the time such suit was brought."  15 U.S.C. § 77k(e).[3]  The statute thus requires Plaintiffs to plead "a certain kind of injury"—a diminution in value of the stock purchased pursuant to the Registration Statement.  *Metz v. United Cntys. Bancorp.*, 61 F. Supp. 2d 364, 377–78 (D.N.J. 1999) (dismissing Section 11 claim for failure to plead diminution in value).  Plaintiffs do not allege that the Next Bridge share value has declined, so their Section 11 claim must be dismissed for this pleading failure as well.

On a Section 12 claim, Plaintiffs may "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77l.  Plaintiffs likewise have not pleaded that they have tendered or sold their Next Bridge shares.  Their Section 12 claim should also be dismissed.  *See Metz*, 61 F. Supp. 2d 364, 378–79 (dismissing Section 12 claim where plaintiff had not tendered or sold shares).

But these are not mere pleading failures.  Plaintiffs' allegations *prove* that Plaintiffs have not suffered a redressable injury because they are in the same economic position now as they were before they received Next Bridge stock.  *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 866 (N.D. Tex. 2005) (dismissing Section 11 claim because "the Court finds that Plaintiffs' own

---

[3] Plaintiffs may also recover the difference between the amount paid and the amount received in any sale, but Plaintiffs do not allege that they sold any of their Next Bridge stock.

pleadings demonstrate that any loss experienced by Plaintiffs could not be attributable to an alleged misrepresentation or omission from the Registration Statement").  Before the spin-off, Plaintiffs owned Meta preferred stock.  (*See* AC ¶¶ 12–14.)  That "Preferred Stock corresponded to the oil and gas assets that historically belonged to Torchlight but were acquired by Metamaterial during the merger." (*Id.* ¶ 3.)  The Next Bridge stock that Plaintiffs received pursuant to the Registration Statement and presumably still hold gives them the same thing—i.e., equity in the entity holding those same oil and gas assets.  (*See id.* ¶¶ 3, 4.)  There can therefore be no injury from the Registration Statement.  *See In re Safety-Kleen Corp.*, 2002 WL 32349819, at *1 (D.S.C. Mar. 27, 2002) (holding "no damages can be demonstrated" where transaction involved exchange of identical securities); *see also In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 977 (N.D. Cal. 2007) (dismissing Section 11 claims where investors' decision was whether to retain or exchange securities "that were identical in all respects").

Apparently recognizing this fundamental defect in their claims, Plaintiffs certify their acquisition of Meta preferred shares to show their standing.  (*See* AC App'x A & B.)  But Section 11's "standing provisions limit putative plaintiffs to the 'narrow class of persons' consisting of 'those who purchase securities that are the direct subject of the prospectus and registration statement.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005).  As the Supreme Court recently put it, Section 11 "speaks to a security registered *under the particular registration statement* alleged to contain a falsehood or misleading omission."  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023) (emphasis added).  As the cover page to the Registration Statement shows, the shares being registered in the allegedly misleading Registration Statement were shares in *Next Bridge*, not Meta.  (*See* App. 002.)  At a minimum, Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the *allegedly defective* registration statement."

*Slack*, 598 U.S. at 770 (emphasis added).  The Meta preferred shares Plaintiffs previously owned were issued in 2021.  (App. 008; App. 137.)  Those shares are not possibly traceable to the Next Bridge Registration Statement that was not filed until 2022.

## II.     Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not subject to Section 11.

The Section 11 claim against Mr. McCabe, Mr. Hawkins, and Ms. Oelkers fails at the threshold.  They did not sign the Registration Statement, were not directors at the time the Registration Statement was filed, and were not identified as directors for the future Next Bridge in the Registration Statement, so they are not within the zone of liability.  *See* 15 U.S.C. § 77k(a) (listing specific types of individuals who can be held liable under Section 11).  Plaintiffs have improperly named them as a defendants in the Section 11 claim, and it should be dismissed against them.  *See, e.g.*, *In re AFC Enter., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1380 (N.D. Ga. 2004) (dismissing Section 11 claim against individual defendants not subject to Section 11); *XOMA Corp. Sec. Litig.*, 1990 WL 357807, at *9 (N.D. Cal. Dec. 27, 1991) (dismissing Section 11 claim against "improper § 11 defendants" who did not sign the registration statement or were not named as directors in it); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 642 (N.D. Cal. 1980) ("It is undisputed that . . . directors bear potential section 11 liability whether or not they signed the registration statement.  But the same does not hold true of officers. . . .  The nonsigning officers cannot be held liable under section 11."); *In re Reliant Sec. Litig.*, No. H-02-1810, 2004 WL 7347565, at *19 (S.D. Tex. Jan. 16, 2004) (dismissing Section 11 claim against non-director because "[n]one of the cases cited by Plaintiffs contains a holding that an officer of a corporation, who did not sign the registration statement, can be held liable under § 11").

