**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TODD TARGGART, individually and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 4:24-cv-00767-P** |
| **NEXT BRIDGE HYDROCARBONS, INC., et al.,** | § § § | |
| **Defendants.** | § § | |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**O'MELVENY & MYERS LLP**

Kristin Cope
State Bar No. 24074072
kcope@omm.com

2501 North Harwood Street, Suite 1700
Dallas, TX 75201-1663
Tel.: (972) 360-1900
Fax: (972) 360-1901

Abby F. Rudzin (*pro hac vice*)
arudzin@omm.com

1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Tel.: (212) 326-2000
Fax: (212) 326-2061

**WICK PHILLIPS GOULD & MARTIN LLP**

David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Paul T. Elkins
State Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788
Fax: (817) 332-7789

*Attorneys for Defendants Next Bridge Hydrocarbons, Inc.,
Robert L. Cook, Clifton Dubose, Jr., Joseph DeWoody, Lucas T. Hawkins,
Delvina Oelkers, Mia Pitts, Kristin Whitley, and Gregory McCabe*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      Plaintiffs lack standing to bring their claims. .................................................... 1

II.     Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not subject to Section 11. .................... 4

III.    The Registration Statement was not false or misleading. ................................................. 5

      A.      The Registration Statement did not misstate the value of the oil and gas
          properties........................................................................................................... 5

          1.      The Registration Statement did not state what the oil and gas
               properties "were worth." ...................................................................... 5

          2.      The Registration Statement warned investors that a lease
               cancellation could affect the value of the oil and gas properties. .............. 7

          3.      Any valuation would be an inactionable opinion statement. .................... 8

      B.      The Registration Statement did not materially misrepresent the quality
          of the future Audit Committee. ................................................................................. 8

      C.      Next Bridge did not have to disclose additional details about the Option
          Agreement........................................................................................................... 9

IV.     Plaintiffs' Section 15 claim fails. ....................................................................... 10

CONCLUSION.................................................................................................................. 10

CERTIFICATE OF SERVICE .............................................................................................. 12

## INTRODUCTION

Lacking a legitimate response to Defendants' standing argument, Plaintiffs choose to mischaracterize it and ignore the facts. Defendants did not argue that "Plaintiffs [h]ave [n]ot [b]een [d]amaged" (Opp. 6), but rather that any "damage" they suffered is not redressable by this Court because the Securities Act caps the damages the Court can award them at the $0.00 offering price. And Plaintiffs' contention that they paid more than $0.00 for their Next Bridge shares by "exchang[ing]" their—allegedly worthless—Meta shares (see Opp. 7-10) cannot be squared with the offering documents saying the exact opposite. Plaintiffs have not established a redressable injury to give this Court jurisdiction under Article III.

Lacking a legitimate response to Defendants' showing that the Registration Statement was not false or misleading, Plaintiffs pivot to new theories. Plaintiffs now acknowledge that Next Bridge did not assign "value" or "worth" to the Orogrande Assets in the Registration Statement, but instead, as it told investors, assigned a balance sheet figure to the assets by capitalizing their costs. Plaintiffs assert that Next Bridge was wrong to do so, but their complaint does not contain factual allegations to support this view, i.e, allegations that all wells in the Orogrande Assets were completed and there were no hydrocarbons there to be developed. And a disagreement about accounting judgment is not an allegation that the figures in the balance sheet were false.

At bottom, Plaintiffs are unhappy with the investments they made in Next Bridge's *predecessors*, Meta and Torchlight. But that does not give rise to a Securities Act claim based on offering documents to register *Next Bridge* shares. Their claims should be dismissed.

## ARGUMENT

### I.     Plaintiffs lack standing to bring their claims.

Defendants showed in their opening brief that Plaintiffs had not established standing to invoke this Court's jurisdiction. (*See* Mem. 9-12.) For their Section 12 claim, Plaintiffs do not

dispute that they failed to tender or sell their Next Bridge shares to establish standing. (Opp. 6-12.) Plaintiffs have thus abandoned their Section 12 claim. *See McWilson v. Bell Textron Inc.*, 2024 WL 3585615, at *2 (N.D. Tex. July 30, 2024). As for the Section 11 claim, Defendants showed that Plaintiffs have no redressable injury because Section 11(g) caps damages at "the price at which the security was offered to the public," 15 U.S.C. § 77k(g), and here that price was $0.00 (*see* App. 033). Plaintiffs' responses are unavailing.

