**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TODD TARGGART, individually and on behalf of all others similarly situated,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Case No. 4:24-cv-00767-P** |
| **NEXT BRIDGE HYDROCARBONS, INC., et al.,** | § | |
| **Defendants.** | § | |

# NEXT BRIDGE DEFENDANTS' BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS

**NORTON ROSE FULBRIGHT US LLP**

Michael A. Swartzendruber
State Bar No. 19557702
Preston Glasscock
State Bar No. 24128515
Mary Katherine Nix
State Bar No. 24144075
2200 Ross Ave., Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Peter A. Stokes
State Bar No. 24028017
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201

**ATTORNEYS FOR NEXT BRIDGE HYDROCARBONS, INC.; ROBERT L. COOK; CLIFTON DUBOSE, JR.; JOSEPH DEWOODY; AND DELVINA OELKERS**

**WICK PHILLIPS GOULD & MARTIN LLP**

David J. Drez III
State Bar No. 24007127
Paul T. Elkins
State Bar No. 24092383
Colin P. Benton
State Bar No. 24095523
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788
Fax: (817) 332-7789

**ATTORNEYS FOR DEFENDANTS LUCAS T. HAWKINS, MIA PITTS, KRISTIN WHITLEY, AND GREGORY MCCABE**

**Table of Contents**

Page

I. The Registration Statement Was Not Actionably and Materially Misleading. ................ 11

A. The Line Items Were Not Materially Misleading or Otherwise Actionable ........ 12

1. Next Bridge Disclosed How the Line Items Were Calculated and Warned of the Lease Expiration Risk That Materialized ...................................... 12

2. The Line Items Were Not Misleading By Omission ............................... 13

3. The Subsequent, Later-Reversed Restatement Does Not Support a Claim, Particularly Under the Heightened Protections for Opinions ................... 14

B. The Audit Committee and Audit Representations Were Not Actionably False... 17

C. Next Bridge Made No Material Omissions About the Option Agreement........... 18

II. The Section 11 Claim Fails As To McCabe, Hawkins, and Oelkers ................................ 19

III. Plaintiffs Have Not Alleged Recoverable Damages ........................................................ 19

IV. Plaintiffs' Claims Fail Based on Negative Causation ...................................................... 23

V. The Meta Class Settlement Bars Plaintiffs' Claims.......................................................... 24

VI. Plaintiffs' Section 15 Claim Fails. .................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ....................20

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ....................14

*In re AFC Enter., Inc. Sec. Litig.*,
348 F. Supp. 2d 1363 (N.D. Ga. 2004) ....................19

*Ahders v. SEI Private Tr. Co.*,
982 F.3d 312 (5th Cir. 2020) ....................25

*In re Alamosa Holdings, Inc.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ....................23

*Beaver County Empls. Ret. Fund v. Tile Shop Holdings, Inc.*,
94 F. Supp. 3d 1035 (D. Minn. 2015) ....................20

*Bensky v. Indyke*,
743 F. Supp. 3d 586 (S.D.N.Y. 2024) ....................24

*Braun v. Eagle Rock Energy Partners, L.P.*,
223 F. Supp. 3d 644 (S.D. Tex. 2016) ....................13

*Cai v. Switch, Inc.*,
2020 WL 3893246 (D. Nev. July 10, 2020) ....................23

*Dawes v. Imperial Sugar Co.*,
975 F. Supp. 2d 666 (S.D. Tex. 2013) ....................14

*Dennis v. Gen. Imaging, Inc.*,
918 F.2d 496 (5th Cir. 1990) ....................25

*Doe v. Columbia-Brazoria I.S.D.*,
855 F.3d 681 (5th Cir. 2017) ....................20

*In re Donna Karan Int'l Secs. Litig.*,
1998 WL 637547 (E.D.N.Y. Aug. 14, 1998) ....................18

*In re Francesca's Holdings Corp. Sec. Litig.*,
No. 13-CV-6882, 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ....................19

*In re Franklin Bank Corp. Secs. Litig.*,
782 F. Supp. 2d 364 (S.D. Tex. 2011) ....................11, 17, 25

*In re Gen. Elec. Co. Sec. Litig.*,
856 F. Supp. 2d 645 (S.D.N.Y. 2012) ....................15

*In re Gentiva Secs. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ....................................................................22

*Gonzalez v. Intellia Therapeutics, Inc.*,
2026 WL 1758286 (D. Mass. June 18, 2026) ..........................................................23

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561 (1995)..................................................................................................12

*Heck v. Triche*,
775 F.3d 265 (5th Cir. 2014) .....................................................................................25

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) .....................................................................................14

*Hoang v. ContextLogic*,
2024 WL 4471316 (N.D. Cal. Aug. 22, 2024) .....................................................23, 24

*Hohenstein v. Behringer Harvard Reit I, Inc.*,
2014 WL 1265949 (N.D. Tex. Mar. 27, 2014) ..........................................................13

*Hunt v. PricewaterhouseCoopers LLP*,
159 F.4th 603 (9th Cir. 2025) ................................................................................15, 16

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) .....................................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................20

*Ironworkers Local 580 – Joint Funds v. Linn Energy, LLC*,
29 F. Supp. 3d 400 (S.D.N.Y. 2014)...........................................................................12

*J & R Marketing, SEP v. General Motors Corp.*,
2007 WL 655291 (E.D. Mich. Feb. 27, 2007), *aff'd*, 549 F.3d 384 (6th Cir.
2008) ..........................................................................................................................16

*Jacobowitz v. Range Res. Corp.*,
596 F. Supp. 3d 659 (N.D. Tex. 2022) (Pittman, J.)..........................................15, 16

*In re Jiangbo Pharm., Inc. Sec. Litig.*,
884 F. Supp. 2d 1243 (S.D. Fla. 2012) ......................................................................18

*Johnson v. CBD Energy Ltd.*,
2016 WL 3654657 (S.D. Tex. July 6, 2016)...............................................................15

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) ................................................................................11, 13

*Krim v. BancTexas Group, Inc.*,
989 F.2d 1435 (5th Cir. 1993) ..............................................................................14, 16

*In re Levi Strauss & Co. Secs. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ..................................................................21, 23

*Linenweber v. Southwest Airlines Co.*,
693 F. Supp. 3d 661 (N.D. Tex. 2023) ....................20

*In re Meta Materials Inc. Secs. Litig.*,
Case No. 1:21-cv-0723-CBA-JRC (E.D.N.Y.) ....................2

*In re Metawave Communications Corp. Secs. Litig.*,
298 F. Supp.2d 1056 (W.D. Wash. 2003) ....................16

*Mitchell v. Ocwen Loan Servicing, LLC*,
2019 WL 5647599 (N.D. Tex. Oct. 31, 2019) ....................24

*North Collier Fire Control and Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*,
2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ....................12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) ....................13, 15

*Pease v. SEC*,
821 F. Supp. 3d 731 (W.D. Tex. 2026) ....................4

*Pierce v. Morris*,
2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) ....................19

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
245 F. Supp. 3d 870 (S.D. Tex. 2017) (granting dismissal), *aff'd* 777 F. App'x 726 (5th Cir. 2019) ....................11

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
135 F. Supp. 3d 145 (S.D.N.Y. 2015) ....................18

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) ....................17

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ....................14

*In re Safety–Kleen Corp.*,
2002 WL 32349819 (D.S.C. 2002) ....................21, 22

*SEPTA v. Orrstown Fin. Servs., Inc.*,
2015 WL 3833849 (M.D. Pa. June 22, 2015) ....................15

*Shivangi v. Dean Witter Reynolds, Inc.*,
825 F.2d 885 (5th Cir. 1987) ....................24

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023) ....................21, 22

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ....................25

*Stephens v. Uranium Energy Corp.*,
No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) ....................19

*Targgart v. Next Bridge Hydrocarbons, Inc.*,
2026 WL 1847853 (5th Cir. June 26, 2026) ....................1, 10, 20

*Targgart v. Next Bridge Hydrocarbons, Inc.*,
790 F. Supp. 3d 520 (N.D. Tex. 2025) ....................10