## III.    The Registration Statement was not false or misleading.

Plaintiffs' Section 11 claim also fails because the Complaint does not adequately allege that the Registration Statement "contained an untrue statement of a material fact or omitted to state

a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 894 (S.D. Tex. 2017), *aff'd* 777 F. App'x 726 (5th Cir. 2019); 15 U.S.C. § 77k(a).  Plaintiffs' Section 12 claim fails for the same reason:  Plaintiffs have not adequately alleged that Defendants sold Plaintiffs a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."  *In re Plains*, 245 F. Supp. 3d at 894; 15 U.S.C. § 77l(a)(2).

**A.      The Registration Statement did not misstate the value of the oil and gas properties.**

Plaintiffs allege that the Registration Statement was misleading because it incorrectly represented that the "oil and gas assets were worth" the amounts stated on the balance sheet in the Registration Statement.  (AC ¶ 6(a); ¶ 81.)  This allegation fails for several reasons.

**1.      The Registration Statement did not state what the oil and gas properties "were worth."**

Plaintiffs' complaint fails at the threshold because the Registration Statement did not, in fact, purport to represent what the oil and gas properties "were worth."  The Registration Statement reported the *carrying value* of the properties, making clear that Next Bridge uses the full-cost method of accounting.  The Registration Statement explained that this accounting method calls for the assets to be booked at the *costs* Next Bridge has incurred to develop them.  (*See supra* pp. 4–5.)  Nothing about the Registration Statement suggests that the figures Plaintiffs cite were statements of "value" or "worth."  To the contrary, both the Registration Statement and the Final Prospectus explicitly explained that these figures were "*the capitalized costs* for oil and natural gas properties of the Company."  (App. 092 (emphasis added); App. 227 (same).)  A subsequent

impairment driven by a then-impending lease expiration does not mean that the figure was not based on costs, as Next Bridge explained.

Plaintiffs cannot state a Securities Act claim by reading figures on the balance sheet in isolation with their own spin. Plaintiffs' allegations about "value" and "worth" of the assets "demonstrate no more than Plaintiffs' misunderstanding of [Next Bridge's] financial statements." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y. 2022) (dismissing Section 11 claim based on allegedly false financial statements). Moreover, "an investor reads each statement within [an SEC filing], whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Numerous places in the Registration Statement explain that these figures represent costs carried on the Company's books, not an estimate of value. (*See, e.g.*, App. 058–59; App. 089–90; App. 111; App. 192–93; App. 248.) That dooms Plaintiffs' claims based on an alleged misrepresentation of "worth."

### 2. The Registration Statement warned investors that a lease cancellation could affect the value of the oil and gas properties.

Plaintiffs' real argument is not that the carrying values reported were inaccurate, but that the Registration Statement should have also disclosed the potential for a future impairment of those assets if a lease expired (and thus an impact on the actual value). But the law does not require such statements—and even so, the Company gave such warnings. "The fact that a financial item is accounted for differently, or in a later period, does not support an inference that a previously filed financial statement was fraudulent." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010); *see also In re Browning-Ferris Indus. Inc. Sec. Litig.*, 876 F. Supp. 870, 908 (S.D. Tex. 1995) ("The fact that the defendants revised the Form 10–Q estimate in the Form 8–K disclosure does not raise an inference of fraud."). A subsequent write-down of assets does not

make the values previously attributed to those assets false or misleading.  *See Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d, 193, 224–25 (S.D.N.Y. 2020) (holding that plaintiffs must do more than allege that defendants later changed judgment-based numbers); *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 495–96 (S.D.N.Y. 2013) (rejecting plaintiffs' claim that reserves were improperly set merely because defendant took impairment charge at later date).