First, Plaintiffs note that they need not plead or prove damages as an element of their claim. (*See* Opp. 11.) But Article III of the Constitution circumscribes this Court's jurisdiction to cases in which the Court can redress the claimed injury, so "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Denning v. Bond Pharm.*, 50 F.4th 445, 450 (5th Cir. 2022) (internal quotation marks omitted). Plaintiffs' failure to understand Defendants' argument—and recognize this Constitutional requirement—dooms their response.

Second, although Plaintiffs concede that it is *Next Bridge* shares they received under the Registration Statement (Opp. 10, n.3), they point to their purchases of *Meta* or *Torchlight* shares as giving them standing (*see, e.g.*, Opp. 7-8 (noting purchases of "MMTLP" and Torchlight).) But as Defendants explained, the Fifth Circuit held in *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005), that Section 11 standing is limited to "those who purchase securities that are the *direct subject* of the prospectus and registration statement," *id.* at 495 (emphasis added), i.e., *Next Bridge* shares. Purchasing *other* securities does not qualify. Plaintiffs do not even mention *Krim*, much less explain how it does not foreclose their reliance on their purchases of Meta and Torchlight.

Third, Plaintiffs resort to misrepresenting the terms of the offering and then citing cases relevant only to their incorrect version of events. Plaintiffs state that they *exchanged* their MMTLP

or Torchlight shares for their Next Bridge shares. (*See* Opp. 7-10 (describing an exchange of "MMTLP" shares for Next Bridge shares and citing cases involving share exchanges).) But that is not what happened, and Plaintiffs' cited cases only prove it:

| | |
|---|---|
| Registration Statement in *Freedman v. Value Health, Inc.*, 190 F.R.D. 33 (D. Conn. 1999) | "Each share of Diagnostek *will be exchan*ged for 0.4975 shares of Value Health's stock . . . ." (App. 673 (emphasis added).) |
| Registration Statement in *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013) | "[E]ach outstanding share of Harbinger common stock *will be exchanged* for 0.75 of a share of Peregrine common stock." (App. 679 (emphasis added).) |
| Next Bridge Registration Statement | "We are . . . *not asking you to* make any payment or surrender or *exchange* any of your shares of Meta Series A Preferred Stock for shares of our Common Stock." (App. 033 (emphasis added).) |

The lone Fifth Circuit case Plaintiffs cite for this proposition, *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211 (5th Cir. 1994), is likewise unavailing. There, the Court explained that, in general, registering a new security to be exchanged for an existing one constitutes a "sale" for purposes of the Securities Act. *See id.* at 223-24. The Court made clear, however, that its "holding is limited to the proposition that unitholders *who exchanged* PDP limited partnership units for stock in P & P Petroleum are 'sellers' for purposes of the Securities Act." *Id.* at 223 n.15 (emphasis added). It does not apply to Plaintiffs, who did not exchange their MMTLP or Torchlight shares for Next Bridge shares.

And none of these cases supersedes Section 11(g)'s damages cap of the purchase price, i.e., $0.00. In the one case Defendants have found with language similar to Next Bridge's Registration Statement, the court agreed with the defendants that Section 11(g) foreclosed the plaintiff's standing. *See Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012, 1023-24 (N.D. Cal. 2011) (finding no standing based on 11(g) damages cap where registration statement stated: "Cypress stockholders will not pay any consideration or surrender or exchange shares of their Cypress common stock for the shares of our Class B common stock they will receive in the spin-off."); *see*

*also Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735, at *4 (D. Utah Dec. 15, 2020) (distinguishing *Hildes* and finding no standing for shareholder whose earlier-purchased "preferred shares automatically converted into common shares" registered in registration statement).

Plaintiffs suggest that despite the $0.00 offering price and the Registration Statement's explicit language renouncing an exchange, the offering price of the Next Bridge shares was in fact the value of the MMTLP shares. (*See* Opp. 7-8 (Plaintiffs "paid for their NBH shares by buying Meta Materials' preferred stock.").) Again, the offering documents explicitly state otherwise: "*no consideration will be paid* for the shares of Common Stock distributed in the Spin-Off." (App. 042 (emphasis added).) Thus, as in *Plichta*, Plaintiffs do not have standing to pursue their Section 11 claim. And as in *Exkae*, it does not matter that Plaintiffs previously purchased preferred shares.