*Truk Int'l Fund LP v. Wehlmann*,
737 F. Supp. 2d 611 (N.D. Tex. 2009) ....................3, 11, 13

*Tuchman v. DSC Communs. Corp.*,
14 F.3d 1061 (5th Cir. 1994) ....................14

*White v. Melton*,
757 F. Supp. 267 (S.D.N.Y. 1991) ....................13

*Yaroni v. Pintec Tech. Holdings Ltd.*,
600 F. Supp. 3d 385 (S.D.N.Y. 2022) ....................13

**Rules and Statutes**

15 U.S.C. § 77k(a) ....................11, 19

15 U.S.C. § 77k(e) ....................20, 21, 23

15 U.S.C. § 77l(a)(2) ....................11, 20

Fed. R. Civ. P. 8 ....................11

Fed. R. Civ. P. 9(b) ....................11

17 CFR § 240.10b-5 ....................22

Securities Exchange Act
15 U.S.C. §77a et seq. ....................1, 11, 15, 16, 18, 19, 20, 22, 23

15 U.S.C § 11 ....................1, 10, 11, 13, 18, 19, 20, 21, 23

15 U.S.C. 78a - 78pp ....................11

17 C.F.R. § 229.404(a) ....................18

Defendants submit this brief in support of their renewed motion to dismiss the Amended Complaint ("AC" or "Complaint").

**INTRODUCTION**

The Fifth Circuit's opinion remanding this case expressly reserved Defendants' alternative grounds for dismissal for this Court "to consider in the first instance." *Targgart v. Next Bridge Hydrocarbons, Inc.*, 2026 WL 1847853, at *5 (5th Cir. June 26, 2026). Plaintiffs' claims fail for multiple additional reasons beyond the narrow "purchaser" issue addressed in the Fifth Circuit's opinion. The Court should grant dismissal on the alternate grounds set forth below.

***First***, the allegations again fail to show that Next Bridge made an actionable misstatement or omission. Next Bridge expressly disclosed that the balance sheet line items for its oil and gas properties were calculated ***based entirely on costs incurred***, rather than as an approximation of market value or future production. There is no allegation that the disclosed costs were inaccurate. Next Bridge disclosed that these line items were subject to future impairment testing and could be reduced, and that the underlying leases could be cancelled in 2023. The line items were not false statements of present fact and conveyed nothing materially misleading. The subsequent restatement on which Plaintiffs rely was later reversed based on SEC comments and would not establish a material misstatement for Securities Act purposes even if it applied to the time period at issue. Plaintiffs' other "misstatement" allegations regarding the composition and qualifications of the Audit Committee members and the purportedly insufficient disclosure regarding the "Option Agreement"—which in fact was expressly disclosed—likewise do not support a viable claim.

***Second***, the Section 11 claim against Defendants McCabe, Hawkins, and Oelkers fails because they did not sign the Registration Statement and are not proper Section 11 defendants.

***Third***, Plaintiffs do not plausibly allege damages under Section 11 or Section 12(a)(2). While the Fifth Circuit accepted that the cancellation of Plaintiffs' preferred shares in the predecessor entity (Meta) (the "Preferred Shares") was sufficient to make Plaintiffs "purchasers" under the Securities Act, that does not mean Plaintiffs have damages. The Securities Act does not

allow recovery for damages attributable to the unregistered Preferred Shares.[1] Further, at the time of the Spinoff, the only right conferred by those shares was the right to receive the ***same*** pro rata interest in Next Bridge, with the Preferred Shares automatically cancelling upon receipt of the Next Bridge shares. The Preferred Shares were subject to automatic cancellation whether the Next Bridge shares were valuable or worthless. The only thing surrendered at cancellation was the fully-satisfied right to get Next Bridge shares, making any "damages" a complete tautology.

***Fourth,*** and relatedly, Plaintiffs' claims are barred by the doctrine of negative causation. The allegations establish that the purported misstatements in the Registration Statement did not cause the Preferred Shares to be cancelled or the Next Bridge shares to be worth less than the Preferred Shares. To the extent there was any "injury," it was caused by Plaintiffs' decision ***before*** the Spinoff to acquire Preferred Shares that, at the time of the Spinoff, conveyed no rights to Plaintiffs other than the right to receive pro rata shares in the Spinoff entity, and which were subject to automatic cancellation even if the Next Bridge shares were worthless. Plaintiffs have no recoverable damages resulting from any alleged falsity in the Registration Statement.

***Fifth***, Plaintiffs' claims are barred in whole or part by the settlement and final judgment in *In re Meta Materials Inc. Secs. Litig.*, Case No. 1:21-cv-0723-CBA-JRC (E.D.N.Y.) (the "Meta Class Suit"); App. 961, 1053 (approving $3 million settlement for class of purchasers of publicly traded Meta shares from September 21, 2020 to June 24, 2022) (the "Meta Class Settlement").

***Lastly,*** the control person claims also fail as to all Defendants. The Court should thus dismiss all claims against the Next Bridge Defendants and enter a final judgment of dismissal.

**FACTUAL BACKGROUND**

On a motion to dismiss, the Court may consider Plaintiffs' allegations as well as "the full text of documents partially quoted in the complaint; the contents of relevant disclosure documents required to be filed with the SEC; the contents of documents integral to the complaint; and documents actually filed with the SEC, even if they are not mentioned in the complaint." *Truk Int'l*

[1] Plaintiffs' "appendices" and "loss charts" are based entirely (and impermissibly) on the amounts paid for their Preferred Shares. (*See* AC Appendix A & B; *see also* ECF #14-5 (listing Preferred Shares purchases)).

*Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 616 (N.D. Tex. 2009) (McBryde, J.) (cleaned up).

**A. The 2020-21 Torchlight-Meta Merger and the Creation of Next Bridge**

Next Bridge is an oil and gas development company formed to hold unsold oil and gas assets that were previously held by a company called Torchlight Energy Resources, Inc. AC ¶ 15. Torchlight was an oil and gas company that merged with Meta Materials, Inc. ("Meta") in June 2021. *Id*. ¶ 3. In connection with that merger, Torchlight shareholders received shares of non-voting preferred stock that "corresponded to the oil and gas assets that historically belonged to Torchlight." *Id*. Holders of the preferred shares were entitled to receive proceeds from the sale of those assets or, if the sale was not completed by a certain date, shares in a spinoff entity holding the assets (which became Next Bridge). *Id*.

The right to receive spinoff shares was created by a Certificate of Designation,[2] included as Schedule J to the December 14, 2020 Arrangement Agreement for the Torchlight-Meta merger. *See id.* ¶¶ 3, 30-33; *see also* App. 852 § 3(b)(iii) ("In the event there are any Remaining Assets at the Asset Sale Expiration Date, then the Spin-Off Dividend shall be paid as soon as reasonably practicable following the Asset Sale Expiration Date, subject to applicable law and securities registration exemption"); *id.* § 3(a) (defining "Spin-Off-Dividend" as "***pro rata equity in a spin-off entity to which the Company will transfer any Remaining Assets*** (and associated Company Business Costs") (emphasis added). The Certificate also stated that "***[i]mmediately upon***" payment of the Spin-Off Dividend, the Preferred Shares "***shall, automatically and without any action on the part of the holder thereof, cease to be outstanding and shall be cancelled*** and returned to the status of authorized but unissued shares of Preferred Stock and shall no longer be designated as Series A Preferred Stock, and any holder ***thereof shall thereafter cease to have any rights*** with respect to such shares." *Id.* §3(e) (emphasis added).

Because the underlying oil and gas assets were not sold by the cutoff date, Meta proceeded with creating the spin-off entity, Next Bridge, which would hold the assets. *Id*. ¶¶ 5, 33. Next

[2] The final signed Certificate was executed June 14, 2021 and contains materially the same features cited herein. Ex. J, App. 1060-1072.