And statements of value are not actionable if the risk of their potential fluctuation is disclosed.  *See Kapps v. Torch Offshore*, 379 F.3d 207, 214–15 (5th Cir. 2004) (holding there was no material misstatement where company made "cautionary statements" about risk of price fluctuation); *Truk Int'l Fund*, 737 F. Supp. 2d at 625 ("Summed up, a reasonable investor would know from reading the cautionary language in the Offering Documents that an investment . . . was risky and that part of that risk was in the uncertainty of the proved reserves.").  Next Bridge explained in its 2023 annual report—filed in 2024—that it noted a triggering event related to the potential expiration of the underlying mineral leases and, as a result, recorded an impairment adjustment as of December 31, 2022, and at December 31, 2023.  (App. 352.)  But Next Bridge had included meaningful cautionary statements throughout the Registration Statement and Final Prospectus (including, but not exclusively in, the Risk Factors section) that clearly identified the risk of potential lease expirations and their effect on Next Bridge's financial statements.

Next Bridge warned, for example, that the "failure to drill sufficient wells in order to hold acreage will result in a substantial lease renewal cost, or if renewal is not feasible, loss of our lease and prospective drilling opportunities."  (App. 016; App. 146*.*)  And if Next Bridge were forced to "renew such leases on new terms, [it] could incur significant cost increases, and," as a consequence, "may not be able to renew such leases on commercially reasonable terms or at all."

(App. 016; App. 146.)   Reasonable investors understood that Next Bridge's operations were largely dependent on the continued viability of its leases and that the viability of its leases was not guaranteed.   As the Registration Statement disclosed, Next Bridge's "primary interests include[d] the oil and natural gas leases for properties of the Orogrande basin."  (App. 044; App. 173.)  And the Final Prospectus explained that "the Orogrande Project leases . . . [were] subject to expiration in 2022 if we fail to drill five wells as obligated by the end of the 2022 calendar year.  Unless we are able to negotiate an extension on these leases, these leases in the Orogrande Basin are also subject to expiration in 2023 in the event we fail to drill an additional five wells during the 2023 calendar year."  (App. 191.)  Investors were explicitly warned "that currently available resources may not provide sufficient funds to enable us to meet our financing and drilling obligations for the remainder of the 2022 fiscal year and for the 2023 fiscal year."  (App. 192.)  Because the financial statements in question were "accompanied by meaningful cautionary language, which would alert the reasonable investor to consider those statements with healthy skepticism," they were not materially misleading. *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016).

In any event, the impairment was made as of December 31, 2022, while the offering documents contained balance sheets only through September 30, 2022.  Plaintiffs have not alleged that the triggering event—i.e., the increased risk of potential lease expiration—occurred *before* the Registration Statement, including any amendments, or Final Prospectus was filed.  Later occurring events obviously cannot support a claim of misrepresentation.  *See In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 992 (E.D. Mo. 1999) ("Defendants cannot be held liable under [Sections 11 and 12] for the omission of material information which was unknown to and not reasonably discoverable by the defendants."); *Firefighters Pension & Relief Fund of the City of New Orleans*

*v. Bulmahn*, 53 F. Supp. 3d 882, 897 (E.D. La. 2014) ("To the extent plaintiff argues that [the issuer]'s failure to disclose its future bankruptcy rendered its projection of increased hydrocarbon production in 2011 misleading, such attempts to plead fraud by hindsight are impermissible and devoid of plausibility." (footnote omitted).)  Plaintiffs' effort to allege misrepresentation by hindsight should be rejected.

### 3.    Any valuation would be an inactionable opinion statement.

Similarly, if the Court were to consider the balance sheet numbers as statements of "value," or "worth," they would be inactionable opinion statements.  *See, e.g.*, *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) ("Statements estimating the fair market value of assets are opinions, not matters of objective fact.").  Reasonable investors understand that assessing oil and natural gas reserves before a well is developed is not fact.  *See In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 45, 177 (S.D.N.Y. 2017) (holding that estimations of mineral reserves are statements of opinion); *Truk Int'l Fund*, 737 F. Supp. 2d at 624 ("A reasonable investor would have recognized the speculative and uncertain nature of the formulation of estimates of proved reserves . . . .").  To state a claim based on an opinion, Plaintiffs must allege that (1) the speaker did not actually hold the stated belief, (2) the opinion included embedded facts that were untrue, or (3) the opinion omitted "material facts about the issuer's inquiry into or knowledge concerning [the] statement of opinion" that "conflict with what a reasonable investor would take from the statement itself."  *Omnicare*, 575 U.S. at 184, 186, 188–89.  Plaintiffs have not adequately pleaded any of these three options.