## II.    Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not subject to Section 11.

As shown in Defendants' opening brief, Mr. McCabe, Mr. Hawkins, and Ms. Oelkers are not within Section 11's zone of liability, because none is named as a future director. (Mem. 12 (citing 15 U.S.C. § 77k(a).) Plaintiffs respond that Mr. McCabe is repeatedly named in the Registration Statement (Opp. 12), but he is not named *as a future Next Bridge director*, and that is what matters. Plaintiffs also note that Mr. McCabe is a large stockholder (*id.*), but that also does not matter. *See, e.g., Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 580 (S.D.N.Y. 2012) (dismissing Section 11 claim against defendants who allegedly held 20% stock in company because they did not "fall within any of the five parties subject to § 11 liability"). As for Mr. Hawkins and Ms. Oelkers, Plaintiffs note that they were identified as *officers*. (Opp. 13.) But officers are not liable under Section 11 unless they are "also a director, . . . named in the registration as about to become a director, or signed the registration statement." *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 385 (D. Mass. 1987). Contrary to Plaintiffs' suggestion, officers and directors are not the same thing. Under the corporate law of Nevada—where Next Bridge is

incorporated (AC ¶ 15)—"the board of directors has full control over the affairs of the corporation." NRS 78.120. Officers, by contrast, only "have such powers and duties as may be prescribed by the bylaws or determined by the board of directors." NRS 78.130. Congress chose not to include officers in the zone of Section 11 liability, and there is no basis to expand its reach.

## III.   The Registration Statement was not false or misleading.

### A.   The Registration Statement did not misstate the value of the oil and gas properties.

Defendants demonstrated in their opening brief that the Registration Statement explicitly stated that the balance sheet numbers for the oil and gas properties were costs, not a valuation, that any valuation was an inactionable opinion statement, and that the Registration Statement had warned that a lease cancellation could adversely affect the assets' value. Plaintiffs' responses to these arguments are unpersuasive.

#### 1.   The Registration Statement did not state what the oil and gas properties "were worth."

Falsity depends on the *actual text* of the Registration Statement—not on how Plaintiffs chose to read it—and on *all* the text of the Registration Statement—not just the portion Plaintiffs chose to read. (*See* Mem. 13-14.) Plaintiffs respond that it is enough that "investors saw NBH's balance sheet with the number $47,293,607 next to the O&G Assets." (Opp. 17.) But investors cannot ignore the note to the balance sheet explaining that the Company used the "full cost" method of accounting and thus the number did not represent a valuation but instead "the capitalized costs for oil and natural gas properties of the Company." (App. 092; App. 227.) Nor can investors ignore the numerous other times the Registration Statement told investors that the figure was a *cost* figure, not one of "value" or "worth." (*See, e.g.*, App. 058-59; App. 089-90; App. 111; App. 192-93; App. 248.) The claim Plaintiffs pleaded cannot stand.

Plaintiffs thus pivot to an unpleaded theory. They now argue that Next Bridge's financial statements were misleading by incorrectly using the full cost method of accounting. (Opp. 17-20.) Plaintiffs proffer an accountant's opinion that Next Bridge should not have used that accounting method because expenses "cannot be capitalized if they were incurred in connection with a 'dry hole.'" (*Id.* 17-18.) That is not the law. *See Est. of True v. Comm'r*, 82 T.C.M. (CCH) 27 n.11 (T.C. 2001) (full cost method of accounting "capitalizes all oil and gas exploration costs *whether or not they result in dry holes*" (emphasis added)), *aff'd*, 390 F.3d 1210 (10th Cir. 2004).

More important, "[a] dry hole is a completed well not capable of producing in paying quantities." 31 TAC § 9.31(b)(1). (*See also* Decl. of Parsons, ECF No. 57-5, ¶ 8 (accountant admitting that "[d]ry hole conditions exist if the well does not have proved reserves potential, or if it does but there are no plans for further work that would be required to establish production").) Plaintiffs do not plead that every potential well in the Orogrande Assets has been completed, that "there are no plans for further work," or that no well in the Orogrande Assets is capable of some day producing hydrocarbons. To the contrary, Plaintiffs acknowledge that Defendants have continued to drill. (*See* AC ¶ 40 (describing how Next Bridge has continued to drill Orogrande Assets and recently extended its drilling time frame for one of the leases); AC ¶ 79 (acknowledging Torchlight has "maintained its drilling obligations for the Orogrande Assets").) Plaintiffs' disappointment that no well has yet proven productive does not equate to an allegation that there is no hope of one ever doing so.