Bridge filed its initial Registration Statement and Prospectus for the Next Bridge shares on July 15, 2022, followed by several amendments and a final prospectus (the "Final Prospectus") dated November 18, 2022 (the Final Prospectus together with the registration statement as amended, the "Registration Statement"). *See id.* ¶ 4; App. 1-263. Meta distributed the Next Bridge shares on December 14, 2022, which is the first day of the alleged class period. *See* AC ¶ 35; App. 131.

Plaintiffs allege "it was widely understood" that the Preferred Shares were "one and the same with the [Next Bridge] stock that would ultimately be received through the Spin-Off." *See* AC ¶ 34. Plaintiffs make no allegation that the number of Next Bridge shares they received was affected by the value of the assets or by the truth or untruth of any statements in the Registration Statement. Again, the Meta-Torchlight agreements provided that the preferred shareholders would get a "pro rata dividend of equity in a spin-off entity to which Meta will transfer any remaining assets," regardless of whether those assets were valuable or worthless. *See* App. 137. Further, while Plaintiffs allege that they bought Preferred Shares "over-the-counter" (trading symbol "MMTLP") at variable prices through December 8, 2022 (*see* AC ¶ 37& Appendix A-B to AC), Plaintiffs do not allege that Preferred Shares could be sold after December 8, 2022, as they were subjected to a FINRA trading halt. *See Pease v. SEC*, 821 F. Supp. 3d 731, 741 (W.D. Tex. 2026) (describing trading halt of Preferred Shares). Any shares held through December 8, 2022 thus could not be sold and would be automatically cancelled upon the December 14 Spinoff. *See id.*

**B. The Individual Defendants**

The Individual Defendants include various Next Bridge current and former executives. Robert Lance Cook was a Next Bridge director before the spin-off and signed the Registration Statement. AC ¶ 16. Clifton Dubose, Jr., was employed by a Next Bridge subsidiary before the spin-off and became Next Bridge's Chief Executive Officer and Chairman of its Board of Directors after the spin-off. *Id.* ¶ 17. Joseph DeWoody and Delvina Oelkers were also employed by a Next Bridge subsidiary before the spin-off and subsequently served as Next Bridge officers after the spin-off. *Id.* ¶¶ 19–20. Lucas T. Hawkins, Mia Pitts, and Kristin Whitley did not have positions before the spin-off but became Next Bridge officers or directors after the spin-off. *Id.* ¶¶ 18, 21–

22. Plaintiffs have also named as a Defendant Gregory McCabe, though he held no position at Next Bridge until becoming a Next Bridge director in June 2023. *Id.* ¶ 23; App. 423.

**C. The Registration Statement**

While it was still a Meta subsidiary, Next Bridge filed the Registration Statement and its amendments. (AC ¶ 4.) Plaintiffs complain about statements on three different topics. *Id.* ¶ 6.

**1. Line Items for Oil and Gas Properties**

Plaintiffs complain about the line items for "oil and natural gas properties" on Next Bridge's balance sheet (the "Line Items") as reported in the Registration Statement. (AC ¶¶ 6(a), 81.) The initial Registration Statement included Next Bridge's "Consolidated Balance Sheets" as of December 31, 2021, and March 31, 2022. They include a line item for "Oil and natural gas properties," with figures of $45,663,470 and $46,747,755, respectively. *See* App. 102. A Final Prospectus was filed on November 18, 2022. Ex. B (Next Bridge Hydrocarbons, Inc., Amended Prospectus, filed November 18, 2022) App. 131-263. The Line Item in the Final Prospectus for "oil and natural gas properties" as of September 30, 2022 was $47,293,607. App. 237.[3]

The Line Items are repeated in a separate table that just lists the oil and gas properties. *See* App. 111; App. 248. In the initial Registration Statement, the $45,663,470 number is expressly revealed to be the "unevaluated costs" and "[t]otal capitalized costs" for the "oil & natural gas properties of the Company." *See* App. 111. The final version includes a similar table likewise making clear that the $47,293,607 Line Item reflected the "unevaluated costs" and "[t]otal capitalized costs" as of September 30, 2022. *See* App. 248. The Registration Statement thus made clear that the Line Items simply reflected the ***unevaluated*** capitalized ***costs*** of the assets, rather than any valuation of likely future production from the wells or the market value of the assets.

In both documents, the notes to the financial statements explain that for the "oil and natural gas properties," Next Bridge uses the full-cost method of accounting. *See, e.g.*, App. 089; 187-88; 192; 245. It disclosed that "the costs of ***unsuccessful, as well as successful***, exploration and

[3] This figure is also provided in the November 9 amended registration statement and interim amendments.

development activities are capitalized as properties and equipment" for balance sheet purposes, including "any internal costs that are directly related to property acquisition, exploration and development activities but does not include any costs related to production, general corporate overhead or similar activities." App. 108; 192; 224; 245 (emphasis added). The Registration Statement also disclosed that the assets at issue had no "evaluated costs" because "we have ***no proved reserve value*** associated with our properties." *See* App. 111; 248 (emphasis added). Next Bridge further expressly disclosed that the Line Items could be impaired or reduced based on subsequent discoveries or events that require reclassification of unevaluated costs:

> The Company periodically adjusts for the separation of evaluated versus unevaluated costs within its full cost pool ***to recognize the value impairment related to the expiration of, or changes in market value, of unevaluated leases***. The impact of reclassifications as they become necessary is to increase the basis for calculation of future period's depletion, depreciation and amortization which effectively recognizes the impairment on the consolidated statement of operations over future periods. ***Reclassified costs also become evaluated costs for purposes of ceiling tests and which may cause recognition of increased impairment expense in future periods***. Due to the volatility of commodity prices, should oil and natural gas prices decline in the future, ***it is possible that a further write-down could occur. . . .*** Estimated reserves to be developed through secondary or tertiary recovery processes are classified as unevaluated properties.

*See* App. 111, 248. The Registration Statement further disclosed that "[u]nevaluated properties are reviewed for impairment at least annually and are determined through an evaluation considering, among other factors, seismic data, ***requirements to relinquish acreage, drilling results, remaining time in the commitment period,*** remaining capital plan, and political, economic, and market conditions." *See* App. 059, 89, 108, 192, 224, 245 (emphasis added).

The Registration Statement also contained stark risk disclosures about Next Bridge's prospects. *See* App. 014–31; App. 143–61. These included an express disclosure that "[o]ur acreage must be drilled before lease expiration in order to hold the acreage by production. In the highly competitive market for acreage, failure to drill sufficient wells in order to hold acreage will result in a substantial lease renewal cost, or if renewal is not feasible, loss of our lease and prospective drilling opportunities." App. 016; App. 146. Next Bridge further explained:

> ***In the event that we fail to meet our drilling obligations*** in the Orogrande Basin, whether because we are unable to obtain additional capital when required or

> otherwise, or if production ceases in the Midland Basin, ***our leases will expire***. If we have to renew such leases on new terms, we could incur significant cost increases, and we may not be able to renew such leases on commercially reasonable terms or at all. In addition, on certain portions of our acreage, third-party leases may become immediately effective if our leases expire. As such, our actual drilling activities may materially differ from our current expectations, which could adversely affect our business.

App. 016, 146 (emphasis added). The Registration Statement also warned:

> ***Because of the speculative nature of oil and natural gas exploration, there is risk that we will not find commercially exploitable oil and natural gas and that our business will fail.*** The search for commercial quantities of oil and natural gas as a business is extremely risky. ***We cannot provide investors with any assurance that any properties in which we obtain a mineral interest will contain commercially exploitable quantities of oil and/or natural gas. The exploration expenditures to be made by us may not result in the discovery of commercial quantities of oil and/or natural gas***. Problems such as unusual or unexpected formations or pressures, premature declines of reservoirs, invasion of water into producing formations and other conditions involved in oil and natural gas exploration often result in unsuccessful exploration efforts. ***If we are unable to find commercially exploitable quantities of oil and natural gas, and/or we are unable to commercially extract such quantities, we may be forced to abandon or curtail our business plan, and as a result, any investment in us may become worthless***.