First, Plaintiffs do not allege that management's opinions about the balance sheet numbers were insincerely held.  As the Registration Statement explains, Next Bridge relied on reserve reports provided by expert firm PeTech Enterprises, Inc.  (App. 079; App. 214.)  Plaintiffs allege nothing to suggest that Next Bridge did not believe PeTech's reports, or that PeTech did not render

anything other than its sincerely held and independently reached judgments.  To state a Section 11 claim based on an opinion, "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *Omnicare*, 575 U.S. at 194.  Without allegations along those lines, the Court must conclude that Next Bridge sincerely held and had a reasonable basis for its opinions.  *See MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1118 (10th Cir. 2014) (affirming dismissal of Section 11 case where issuer offered opinion that was verified by experts).

Second, Plaintiffs have not alleged any untrue "embedded facts."  Plaintiffs do not allege that the numbers about which they complain are not based on the correct inputs—e.g., development costs—or that the math was wrong.  Moreover, Next Bridge said throughout the Registration Statement that its "oil and natural gas reserve estimates are necessarily inexact and involve matters of subjective engineering judgment."  (App. 023; App. 152.)  Next Bridge also stated that its estimates were "based on various assumptions, including those prescribed by the SEC, and are inherently imprecise" (App. 049); App. 178) and that its "reserve estimates for wells with limited or no production history are less reliable than those based on actual production," (App. 059; App. 193).  Next Bridge thus made clear to investors that its estimates were not based on any particular facts, much less facts that Plaintiffs plead are untrue.  *See Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 676 (N.D. Tex. 2022) (Pittman, J.) (holding opinion statement not materially misleading when considering "hedges, disclaimers or qualifications").

Third, Plaintiffs have not alleged that the offering documents omitted any material facts contrary to the balance sheets.  They just allege that the figures were wrong.

**B.      The Registration Statement did not materially misrepresent the quality of the future Audit Committee.**

Plaintiffs allege that the Registration Statement misled investors by misstating "Next Bridge and its Audit Committee's ability to present accurate financial statements." (AC ¶ 6(b).) But Plaintiffs do not allege how the statements about the Audit Committee members' qualifications are inaccurate. Plaintiffs seem to be basing this allegation on their conclusion that the financial statements contained errors. (*Id.* ("Despite having an Audit Committee and independent auditor tasked with ensuring the accuracy of NBH's financial statements, the Registration Statement's financial statements contained material errors.").) This inference fails for at least three reasons. First, the financial statements were not erroneous, as just explained. Second, simply describing the qualifications of the Audit Committee members is not false or misleading, regardless of Plaintiffs' allegations of error. *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) (holding statement that described "internal processes and procedures which, although they failed to function correctly" was not false or misleading).

Third, the financial statements published in the Registration Statement were completed *before* the Audit Committee was formed, so as a matter of logic, errors in those financial statements cannot possibly say anything about the competence of the Audit Committee that the Registration Statement described.[4] And of course a reasonable investor would not consider Next Bridge's *future* Audit Committee as having any bearing on Next Bridge's ability to present its *past* financial statements. Plaintiffs allege that the description of the future committee "lent credence" to the accuracy of the Registration Statement's financial statements (AC ¶ 86), but that does not suggest

---

[4] Again, the offering documents were filed while Next Bridge was still a wholly owned subsidiary of Meta, which had its own Audit Committee.

that the description of the Audit Committee is itself misleading.  Nor does it make sense on its face:  Investors were told explicitly that the Audit Committee being described did not yet exist, *i.e.*, could have had *nothing to do with* the Registration Statement's financial statements.  (App. 065.)  And the description, no matter how impressive, does not transform the capitalized costs of assets into material misrepresentations.  Statements about the future Audit Committee could not be material to investors considering the Registration Statement.  *See In re Plains*, 245 F. Supp. 3d at 890 (holding misstatement not material if reasonable investor would not consider it important).