As for Next Bridge's restatement, Defendants showed that the restatement was made only as of December 31, 2022, which was months after the date of the balance sheets in the offering documents. (Mem. 16-17.) Plaintiffs respond—citing an Exchange Act case—that "post-class period data may be relevant to determining what [Defendants] knew or should have known during

the class period." (Opp. 20.) But Plaintiffs have brought Securities Act claims, which do not depend on knowledge. And "[r]estating financials that were originally issued *after* the Registration Statement plainly cannot make the Registration Statement materially misleading." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y. 2022). The same is true of Meta's decision to write off a loan it had made to Next Bridge secured by the Orogrande Assets. (*See* AC ¶¶ 62-63 (pleading that loan was carried at fair market value until December 31, 2022).) Plaintiffs make no attempt to explain why an accounting decision by Meta, made the year after Next Bridge filed the Registration Statement, speaks to whether Next Bridge's accounting decision reflected in the Registration Statement was false or misleading. (*See* Opp. 16.) And a subsequent change in accounting approach for tax calculations—particularly by a then-unaffiliated corporation—does not make Next Bridge's previous balance sheet false or misleading. (*See* Mem. 14-15.)

### 2. The Registration Statement warned investors that a lease cancellation could affect the value of the oil and gas properties.

Plaintiffs cannot dispute that Next Bridge explicitly disclosed in the Registration Statement the potential adverse consequences of lease cancellations. (Mem. 15-16 (collecting Registration Statement citations).) And when Next Bridge restated its financials to impair the oil and gas assets two years later, it explained that it did so because of the risk that the leases would not be renewed. (App. 352.) Plaintiffs respond that they know better: The assets were impaired because "the O&G Assets had lacked produceable oil and gas" as early as 2022, citing paragraph 82 of their Amended Complaint. (Opp. 19.) But paragraph 82 just alleges in conclusory fashion that the assets "were at all relevant times substantially worthless." (AC ¶ 82.) Plaintiffs do not specify the "relevant times" or explain what "substantially worthless" means. This does not equate to a factual allegation—which Plaintiffs cannot make in good faith—that there was never any "produceable

oil and gas" in the Orogrande Assets any more than it does to their new contention that every well in the Orogrande Assets is a "dry hole."

### 3.    Any valuation would be an inactionable opinion statement.

Defendants also showed in their opening brief that characterizing the balance sheet numbers as statements of "value" was unavailing to Plaintiffs because valuations are inactionable opinion statements.    (*See* Mem. 17-18.)    Defendants then undertook an *Omnicare* analysis, showing that Plaintiffs could not meet the standard for making actionable a statement—which is not found in the Registration Statement—about what the oil and gas assets were "worth."    (*Id.*)

Plaintiffs make no argument as to why the claimed "valuations" are not statements of opinion but say they are "different" than the opinion statements in *Omnicare*.    (Opp. 21 ("[T]he opinion statements at issue in this case are very different.")    *Omnicare* was not, however, limited to its facts; it is the case "where the Supreme Court clarified the legal standard that should be applied to statements of opinion for section 11 claims," period.    *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016).    Plaintiffs' decision to simply declare the Supreme Court's standard inoperative, rather than make an argument as to why they have met it, dooms their claims based on a false or misleading statement of "worth."

### B.    The Registration Statement did not materially misrepresent the quality of the future Audit Committee.

Defendants explained in their opening brief that the Registration Statement accurately described the Audit Committee that was to be in place for the spun-off Next Bridge.    (*See* Mem. 19-20.)    Plaintiffs respond by noting the change in language in the final prospectus—from "we plan to establish an audit committee" to "we have established an audit committee."    (Opp. 22.) But they cannot dispute that the final prospectus *also* says that no defendant would sit on the Board until *after* the spin-off (App. 194) and that "the Audit Committee *will* consist of" certain