App. 15, 145, 289. The Registration Statement also included a "going concern" qualification from Next Bridge's auditors, warning that Next Bridge may be unable to remain in business. *See* App. 144, 288. Plaintiffs assert that the Torchlight-Meta merger and subsequent MMTLP trading was part of a "larger plan" beginning "in or around June 2020" to create a "short squeeze" that would drive up the price of Torchlight and MMTLP shares. *See* AC ¶¶ 121-38. The Amended Prospectus warned that there was "no expectation that a trading market will develop" for Next Bridge shares, and that the OTC trading prices for the MMTLP shares—which traded publicly despite never being registered for offering—"may not be representative of the value of" the Next Bridge shares in light of the potential MMTLP short squeeze. *See* App. 160. There is no allegation that the Next Bridge shares became tradeable after the Spinoff.

In other words, Next Bridge made clear that its sole assets consisted of unevaluated oil and gas properties with no proven reserves, that its business was "extremely risky" and may not succeed in finding any "commercially exploitable oil and natural gas," that the Line Items were calculated solely based on "unevaluated costs" rather than any market value or estimate of future production, that those costs were capitalized regardless of whether the wells were ultimately

successful or unsuccessful, that the assets could be impaired based on the results of future periodic evaluations or other events, that Next Bridge could forfeit its underlying leases in the near future, that Next Bridge could lose the right to drill on the properties if the leases expired, and that the business was in sufficiently precarious shape that it drew a "going concern" qualification. There is also no allegation that the recitation of "unevaluated costs" was inaccurate, nor are there any well-pled facts showing that Next Bridge had already conducted a periodic review of the properties that required a different accounting treatment or that any other facts existed as of the Registration Statement that prevented Next Bridge from reporting the Line Items as set forth therein.

**2. Next Bridge's Audit Committee**

Plaintiffs also vaguely assert that the Registration made misleading statements regarding the composition and qualifications of Next Bridge's Audit Committee. *See* AC ¶¶ 6(b), 83-86. The only apparent basis for why these statements are supposedly false is the argument that the Line Items are misleading and, therefore, that the Audit Committee members must have been incompetent or unqualified. *See id.* ¶ 86. As stated above, however, Plaintiffs plead no facts showing that the Line Items are actionable misstatements in the first instance, let alone any facts showing that the Audit Committee members' backgrounds were misrepresented in any way.

**3. The Option Agreement**

Plaintiffs lastly make an equally vague assertion that the Registration Statement failed to disclose the "Option Agreement." AC ¶ 6(c); ¶¶ 89-90. In the same breath, however, Plaintiffs admit that the Registration Statement did in fact disclose the Option Agreement as a related-party transaction. *See id.* ¶ 90; App. 206 (listing Option Agreement under the heading "Transactions with Stockholder Gregory McCabe" in the "Certain Relationships and Related Party Transactions" section). On August 13, 2020, two Next Bridge subsidiaries entered the Option Agreement (amended September 2020) with Masterson Hazel Partners, LP ("MHP") and McCabe Petroleum Company ("MPC"). App. 95, 230, 249. MHP's general partner, Masterson Hazel Management LLC, was jointly owned by MPC and another entity. AC ¶ 93. The Option Agreement obligated MHP to drill and complete wells that would satisfy the continuous development obligations for

the "Hazel Project." AC ¶ 90. In exchange, MHP had the option to purchase the entire Hazel Project. *Id*. If MHP declined to exercise the option to buy the Hazel Project, then Next Bridge would be obligated to reimburse MHP for its drilling costs to the extent that the wells that MHP drilled produced revenues. App. 019, 206-07. The Final Prospectus disclosed the transaction as a related-party transaction, explaining that MPC was owned by McCabe. App. 206. Plaintiffs allege McCabe's ownership interest in MHP was not disclosed, but make no allegation that the Hazel Project actually yielded any value or revenue that McCabe appropriated. AC ¶ 93.

**D. Subsequent SEC Filings and Restatement**

On March 31, 2023, Next Bridge filed its 2022 Annual Report on Form 10-K. *See* Ex. D (Next Bridge Hydrocarbons, Inc., 2022 Annual Report on Form 10-K, filed March 31, 2023). App. 272-348. It identified the carrying value on its balance sheet for the oil and gas assets as of December 31, 2022, as $79,695,928—an increase from the numbers in the Registration Statement, presumably because Next Bridge had incurred additional costs during the remainder of 2022 to develop the oil and gas wells. *See* App. 331.

On July 17, 2024, Next Bridge filed its 2023 Annual Report on Form 10-K. Ex. E (Next Bridge Hydrocarbons, Inc., 2023 Annual Report on Form 10-K, filed July 17, 2024). App. 350-668. Among other things, it restated Next Bridge's consolidated financial statements for the year ending December 31, 2022. *See* App. 352. The Company explained that in looking at the financials for the year ended December 31, 2023, it found that "[a] triggering event" had occurred—namely, "the potential expiration of the underlying mineral lease related to the Company's Orogrande Project on December 31, 2024 . . . ." *Id*. Because "there was no assurance that the mineral lease would, in fact, be renewed before December 31, 2024," Next Bridge decided "to impair 100% of the carrying value of the Company's oil and natural gas assets as of December 31, 2023." *Id*. And, in light of "the combined auditing engagement for 2022 with the audit for 2023, the Company recorded an impairment as of December 31, 2022" in addition to the December 31, 2023 impairment. *See id.* There is no allegation, however, that Next Bridge restated the Line Items as of September 30, 2022, as they were reported in the final Registration Statement. The Registration

Statement moreover expressly disclosed that "these leases in the Orogrande Basin are also subject to expiration in 2023 in the event we fail to drill an additional five wells during the 2023 calendar year." App. 191. It further disclosed that the Orogrande property was "subject to a DDU Agreement" that "expires on December 31, 2023." App. 249. Plaintiffs do not and cannot allege the Registration Statement makes any commitment or promise that Next Bridge will be able to extend its Orogrande leases beyond 2023. On September 16, 2025, in response to SEC comments stating that Next Bridge should ***not*** have impaired the year-end 2022 and 2023 Line Items based on the subsequent lease expiration, Next Bridge ***reversed*** the restated impairment of the year-end 2022 and 2023 Line Items for the leases. *See* Ex. G (Next Bridge Hydrocarbons, Inc.'s September 16, 2025 Form 10-K/A). App. 860-950.

### E. Procedural History

The Court previously dismissed this action on July 3, 2025, concluding that Plaintiffs' acquisition of their Next Bridge shares was not a "sale" because Plaintiffs "did not give value for their Next Bridge shares." *See Targgart v. Next Bridge Hydrocarbons, Inc.*, 790 F. Supp. 3d 520, 525, 527-28 (N.D. Tex. 2025). The Court also concluded that Defendant Brda—who filed his own separate dismissal motion—was not a "seller" of Next Bridge securities because his public statements pertained to the pre-Next Bridge entities. *See id.* at 528. On June 26, 2026, the Fifth Circuit reversed the dismissal, concluding that the cancellation of Plaintiffs' Preferred Shares was sufficient to make the Next Bridge share distribution a "sale" for Section 11 and 12(a)(2) purposes and that the allegations sufficiently alleged Brda to be a statutory seller of Next Bridge shares, but reserving judgment on all other issues. *See Targgart*, 2026 WL 1847853, at *3-4.

## ARGUMENT

Plaintiffs' claims fail for several reasons. ***First***, Plaintiffs have alleged no facts showing a materially misleading statement or actionable omission. ***Second***, several defendants fall outside the Section 11 definition of proper defendants. ***Third***, the allegations fail to show damages resulting from the Registration Statement. ***Fourth***, the Rule 12 record establishes negative causation on its face because the alleged injuries resulted entirely from pre-Spinoff statements.

***Fifth***, the Meta Class Settlement bars all or part of Plaintiffs' claims. ***Lastly***, the Section 15 claims fail. The claims against Defendants should again be dismissed in their entirety.