### C.  Next Bridge did not have to disclose additional details about the Option Agreement.

Plaintiffs' final misrepresentation claim is based on Item 404 of SEC Regulation S-K. Plaintiffs say that Item 404 required Next Bridge to disclose more details about the Option Agreement.  (AC ¶ 94.)  Plaintiffs are wrong.  Item 404 requires that financial statements filed with the SEC describe "any transactions, since the beginning of the registrant's last fiscal year, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."  17 C.F.R. § 229.404(a).  Item 404 thus did not call for disclosure of the Option Agreement at all, much less additional details about it.

By its terms, Item 404 requires Next Bridge to disclose in the Registration Statement only those related-party transactions that occurred "since the beginning of the registrant's last fiscal year."  *Id.*  Next Bridge is on a calendar fiscal year, so it was required to disclose in its 2022 offering documents only those related-party transactions that occurred after January 1, 2021.  The Option Agreement was entered into on August 13, 2020—i.e., months earlier.  (App. 095; App. 206.)  It was amended in September 2020, but even if the amendment is considered a new

transaction, it still occurred before January 1, 2021.  (*See* App. 095; App. 206.)  Plaintiffs have not

adequately pleaded this claim without pleading—as they cannot do—that the Option Agreement

was a 2022 transaction.  *See In re Jiangbo Pharm., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1259

(S.D. Fla. 2012) ("By failing to state when the transaction occurred, Plaintiffs also fail to

sufficiently allege that Defendants had a duty to disclose the transaction at the time they made the

statements Plaintiffs challenge.").

Plaintiffs also fail to plead that Mr. McCabe had an undisclosed interest above Item 404's

$120,000 threshold.  Plaintiffs allege that Mr. McCabe's interest in the Option Agreement was

"through an intermediary entity named Masterson Hazel Management LLC" and that "Masterson

Hazel Management LLC was jointly owned by [MPC] . . . and another entity named Korban

Resources, LLC."  (AC ¶ 93.)  But Plaintiffs fail to allege how revenues in excess of $120,000

flowed through this alleged ownership structure to Mr. McCabe, or that Mr. McCabe in fact

received any revenues at all from the Option Agreement.  To the extent that the Hazel Project

yielded revenues, those revenues went to MHP only to repay drilling costs that Next Bridge itself

would otherwise have had to expend, and such revenues would not have resulted in profits for

those who had an ownership interest in MHP.  (*See* AC ¶ 90 (describing MHP's right to revenue

only until "it has recovered its reasonable costs and expenses for drilling, completing, and

operating the well").)  Plaintiffs fail to explain how MHP recouping some of its costs, with no

profit going to Mr. McCabe, would have been material to a reasonable investor.  *See In re*

*Francesca's Holdings Corp. Sec. Litig.*, No. 13-CV-6882, 2015 WL 1600464, at *16 (S.D.N.Y.

Mar. 31, 2015) (rejecting Securities Act claim where omitted related-party transaction "could

hardly be considered a material fact significant in relation to investment decisions"); *Stephens v.*

*Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016)

(concluding that "[t]he alleged omissions from the Item 404 disclosures were not material" because plaintiff did not show or explain how such disclosures "would have given rise to a substantial likelihood that the disclosure . . . would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (internal quotation marks omitted)).

Regardless, Mr. McCabe's interest in the Option Agreement *was* disclosed. Plaintiffs concede that Mr. McCabe's presence in the transaction was "known" but complain that "it was understood at that time to be limited to his ownership and/or interest in McCabe Petroleum Corporation and not [MHP]." (AC ¶ 92.) As Plaintiffs also concede, Mr. McCabe's interest in the Option Agreement was indirect—through MPC's partial ownership of Masterson Hazel Management LLC, MHP's general partner. (*See* AC ¶ 93.) Thus, Mr. McCabe's "presence in the transaction" in all respects was through MPC's partial ownership of MHP. (*See id.*). And investors obviously understood that MPC was Mr. McCabe's company—the Prospectus explicitly said so. (App. 206.) Nothing more needed to be disclosed under Item 404.