individuals but only "upon their appointment to the Board" (App. 197 (emphasis added)). Plaintiffs' complaint that the description of a qualified future audit committee envisioned to serve post spin-out gave a "misleading impression" (Opp. 21-22) about the vetting of financial statements prepared before the audit committee had any of those well-qualified members cannot be squared with the clock, or the reality of the parties' authority to review or approve the financial statements at the time. Once again, Plaintiffs attempt to salvage their claims by changing their argument, now contending that "NBH did not have adequate audit controls in place." (*Id.* 21.) But Plaintiffs can cite no such allegation in the complaint. More important, this statement does not solve Plaintiffs' chronological problem: To state a claim based on allegedly false or misleading financial statements, Plaintiffs must plead that "NBH did not have adequate controls in place" *at the time the financial statements were prepared*. Lacking the general allegation, the Amended Complaint necessarily lacks the specific one. This claim fails.

### C.    Next Bridge did not have to disclose additional details about the Option Agreement.

Defendants showed in their opening brief that the 2020 Option Agreement with MHP did not meet the disclosure requirements under Item 404, both as to time and magnitude. (*See* Mem. 20-22.) Plaintiffs respond that Mr. McCabe continued to receive money under the Option Agreement in 2021. (Opp. 23.) But they cite no authority that follow-through on a transaction is relevant when Item 404 does not extend coverage to "any *transaction*" before the previous fiscal year. 17 C.F.R. § 229.404(a) (emphasis added). Nor can they point to any allegation in their complaint that Mr. McCabe continued to receive payments under the Option Agreement in 2021. The only money Next Bridge paid under the agreement was reimbursement to MHP of its drilling costs (Mem. 21); Plaintiffs do not explain how any portion of that reimbursement would *ever* have been passed on to MHP investors such as Mr. McCabe.

For the same reason, Plaintiffs cannot dispute Defendants' showing that Mr. McCabe could not have had an interest in the Option Agreement that exceeded $120,000. (*See* Mem. 21.) Plaintiffs instead respond (Opp. 23-24) by citing *Zagami v. Natural Health Trend Corp.*, 540 F. Supp. 2d 712 (N.D. Tex. 2008), which held that the materiality of a related-party payment was an issue of fact. The payment in *Zagami*, however, exceeded Item 404's $120,000 threshold. *See id.* at 712 (valuing transaction at $265,000). The court did not suggest it had license to impose an obligation that the text of Item 404 does not.

## IV.    Plaintiffs' Section 15 claim fails.

Defendants showed in their opening brief that Plaintiffs' control person claims cannot stand without a viable primary claim and, in any event, Plaintiffs had not pleaded facts to establish the requisite control. (*See* Mem. 22-24.) Plaintiffs respond by citing cases where a court found the control allegations sufficient, but do not explain why that makes Plaintiffs' allegations sufficient here. (*See* Opp. 24-25). In *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945 (5th Cir. 1981), for example, the Court found the control allegations sufficient for an individual who "was not only a 24% stockholder and an officer and director, but was apparently involved in the day-to-day coordination of the" allegedly misrepresented topic, (*id.* at 958). Mr. McCabe is the only Defendant alleged to be a significant Next Bridge shareholder, but he was neither an officer nor a director and is not alleged to have been involved in day-to-day activities when the Registration Statement was filed. Plaintiffs' cases do not help their cause.

## <u>CONCLUSION</u>

Defendants respectfully request the Court **GRANT** this motion and **DISMISS** Plaintiffs' claims against them **with prejudice**.

Dated: December 16, 2024

Respectfully submitted,

/s/ David J. Drez III
Kristin Cope
State Bar No. 24074072
kcope@omm.com

**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, TX 75201-1663
Tel.: (972) 360-1900
Fax: (972) 360-1901

Abby F. Rudzin (*pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Tel.: (212) 326-2000
Fax: (212) 326-2061
arudzin@omm.com

-and-

David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Paul T. Elkins
State Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788

Fax: (817) 332-7789

*Attorneys for Defendants Next Bridge
Hydrocarbons, Inc., Robert L. Cook, Clifton
Dubose, Jr., Joseph DeWoody, Lucas T. Hawkins,
Delvina Oelkers, Mia Pitts, Kristin Whitley, and
Gregory McCabe*

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on December 16, 2024, through the Court's CM/ECF system.

<u>*/s/ David J. Drez III*</u>
David J. Drez III