**I. The Registration Statement Was Not Actionably and Materially Misleading.**

Courts frequently dismiss Section 11 and Section 12(a)(2) claims on the pleadings when, as here, the allegations fail to show that the challenged statements are materially misleading when the Registration Statement is read as a whole, without any need for recourse to Rule 9(b). *See, e.g., Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210-21 (5th Cir. 2004) (affirming dismissal of Section 11 claim under Rule 8 based on failure to show material misstatements); *In re Franklin Bank Corp. Secs. Litig.*, 782 F. Supp. 2d 364, 382 (S.D. Tex. 2011) (applying Rule 8 to Section 11 claims but granting dismissal); *Truk Intern. Fund*, 737 F. Supp. 2d at 625 (dismissing Section 11 claims under Rule 8 pleading requirements). Both Section 11 and Section 12(a)(2) require well-pleaded allegations plausibly showing that the Registration Statement or Prospectus (which, again, formed part of the Registration Statement) "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 894 (S.D. Tex. 2017) (granting dismissal), *aff'd* 777 F. App'x 726 (5th Cir. 2019); 15 U.S.C. § 77k(a); 15 U.S.C. § 77l(a)(2). Because the falsity and materiality elements are substantively the same as they are for claims under the Securities Exchange Act, opinions addressing these elements for Exchange Act claims are pertinent in Securities Act cases. *See Plains*, 777 Fed. Appx. at 733 ("[t]he analysis for falsity does not differ from the similar analysis under the Exchange Act").

While Plaintiffs allege that Defendant Brda and Torchlight made "promotional" statements in earlier Torchlight press releases and on social media before the Spinoff (*see* AC ¶¶ 120-52), Plaintiffs do not appear to contend that these statements are separately actionable under Section 12(a)(2) as material misstatements in a prospectus and appear to confine their "misleading statements" claim to the Registration Statement itself. (*See* AC ¶ 117) (reciting that Next Bridge and Brda offered or sold securities "pursuant to the Registration Statement, which included a prospectus containing untrue statements. . . ."). The earlier statements could not be independently

actionable under Section 12(a)(2) in any event because they are not contained in anything resembling a "prospectus," nor are they "oral communications." *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 569 (1995) (emphasizing that a prospectus "is confined to a document that, absent an overriding exemption, must include the 'information contained in the registration statement'"). Defendants will thus focus once again on the Registration Statement itself.

### A. The Line Items Were Not Materially Misleading or Otherwise Actionable

Plaintiffs allege that the Line Items were misleading because they did not accurately reflect what the "oil and gas assets were worth." (AC ¶ 6(a); ¶ 81.) This claim fails. As stated previously, the Registration Statement made clear that the Line Items merely reflected the unevaluated capitalized costs associated with the underlying assets. *See supra* at 7-9. Next Bridge made no representation that the Line Items reflected the properties' market value or expected production.

#### 1. Next Bridge Disclosed How the Line Items Were Calculated and Warned of the Lease Expiration Risk That Materialized

Simply put, a financial disclosure is not misleading when, as here, the company expressly disclosed how the metric was calculated and there are no allegations showing the individual components of the calculation are themselves inaccurate. *See, e.g., North Collier Fire Control and Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *12 (S.D.N.Y. Sept. 30, 2016) ("Unless Plaintiffs can show that MDC somehow misled investors about how it actually calculated EBITDA, which they have not, there can be no claim for fraud") (quoting *Ironworkers Local 580 – Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014) (dismissing claim where plaintiffs were "unable to identify a single instance in which LINN's disclosures of how it calculated adjusted EBITDA, DCF, the distribution coverage ratio, or maintenance capex were incorrect"). Plaintiffs' allegations about "value" and "worth" of the assets "demonstrate no more than Plaintiffs' misunderstanding of [Next Bridge's] financial statements" and ignore the actual disclosures. *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y. 2022) (dismissing Section 11 claim based on financial statements).

Again, the purportedly omitted information—i.e., that the Line Items merely represent unevaluated costs rather than the actual value of the properties—was specifically disclosed, as was the risk that the values could be impaired based on subsequent analysis and that the underlying leases could expire within the next year or two. *See supra* at I.A.2; *Hohenstein v. Behringer Harvard Reit I, Inc.*, 2014 WL 1265949, at *9 (N.D. Tex. Mar. 27, 2014) (dismissal appropriate "'if the allegedly omitted or misrepresented information was in fact appropriately disclosed'") (quoting *White v. Melton*, 757 F. Supp. 267, 272 (S.D.N.Y. 1991)). There is no allegation that the Line Items did not in fact accurately reflect the unevaluated costs depicted therein. There was ***no misleading statement***. Moreover, Courts routinely dismiss claims for lack of material falsity when the company includes cautionary language warning about the very risks that ultimately materialize—i.e., that the leases may soon expire and the properties may need to be impaired after future evaluations. *See Kapps v. Torch Offshore*, 379 F.3d 207, 214-15 (5th Cir. 2004) (no material misstatement where company made "cautionary statements" about risk of price fluctuation); *Truk Int'l Fund*, 737 F. Supp. 2d at 625; *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016) (dismissing in part based on presence of detailed cautionary disclosures warning of key risks). That is because "an investor reads each statement within [an SEC filing], whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

### 2. The Line Items Were Not Misleading By Omission

Plaintiffs' allegations about the oil and gas properties' lack of successful exploration and development history (*see* AC ¶¶ 66-79) and Meta's writedown of the loan to Next Bridge (*see id.* ¶ 82) are a *non sequitur* and do not support a valid claim. Plaintiffs again identify no affirmative representation in the Registration Statement where Next Bridge touted the likelihood of future production from the properties or claimed they would likely have any market value or any value as collateral for a loan. An omission is not actionable unless it renders an affirmative statement

misleading. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) ("pure-omission claims are not actionable"); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541-42 (5th Cir. 2008) ("incomplete disclosure is actionable only if what [the company] said is misleading"). The Line Items again said nothing about the properties' actual economic value and were not rendered misleading merely because the assets allegedly had little or no value.

Absent an allegation showing that Next Bridge materially misled investors about the value of the properties, Plaintiffs cannot maintain a valid claim simply by contending Next Bridge should have labeled the assets "worthless" or used more strident language regarding the properties' alleged shortcomings. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) ("Azurix was under no duty to cast its business in a pejorative, rather than a positive, light"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 433 (5th Cir. 2002) (disclosures need not be "overly gloomy or cautious" as long as "reasonably consistent with reasonably available data"); *Tuchman v. DSC Communs. Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) (defendants had "no duty to 'employ the adjectorial characterization' that the plaintiffs believe is more accurate'") (internal citation omitted); *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 707 (S.D. Tex. 2013) (agreeing that companies need not "paint themselves in the most unflattering light possible" when disclosures are otherwise accurate). And again, the Registration Statement disclosed the potential expiration of the underlying leases. There are no allegations showing that Defendants knew of undisclosed facts that made any statements misleading. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993) (explaining that the evidence failed to show "that the information allegedly omitted from the prospectus was known to the issuer at the time the prospectus was distributed").

#### 3. The Subsequent, Later-Reversed Restatement Does Not Support a Claim, Particularly Under the Heightened Protections for Opinions

To the extent Plaintiffs assert that Next Bridge was not entitled under GAAP to report the Line Items the way it did or was required to take an earlier impairment, Plaintiffs plead no facts showing that Next Bridge's accounting treatment of the Line Items was factually and materially misleading when made. Courts have differentiated between the "factual" and "opinion"

components of accounting-related disclosures, and between the accounting-rule considerations for whether to make a restatement and the "materially-misleading-when-made" standard for pleading a federal securities claim. Starting with the former: to the extent the Line Items convey an estimate of value or an accounting judgment that no impairment was necessary at that time and that the use of full cost accounting was appropriate, judgments about valuation or compliance with accounting standards are statements of opinion, not fact, and are subject to heightened protections. *See, e.g., Hunt v. PricewaterhouseCoopers LLP*, 159 F.4th 603, 617-18 (9th Cir. 2025) (holding that line items in financial statements that were "based on Bloom Energy's subjective judgments (not statements of fact) concerning the actual useful life of the Energy Server" were opinions); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (accountant's statement that financial statements comply with PCAOB standards "also appears to be an opinion"); *SEPTA v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015) (defendant's "representation that its audit reports were presented in conformity with GAAP" was an opinion, not fact); *In re Gen. Elec. Co. Sec. Litig*., 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) ("Statements estimating the fair market value of assets are opinions, not matters of objective fact.").