## IV.   Plaintiffs' Section 15 claim fails.

Because Plaintiffs' Section 11 and 12 claims fail, their Section 15 claim against the individual Defendants should also be dismissed. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) ("Control person liability is secondary only and cannot exist in the absence of a primary violation."); *In re Plains All. Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 618 (S.D. Tex. 2018) ("To allege control person liability under § 15, the plaintiff must allege both a primary violation of § 11 or § 12 and the defendant's control over the primary violator."). But even if the Court finds that Plaintiffs have stated a viable primary claim against Next Bridge, Plaintiffs' Section 15 claims nevertheless fail.

To establish control-person liability under Section 15, Plaintiffs "must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (internal quotation marks omitted); *accord Ahders v. SEI Private Tr. Co.*, 982 F.3d 312, 317 (5th Cir. 2020) (affirming dismissal of claim where plaintiff failed to show that defendant "directly or indirectly controlled [the] primary violations"). This means that Plaintiffs "need[] to allege some facts beyond a defendant's position or title that show that the defendant had actual power or control." *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F. Supp. 2d 549, 595 (S.D. Tex. 2002). Plaintiffs have not done so here.

It is undisputed that the alleged violation—filing the offering documents—occurred when Next Bridge was still a subsidiary of Meta, and none of Ms. Pitts, Ms. Whitley, and Mr. Hawkins had any role at Meta ever and had no role at Next Bridge until after the spin-off occurred. As for Mr. McCabe, Plaintiffs allege that he is a significant shareholder of Next Bridge, but it was Meta who held 100% of Next Bridge's equity before the spin-off. (*See* App. 011; App. 140.)[5] And in any event, shareholders are not typically responsible for a corporation's SEC filings, and Plaintiffs do not plead any facts suggesting that Mr. McCabe was an exception. *See, e.g.*, *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509–10 (5th Cir. 1990) (rejecting Section 15 claim against shareholder defendant whose "only relationship" to offering was that he "owned a minority position" in issuer).

While the other individual Defendants played a role at Next Bridge before the spin-off, that fact alone does not satisfy Plaintiffs' pleading burden. Plaintiffs must allege some facts beyond a

---

[5] Plaintiffs allege that he was Next Bridge's largest shareholder "at all relevant times" (AC ¶ 23), but for purposes of Section 15 liability the "relevant time" is when the alleged violation occurred—i.e., when Meta owned 100% of Next Bridge's stock.

defendant's position or title that show he or she had actual power or control over the violations. *See id.* (affirming dismissal of Section 15 claim for want of a primary violation and because defendants were not control persons). Plaintiffs do not make any allegations of control here, but a mere boilerplate allegation about all defendants generally. (*See* AC ¶¶ 112–13.) Moreover, Plaintiffs concede that it was Meta that conducted the spin-off. (*Id.* ¶¶ 4–5.) The spin-off was subject to approval by the Meta Board "in its sole and absolute discretion," and the allegedly misleading financial statements were "derived from the consolidated financial statements and accounting records of Meta." (App. 043; App. 183.) For Section 15 purposes, "[t]he term 'control' means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 379–80 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012). That means Meta and its executives—not any of the Defendants here—had control over the offering documents. Plaintiffs' Section 15 claims should be dismissed.

## CONCLUSION

Defendants believe that oral argument would be helpful to the Court's consideration of this motion, and time-permitting with deference to the Court's busy docket, would respectfully request an oral hearing on this motion once fully briefed.

Defendants respectfully request the Court **GRANT** this motion and **DISMISS** Plaintiffs' claims against them **with prejudice**.

Dated: October 23, 2024

Respectfully submitted,

*/s/ David J. Drez III*

Kristin Cope
State Bar No. 24074072
kcope@omm.com

**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, TX 75201-1663
Tel.: (972) 360-1900
Fax: (972) 360-1901

Abby F. Rudzin (*pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Tel.: (212) 326-2000
Fax: (212) 326-2061
arudzin@omm.com

-and-

David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Paul T. Elkins
State Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788

Fax: (817) 332-7789

*Attorneys for Defendants Next Bridge
Hydrocarbons, Inc., Robert L. Cook, Clifton
Dubose, Jr., Joseph DeWoody, Lucas T. Hawkins,
Delvina Oelkers, Mia Pitts, Kristin Whitley, and
Gregory McCabe*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on October 23, 2024, through the Court's CM/ECF system.

<u>*/s/ David J. Drez III*</u>
David J. Drez III