Plaintiffs have not pled facts to support a Securities Act claim over Next Bridge's decision not to impair the Line Items at the time of the Registration Statement. To state a claim based on an opinion, Plaintiffs must allege that (1) the speaker did not actually hold the stated belief, (2) the opinion included embedded facts that were untrue, or (3) the opinion omitted "material facts about the issuer's inquiry into or knowledge concerning [the] statement of opinion" that "conflict with what a reasonable investor would take from the statement itself." *Omnicare*, 575 U.S. at 184, 186, 188-89. Plaintiffs have not pled facts showing that Next Bridge did not sincerely believe it was not required to recognize an impairment at the time of the Registration Statement, let alone that the statements contained any embedded untruths or omitted material facts. Again, Next Bridge expressly warned the underlying leases could be cancelled in 2023. *See Jacobowitz v. Range Res. Corp*., 596 F. Supp. 3d 659, 676 (N.D. Tex. 2022) (Pittman, J.) (opinion statement not misleading when considering "hedges, disclaimers or qualifications"). Plaintiffs identify no undisclosed facts

known to Defendants that would require an immediate impairment. *See Krim*, 989 F.2d at 1445.

Likewise, the mere fact that a company later restates a prior accounting determination—a restatement that, in this case, was later ***reversed*** as unnecessary based on SEC feedback—does not establish a materially misleading statement for Securities Act purposes. Courts have repeatedly differentiated between the factors leading to an accounting statement and the standard for showing material falsity in a securities case, emphasizing that just because a metric is later restated does not mean it was false when made. *See, e.g., In re Metawave Communications Corp. Secs. Litig.*, 298 F. Supp.2d 1056, 1079 (W.D. Wash. 2003) ("Plaintiffs' contention that [the company's] restatement is an admission that Defendants issued false and misleading financial reports is without merit"); *J & R Marketing, SEP v. General Motors Corp.*, 2007 WL 655291 at *12 (E.D. Mich. Feb. 27, 2007) (addressing plaintiffs argument that "a restatement of financial results raises a presumption of both falsity and materiality for pleading purposes," and concluding that "[w]hile these changes may have been material from an accounting perspective, Plaintiffs' brief is bereft of any legal authority to support its attempted alchemy of transforming an accounting standard into a principle of federal securities law, so this argument is without merit"), *aff'd*, 549 F.3d 384 (6th Cir. 2008); *see also Hunt*, 159 F.4th at 617-18 (affirming dismissal of claims based on subsequent restatement reclassifying service agreements as capital leases and concluding that earlier classifications were opinions). Once again, the factor leading to the temporary restatement—the uncertainty about whether a lease would be renewed—was specifically disclosed in the Registration Statement. Even if Plaintiffs had alleged sufficient facts to question Defendants' accounting judgment, the allegations fail to show the Registration Statement was misleading when considered as a whole, as Next Bridge again made no affirmative representation regarding the market value or likely future production associated with the properties and provided stark warnings about the risks of future impairments and failures. *See Jacobowitz*, 596 F. Supp. 3d at 676.

Further, by its terms, the restatement in 2024 applied only to the subsequent iteration of the Line Items "as of December 31, 2022" in Next Bridge's March 31, 2023 Form 10-K—***not to the earlier values as of September 30, 2022 reported in the final Registration Statement***. (*See*

AC ¶ 56; App. 352.) There are no allegations showing that Next Bridge was required to impair the oil and gas assets as of the September 30, 2022 date reported in the Registration Statement. *See In re Franklin Bank*, 782 F. Supp. 2d at 406-07 ("The fact that the Bank announced a need to file a restatement in August 2008 is insufficient to plead a Section 11 violation as to RBC's participation in the 2006 preferred stock offering"; noting that restatement only applied to year-end balance rather than at the time of the prospectus at issue earlier in the year). The restatement was instead based on the subsequent recognition during management's year-end 2023 impairment analysis of a "triggering event" based on the lack of assurance the Orogrande lease would be renewed at the end of 2024. *See* App. 352. Plaintiffs make no well-pleaded allegation that Next Bridge was required to take an impairment for 2022 as of September 30, 2022, which necessarily predated the year-end impairment analysis Next Bridge conducted in early 2023 to determine whether to impair the oil and gas assets at year-end 2022.

Plaintiffs have thus failed to state a claim based on the Line Items.

### B. The Audit Committee and Audit Representations Were Not Actionably False.

Plaintiffs' vague audit-related disclosures fare no better. (*See* AC ¶¶ 6(b), 83-86.) The only apparent basis for why these statements are supposedly false is the argument that the Line Items are misleading and, therefore, that the results were not "fairly" presented. (*See id.* ¶ 86.) The Line Items, however, were not misleading, and the representations about "fairly" presenting the financial results are inactionable opinions. *See supra* at 16. There is no allegation the potential Audit Committee members did not have the credentials and work history depicted in the Registration Statement. *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) (holding statement that described "internal processes and procedures which, although they failed to function correctly" was not materially misleading); *In re Donna Karan Int'l Secs. Litig.*, 1998 WL 637547, at *9 (E.D.N.Y. Aug. 14, 1998) (holding that "nondisclosures of mismanagement" cannot support claims under Section 11 or 12). Further, the Registration Statement disclosed that the "Audit Committee" described therein ***had not yet***

***been formed*** and thus could not have blessed or lent "credence" to the financial statements. *See* App. 065, 074 (explaining that the audit committee will be formed and appointed "[f]ollowing the Spin-Off"). The claims over the audit-related statements are simply without merit.

**C. Next Bridge Made No Material Omissions About the Option Agreement.**

Plaintiffs lastly say that Item 404 required Next Bridge to disclose more details about the Option Agreement. (AC ¶ 94.) Plaintiffs are wrong. Item 404 requires that financial statements filed with the SEC describe "any transactions, ***since the beginning of the registrant's last fiscal year***, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." 17 C.F.R. § 229.404(a) (emphasis added) (cleaned up). Item 404 thus did not require disclosure of the Option Agreement at all, much less additional details about it. First, the Option Agreement was entered into on August 13, 2020 and amended in September 2020, so by its own terms, it was not entered "since the beginning of the registrant's last fiscal year" (i.e., fiscal 2021) and thus falls outside Item 404. *See In re Jiangbo Pharm., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1259 (S.D. Fla. 2012) ("By failing to state when the transaction occurred, Plaintiffs also fail to sufficiently allege that Defendants had a duty to disclose the transaction at the time they made the statements Plaintiffs challenge."). The allegations also fail to show that McCabe's interest exceeded the $120,000 threshold. AC ¶ 94.

Furthermore, the allegations wholly fail to show how the alleged nondisclosure of MPC's alleged interest in MHP is materially misleading given that (1) the Registration Statement expressly listed the Option Agreement as a related-party transaction and disclosed McCabe's interest in MPC, the other counterparty to the transaction, and (2) there is an absence of any allegations suggesting that MPC's alleged interest in MHP materially changed the substance of the transaction. (*See supra* at I.A.2.) To the extent that the Hazel Project yielded revenues (and there is no allegation that it did), those revenues went to MHP only to repay drilling costs that Next Bridge itself would otherwise have had to expend, and such revenues would not have resulted in

profits for those who had an ownership interest in MHP. *See* AC ¶ 90 (describing MHP's right to revenue only until "it has recovered its reasonable costs and expenses for drilling, completing, and operating the well"). Plaintiffs fail to explain how MHP recouping some of its costs, with no profit going to MPC or McCabe, would have materially misled a reasonable investor in light of the overall disclosures, or that Item 404 required this level of detail. *See Stephens v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016) ("The alleged omissions from the Item 404 disclosures were not material"); *In re Francesca's Holdings Corp. Sec. Litig.*, No. 13-CV-6882, 2015 WL 1600464, at *16 (S.D.N.Y. Mar. 31, 2015) (omitted related-party information not material). The "Option Agreement" claim thus fails.

## II. The Section 11 Claim Fails As To McCabe, Hawkins, and Oelkers

The Section 11 claim against Defendants McCabe, Hawkins, and Oelkers separately fails because they did not sign the Registration Statement, were not directors at the time the Registration Statement was filed, and were not identified as directors for the future Next Bridge in the Registration Statement, so they are not within the zone of liability. *See* 15 U.S.C. § 77k(a). Plaintiffs have improperly named them as Section 11 defendants. That claim should be dismissed against them. *See, e.g., In re AFC Enter., Inc. Sec. Litig*., 348 F. Supp. 2d 1363, 1380 (N.D. Ga. 2004) (dismissing Section 11 claim against individual defendants not subject to Section 11).

## III. Plaintiffs Have Not Alleged Recoverable Damages

This suit should also be dismissed because Plaintiffs have not plausibly alleged damages. *See Pierce v. Morris*, 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006) ("Where a plaintiff fails to allege any conceivable damages for violation of the Securities Act his claims must be dismissed"); *In re Initial Pub. Offering Sec. Litig*., 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003) (granting dismissal where "Plaintiffs have no damages"). Defendants previously asserted that "Section 11(e)'s formula for calculating damages similarly precludes Plaintiffs' ability to recover damages here." (*See* ECF #50 at 10.) While Defendants did not break this into a stand-alone section or raise the additional negative causation and settlement release arguments below, the Court may and should consider these arguments. *See Linenweber v. Southwest Airlines Co*., 693 F. Supp. 3d

661, 687 (N.D. Tex. 2023) ("[T]he Court has discretion to address successive motions to dismiss for failure to state a claim"); *Doe v. Columbia-Brazoria I.S.D.*, 855 F.3d 681, 686 (5th Cir. 2017).

A Section 11 plaintiff may only recover "such damages as shall represent the difference between the ***amount paid for the security*** (***not exceeding the price at which the security was offered to the public***) and (1) the value thereof as of the time such suit was brought, or (2) the price at which ***such security*** shall have been disposed of in the market before suit, or (3) the price at which ***such security*** shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought." 15 U.S.C. § 77k(e) (emphasis added). Section 12(a)(2) plaintiffs may only "recover the consideration paid for ***such security*** with interest thereon, less the amount of any income received thereon, upon the tender of ***such security***, or for damages if he no longer owns the security." 15 U.S.C. § 77l(a)(2) (emphasis added). Section 12(a)(2) damages are "limited to rescission or rescissory damages if the shares have already been sold." *See Beaver County Empls. Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1058-59 (D. Minn. 2015). Thus, although the Fifth Circuit concluded that the "surrender" of "one security" for "another" was "for value" for standing purposes, *see Targgart*, 2026 WL 1847853, at *3, that does not answer whether the "amount paid," "consideration paid," or "price" of the Next Bridge securities ***exceeded*** the "value" of the Next Bridge securities at the time of suit. Damages and causation are distinct elements from standing and involve different statutory terms—i.e., "paid" and "price." *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 225 (5th Cir. 1994) (recognizing that causation and injury were distinct issues not evaluated by district court).

Under the Securities Act's plain terms, Plaintiffs cannot use their payments for the Preferred Shares, or the damages purportedly attributable to Plaintiffs' purchase or retention of those shares, to show what was "paid" for the Next Bridge shares. Damages under Section 11 and Section 12(a)(2) are again limited to the amounts "paid" for "the security" or "such security," referring exclusively to the security that was offered pursuant to the allegedly false registration or

prospectus (Next Bridge), not a different security purchased earlier (the Preferred Shares). *See* 15 U.S.C. §§ 77k(e); 77l(a)(2), (b); *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023) (recovery capped by "the value of the registered shares alone," and the term "such security" means only the securities registered by the registration statement). Under *Slack*, damages attributable to the purchase and retention of unregistered ***Preferred Shares***—including Plaintiffs' payment or overpayment for such shares—are thus not recoverable. *See* 598 U.S. at 767; *In re Safety–Kleen Corp.*, 2002 WL 32349819, *1 (D.S.C. 2002) (rejecting claim over purchase of unregistered securities that were later exchanged for equivalent registered shares). Plaintiffs effectively admit as much in their class definition, claiming only to represent persons or entities "that acquired shares ***of [Next Bridge]*** in connection with the Company's spin-off from Meta Materials ***on or around December 14, 2022***, and were damaged ***as a result thereof.*** . . ." (AC ¶ 95 (emphasis added).) Yet Plaintiffs' alleged damages are fully attributable to their purchase ***of Preferred Shares***—a point they drive home by emphasizing the alleged "plan" for a "short squeeze" to drive up the ***pre-Spinoff price of MMTLP***. *See supra* at 7; 2002 WL 32349819, at *1. The Amended Prospectus indeed warned not to rely on MMTLP prices as indicating the new shares' value. *See* App. 160.

Plaintiffs thus cannot claim damages for the Next Bridge shares based on payments or losses on the unregistered Preferred Shares, which would trample the Securities Act's "such security" limitation. *See Safety–Kleen*, 2002 WL 32349819, at *1. This makes sense, as it was not the acquisition of registered Next Bridge shares that caused Plaintiffs' alleged damages, but rather their purchase and retention of unregistered Preferred Shares tied to allegedly worthless assets. If Preferred Share investors had viewed the oil and gas assets as completely worthless, as Plaintiffs contend should have been disclosed before the Spinoff, the unregistered Preferred Shares would themselves be worthless and have a pre-Spinoff price of zero, thus reflecting that the alleged damages are based entirely on the acquisition of Preferred Shares rather than Next Bridge shares. *See In re Levi Strauss & Co. Secs. Litig.*, 527 F. Supp. 2d 965, 977 (N.D. Cal. 2007) (no plausible inference that "had the alleged misstatements and omissions been disclosed at the time of the registrations that other institutional investors would have been interested in purchasing their

unregistered securities"). Plaintiffs could have filed a Rule 10b-5 suit based on alleged damages attributable to their acquisition of Preferred Shares (just like Plaintiffs' counsel filed the earlier Meta Class Suit over different disclosures), but the Securities Act is narrower and bars damages derived from the Preferred Shares. *See Slack*, 598 U.S. at 769-70 (emphasizing narrower scope).

Nor does the amount or consideration "paid" through cancellation of the Preferred Shares plausibly exceed the subsequent value of the Next Bridge shares. The only right conferred by the Preferred Shares immediately before the Spinoff was the right to receive "pro rata equity" in the Spinoff entity, as the mineral assets were not sold by the deadline. (*See supra* at A.) The cancellation was an automatic embedded feature of the Preferred Shares and would occur whether the Spinoff shares were valuable or not, with no opportunity for shareholders to avoid cancellation if they did not sell their Preferred Shares. (*See* AC ¶¶ 3-4, *supra* at A.) Plaintiffs thus did not "pay" anything for the Next Bridge shares other than giving up their illusory "right" to continue holding Preferred Shares that conveyed nothing beyond the purely tautological right to receive Next Bridge shares, and which would automatically self-destruct by their own terms thereafter. Even if the mere cancellation of shares is assumed to have "value" for standing purposes,[4] it does not follow that Plaintiffs have plausibly alleged that the amount "paid" exceeds the value of what was received. *See In re Safety–Kleen*, 2002 WL 32349819, at *1 ("[N]o damages can be demonstrated because the transaction involves two sets of identical bonds"); *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 396 (E.D.N.Y. 2013) (agreeing that plaintiffs "cannot establish damages because the transaction involved two sets of identical bonds"). The distribution of the Next Bridge shares to holders of Preferred Shares fully satisfied and extinguished the sole substantive economic right conferred by the Preferred Shares. Further, Plaintiffs make no allegation that there was any public market for the Next Bridge shares, or that Plaintiffs' shares could have been sold between December 8, 2022 (the last day Plaintiffs' Preferred Shares were tradeable under the FINRA halt) and the date of the suit. Plaintiffs thus have not plausibly alleged damages. *See id.*

---

[4] Notwithstanding the Fifth Circuit's decision, Defendants respectfully continue to believe there is no statutory standing either and reserve the right to continue pursuing this argument if the litigation progresses.

## IV. Plaintiffs' Claims Fail Based on Negative Causation

"Negative causation" is similar to the "no damages" argument, except that it is grounded in principles of alternate or nonexistent causation. Section 11 provides that "if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable." *See* 15 U.S.C. § 77k(e). Section 12(a)(2)(b) contains a near-identical defense. *See id.* § 77l(b). Courts may dismiss Securities Act claims when the Rule 12 record establishes a negative causation defense. *See Hoang v. ContextLogic*, 2024 WL 4471316, at *13 (N.D. Cal. Aug. 22, 2024) (dismissing claim based on negative causation); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005) (same). Negative causation "has been analogized to the concept of proximate cause." *Cai v. Switch, Inc.*, 2020 WL 3893246, at *3 (D. Nev. July 10, 2020).

For essentially the same reasons as in Section III, the Rule 12 record establishes that Plaintiffs' alleged damages did not "result[] from" the allegedly false portions of the Registration Statement. The Preferred Shares were not cancelled because of the alleged misstatements, but were cancelled automatically based on their own embedded contractual terms upon distribution of the Spinoff shares, regardless of any purported misstatements in the Registration Statement. The entire alleged loss is attributable to Plaintiffs' acquisition of the unregistered Preferred Shares and is not recoverable under the Securities Act. *See In re Safety–Kleen*, 2002 WL 32349819, at *1. Disclosing the alleged total worthlessness of the underlying assets would have made the Preferred Shares similarly worthless before the Spinoff, further confirming Plaintiffs were not damaged by the purely tautological alleged "exchange" of Preferred Shares for Next Bridge shares. *See In re Levi Strauss*, 527 F. Supp. 2d at 977. The subsequent restatement and impairment moreover occurred due to the materialization of a disclosed risk—the expiration of leases—and not because of anything false in the Registration Statement. *See supra* at 9; *Gonzalez v. Intellia Therapeutics, Inc.*, 2026 WL 1758286, at *16 (D. Mass. June 18, 2026 (no causation from "materialization of a

previously disclosed risk"). The allegations also separately confirm there are no conceivable damages from the "Option Agreement" claim, as Plaintiffs allege no "corrective disclosures" or events where McCabe's allegedly undisclosed interest actually injured the company—and in any event, the Next Bridge shares never publicly traded. *See Hoang*, 2024 WL 4471316, at *11 (negative causation established where alleged corrective disclosures "do not reasonably evidence the alleged misstatements or omissions, and the complaint points to no additional indications of loss causation") (internal citation omitted). Negative causation bars Plaintiffs' claims.

**V. The Meta Class Settlement Bars Plaintiffs' Claims**

The Court should also take judicial notice of the Meta Class Settlement and dismiss Plaintiffs' claims in whole or in part based on the release and judgment. *See Mitchell v. Ocwen Loan Servicing, LLC*, 2019 WL 5647599, at *3 (N.D. Tex. Oct. 31, 2019) (judicially noticing filings in prior suit on motion to dismiss) (Pittman, J.); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 592-93 (S.D.N.Y. 2024) (taking judicial notice of settlement and granting Rule 12 dismissal). The Meta Class Settlement expressly releases all claims by all persons who "purchased Meta Materials and/or [Torchlight] publicly-traded securities during the Class Period and were damaged thereby," with a class period of September 21, 2020 to June 24, 2022. *See* Ex. H, Stipulation of Settlement in *In re Meta Materials Inc. Securities Litigation*, and Ex. I Final Judgment and Order of Dismissal with Prejudice in *In re Meta Materials Inc. Securities Litigation*. App. 961, 994, 1009, 1048. Plaintiffs assert the Preferred Shares traded OTC starting in October 2021, so these were publicly traded Meta or Torchlight shares within the class definition—a point Plaintiffs again drive home by characterizing the creation and subsequent trading of the Preferred Shares as part of a short-squeeze "plan" originating with the Meta-Torchlight merger. (*See* AC ¶¶ 34, 121-38; *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 886 n. 1 (5th Cir. 1987) (describing OTC market as publicly-traded).) All Plaintiffs are Meta Settlement Class Members. Plaintiff Martinez purchased most of his Preferred Shares before June 24, 2022. (AC App. B.) Plaintiff Targgart acquired most of his preferred shares through a "Preferred Dividend" in July 2021, which would be a "purchase" under the Fifth Circuit's prior logic in this case. (AC App. A.) Plaintiff Limon acquired all his

shares through the July 2021 Preferred Dividend. (AC ¶ 13.) The release extends to all "Related Parties" of Meta, including "past, present or future . . . subsidiaries" and affiliates," and encompasses Defendants. App. 960. While the first prong of "Released Plaintiffs' Claims" is limited to claims within the class period, the second prong includes "all claims alleged or that could have been alleged" in the litigation, with no time restriction. App. 960-61. Plaintiffs were class members, are represented by the same counsel as the Meta Class Suit plaintiffs, and could have added claims over their post-June 24, 2022 MMTLP purchases. Their claims are barred.

**VI. Plaintiffs' Section 15 Claim Fails.**

Because Plaintiffs' Section 11 and 12 claims fail, their Section 15 claim against the Individual Defendants should also be dismissed. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) ("Control person liability is secondary only . . . ."). The Section 15 claim also separately fails against Defendants Pitts, Whitley, and Hawkins because the allegations do not show they played any role at Meta, the company that caused the Registration Statement to be filed, or had the power to control its filing. *See Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (defendant must have "ability to control the specific transaction or activity" at issue) (cleaned up); *accord Ahders v. SEI Private Tr. Co*., 982 F.3d 312, 317 (5th Cir. 2020).

Plaintiffs' Section 15 claims against the other Individual Defendants also fail. The Spinoff was subject to approval by the Meta Board "in its sole and absolute discretion." App. 043; App. 183. Meta itself was the 100% owner of Next Bridge when the Registration Statement was filed. That means Meta and its executives—not Defendants here—had control over the offering documents. *See In re Franklin Bank*, 782 F. Supp. 2d at 379-80. There is also no allegation of "control" against McCabe other than his status of a significant shareholder of Next Bridge ***after*** (but not before) the Spinoff. *See, e.g., Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509-10 (5th Cir. 1990) (allegation that alleged controller "owned a minority position" insufficient).

**CONCLUSION**

Defendants respectfully request the Court **GRANT** this motion and **DISMISS** Plaintiffs' claims against them **with prejudice**.

Dated: August 24, 2026

Respectfully submitted,

*/s/ David J. Drez III*

**WICK PHILLIPS GOULD & MARTIN LLP**

David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Paul T. Elkins
State Bar No. 24092383
paul.elkins@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Tel.: (817) 332-7788
Fax: (817) 332-7789

**ATTORNEYS FOR DEFENDANTS LUCAS T. HAWKINS, MIA PITTS, KRISTIN WHITLEY, AND GREGORY MCCABE**

- and –

*/s/ Michael A. Swartzendruber*

**NORTON ROSE FULBRIGHT US LLP**

Michael A. Swartzendruber
State Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
Preston Glasscock
State Bar No. 24128515
preston.glasscock@nortonrosefulbright.com
Mary Katherine Nix
State Bar No. 24144075
marykatherine.nix@nortonrosefulbright.com
2200 Ross Ave., Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Peter A. Stokes

State Bar No. 24028017
peter.stokes@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201

**ATTORNEYS FOR NEXT BRIDGE HYDROCARBONS, INC.; ROBERT L. COOK; CLIFTON DUBOSE, JR.; JOSEPH DEWOODY; AND DELVINA OELKERS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record on August 24, 2026, through the Court's CM/ECF system.

*<u>/s/ H. Preston Glasscock</u>*
H. Preston Glasscock