IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TODD TARGGART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXT BRIDGE HYDROCARBONS, INC., ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, GREGORY MCCABE, and JOHN BRDA,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:24-cv-00767-P |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**
**FILED BY DEFENDANTS NEXT BRIDGE HYDROCARBONS, INC., ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, AND GREGORY MCCABE**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

A. NBH's Spin-Off. ................................................................................................ 2

B. The O&G Assets. ............................................................................................... 2

C. The Registration Statement. .............................................................................. 3

D. Damages. ........................................................................................................... 5

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 6

A. The Registration Statement Contained False Financial Statements, Misrepresented NBH's Internal Audit Controls, and Violated Regulation S-K's Disclosure Rules Concerning Related-Party Transactions. ............................................................ 6

1. Plaintiffs only need to satisfy Rule 8(a)(2)'s notice pleading standard. ..... 6

2. NBH should not have listed the O&G Assets as a $47 million asset in its balance sheets—regardless of whether it was claiming to list their "value" or "cost". ........................................................................................ 7

3. NBH did not have adequate audit controls in place. ................................ 14

4. Defendant McCabe held an undisclosed interest in the Hazel Assets. ..... 15

B. Defendants McCabe, Hawkins, and Oelkers Face Liability under Section 11. .... 16

C. Defendants Argue Incorrectly that Plaintiffs Have Not Been Damaged. ............ 17

D. Negative Causation Defenses Are Rarely Granted at the Pleading Stage. ........... 22

E. The Meta Materials Settlement Did Not Release Claims against Defendants...... 23

F. NBH's Officers and Directors Are Subject to Control Person Liability. ............. 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ... 20

*In re Agilon Health, Inc. Sec. Litig.*,
No. 1:24-CV-297-DAE, 2025 U.S. Dist. LEXIS 158673 (W.D. Tex. Aug. 15, 2025) ... 12

*Akerman v. Oryx Communications, Inc.*,
810 F.2d 336 (2d Cir. 1987) ... 19

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ... 18, 22

*In re Apache Corp. Sec. Litig.*,
No. 4:21-cv-00575, 2022 U.S. Dist. LEXIS 166588 (S.D. Tex. Sep. 15, 2022) ... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 6

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ... 8

*Aubrey v. Barlin*,
No. A-10-CA-076-SS, 2011 U.S. Dist. LEXIS 15332 (W.D. Tex. Feb. 16, 2011) ... 25

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) ... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ... 6

*Braun v. Eagle Rock Energy Partners, L.P.*,
223 F. Supp. 3d 644 (S.D. Tex. 2016) ... 11

*Campton v. Ignite Rest. Grp., Inc.*,
No. 4:12-2196, 2014 U.S. Dist. LEXIS 1751 (S.D. Tex. Jan. 7, 2014) ... 22

*Chen v. Missfresh Ltd.*,
701 F. Supp. 3d 236 (S.D.N.Y. 2023) ... 12

*Collmer v. U.S. Liquids, Inc.*,
268 F. Supp. 2d 718 (S.D. Tex. 2001) ... 7

*In re Constar Int'l Inc. Sec. Litig.*,
585 F.3d 774 (3d Cir. 2009) ... 18, 19

*In re Dynegy, Inc.*,
339 F. Supp. 2d 804 (S.D. Tex. 2004) .......... 23

*FDIC v. Jacobs*,
No. 3:13-cv-00084-RCJ-VPC, 2014 U.S. Dist. LEXIS 157449 (D. Nev. Nov. 5, 2014).......... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
411 F. Supp. 2d 377 (S.D.N.Y. 2006) .......... 19

*In re Franklin Bank Corp. Sec. Litigation*,
782 F. Supp. 2d 364 (S.D. Tex. 2011) .......... 6

*Freedman v. Value Health, Inc.*,
190 F.R.D. 33 (D. Conn. 1999) .......... 19

*Fresno Cty. Emples. Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) .......... 8

*G.A. Thompson & Co., Inc. v. Partridge*,
636 F.2d 945 (5th Cir. 1981) .......... 25

*In re GE Co. Sec. Litig.*,
998 F. Supp. 2d 145 (S.D.N.Y. 2014) .......... 24

*Griffin v. GK Intelligent Sys., Inc.*,
87 F. Supp. 2d 684 (S.D. Tex. 1999) .......... 24, 25

*H&H Acquisition Corp. v. Fin. Intranet Holdings*,
No. 98 Civ. 5269 (BSJ), 1999 U.S. Dist. LEXIS 16861 (S.D.N.Y. Oct. 21, 1999).......... 24

*Hemmer Grp. v. Sw. Water Co.*,
527 F. App'x 623 (9th Cir. 2013) .......... 8, 24

*Herman & Maclean v. Huddleston*,
459 U.S. 375 (1983) .......... 1, 7, 17, 19

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) .......... 20, 23

*Hunt v. PricewaterhouseCoopers LLP (PwC)*,
159 F.4th 603 (9th Cir. 2025) .......... 14

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) .......... 7

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) .......... 6

*Kay Strategies v. Ubiquity, Inc.*,
No. 15-cv-2720-H-DHB, 2016 U.S. Dist. LEXIS 144999 (S.D. Cal. July 15, 2016) .............. 24

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013)........................................................................... 6

*In re Levi Strauss & Co. Sec. Litigation*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ......................................................................... 21

*Limantour v. Cray Inc.*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006) ..................................................................... 15

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011)........................................................................................... 8

*In re Lottery.com, Inc. Sec. Litig.*,
715 F. Supp. 3d 506 (S.D.N.Y. 2024)........................................................................... 13

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ......................................................................................................... 7

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014).......................................................................................... 14

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
78 F. Supp. 3d 1215 (N.D. Cal. 2015) .......................................................................... 13

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) .......................................................................... 14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012).......................................................................................... 18

*In re Netsolve, Inc. Sec. Litig.*,
185 F. Supp. 2d 684 (W.D. Tex. 2001)......................................................................... 24

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
80 F.4th 158 (2d Cir. 2023)........................................................................................... 13

*Nykredit Portefølje Admin. v. Propetro Holding Corp.*,
No. MO:19-CV-217-DC, 2021 U.S. Dist. LEXIS 259633 (W.D. Tex. Sep. 13, 2021)............ 15

*Obasi Inv., Ltd. v. Tibet Pharms., Inc.*,
931 F.3d 179 (3d Cir. 2019).......................................................................................... 17

*In re Old Banc One Shareholders Securities Litigation*,
No. 00 C 2100, 2004 U.S. Dist. LEXIS 7563 (N.D. Ill. Apr. 29, 2004) ................................... 21

*P. Stolz Fam. P'ship L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004) ........ 12

*Pappas v. Qutoutiao Inc.*,
No. 23-1233, 2024 U.S. App. LEXIS 27250 (2d Cir. Oct. 28, 2024) ........ 6

*In re Perrigo Co. PLC Sec. Litig.*,
435 F. Supp. 3d 571 (S.D.N.Y. 2020) ........ 13

*Police & Fire Ret. Sys. v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) ........ 15

*In re Safety-Kleen Bondholders Litigation*,
No. 3:00-1145-17, 2002 U.S. Dist. LEXIS 29490 (D.S.C. June 14, 2002) ........ 21

*In re Safety-Kleen Corp. Bondholders Litigation*,
No. L 3:00-1145-17, 2002 U.S. Dist. LEXIS 26735 (D.S.C. Mar. 27, 2002) ........ 21

*S.E.C. v. Kelly*,
663 F. Supp. 2d 276 (S.D.N.Y. 2009) ........ 8

*SEC v. National Student Marketing Corp.*,
457 F. Supp. 682 (D.D.C. 1978) ........ 20

*SEC v. World Tree Fin., L.L.C.*,
43 F.4th 448 (5th Cir. 2022) ........ 7

*Shoen v. SAC Holding Corp.*,
137 P.3d 1171 (Nev. 2006) ........ 17

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023) ........ 22

*In re Snap Sec. Litig.*,
No. 2:17-cv-03679-SVW-AGR, 2018 U.S. Dist. LEXIS 97704 (C.D. Cal. June 7, 2018) ........ 19

*In re Unicapital Corp. Sec. Litig.*,
149 F. Supp. 2d 1353 (S.D. Fla. 2001) ........ 16

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 15-7658 (MAS)(LHG), 2021 U.S. Dist. LEXIS 180161 (D.N.J. Sep. 21, 2021) ........ 19

*Vandling v. XRC, LLC*,
No. 3:16-CV-1399-BK, 2019 U.S. Dist. LEXIS 239972 (N.D. Tex. June 10, 2019) ........ 7

*In re Venator Materials PLC Sec. Litig.*,
547 F. Supp. 3d 624 (S.D. Tex. 2021) ........ 7

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) ... 6

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ... 19

*Zagami v. Natural Health Trends Corp.*,
540 F. Supp. 2d 705 (N.D. Tex. 2008) ... 15, 16

**Statutes**

15 U.S.C. §77k ... 16, 22

**Regulations**

17 C.F.R. §210.4-01 ... 13

17 C.F.R. §230.145 ... 20, 21

# INTRODUCTION

Defendants violated the federal securities laws by filing a false and misleading registration statement with the U.S. Securities and Exchange Commission. The registration statement was filed on behalf of Next Bridge Hydrocarbons Inc. ("NBH") and contained false financial statements, misrepresented NBH's internal audit controls, and concealed material related-party transactions. By statute, the mere fact that NBH's registration statement contained false statements means that "[l]iability against [Defendants] is virtually absolute." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 381-82 (1983).

Defendants take the position that Plaintiffs' case should be dismissed because NBH's registration statement did not contain any false or materially misleading statements. This argument disregards both Plaintiffs' well-pleaded facts and the meaning of Rule 8(a)'s notice pleading requirements. NBH's registration statement included balance sheets stating its oil and gas assets (the "O&G Assets") were worth $47 million, as excerpted below:

**NEXT BRIDGE HYDROCARBONS, INC.**
**UNAUDITED CONDENSED CONSOLIDATED BALANCE SHEETS**

| | September 30, 2022 | December 31, 2021 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash | $ 2,108,866 | $ 1,989,419 |
| Accounts receivable, related party | 165,238 | 163,366 |
| Grants and other receivables | 50,970 | 74,310 |
| Prepaid expenses | 6,621 | 2,667 |
| Total current assets | 2,331,695 | 2,229,762 |
| Oil and natural gas properties, net | 47,293,607 | 45,663,470 |
| Other assets | 25,000 | 25,000 |
| TOTAL ASSETS | $ 49,650,302 | $ 47,918,232 |

Dkt. No. 81-2 (App. 0237). Plaintiffs allege that the O&G Assets were worthless at all relevant times, as evidenced by: 1) NBH's restatement of its financial statements revealing that the O&G Assets were worth $0; 2) NBH's former parent company, Meta Materials, Inc. ("Meta Materials"), writing down loans collateralized by the O&G Assets; and 3) Defendants' internal correspondence

admitting that the O&G Assets never produced any meaningful quantities of oil and gas. Defendants do not address these allegations head-on but instead argue that NBH's balance sheets "merely reflected the unevaluated capitalized costs associated with the underlying assets" as opposed to the "market value or expected production." Dkt. No. 81 at 12. That is no defense. False financial statements are actionable regardless of the accounting methods used to generate the numbers. Even under Defendants' "cost" accounting methodology, the balance sheets still should have read $0 because Defendants knew the O&G Assets were non-producing wells and did not have any intent or ability to develop them.

## STATEMENT OF FACTS

### A. NBH's Spin-Off.

NBH finds its genesis in Torchlight Energy Resources, Inc. ("Torchlight"), a publicly-traded oil and gas company operating primarily in the Orogrande Basin in West Texas. ¶¶2, 26.[1] On June 28, 2021, Torchlight merged with a Canadian technology company named Metamaterial Technologies Inc. ("Metamaterial"). ¶¶3, 32. Pursuant to the terms of the merger, Torchlight shareholders received preferred shares of stock through a special dividend that entitled them to a piece of Torchlight's oil and gas assets if/when they were sold by the combined company, Meta Materials. ¶¶3, 29-32. Meta Materials ultimately did not sell the O&G Assets but instead spun them off into NBH. ¶¶4, 33.

### B. The O&G Assets.

Torchlight's oil and gas assets consisted primarily of oil and natural gas leases in the Orogrande Basin in Hudspeth County, Texas (the "Orogrande Assets"). ¶48.[2] The importance of

[1] Citations to "¶__" refer to Plaintiffs' Amended Complaint (Dkt. No. 41).
[2] The O&G Assets also included: minor interests in the Eastern edge of the Midland Basin in West Texas (the "Hazel Assets"); and two minor well interests in Oklahoma (the "Oklahoma Assets").

the Orogrande Assets first emerged in 2019 when Torchlight claimed they comprised an estimated 3.7 billion barrels of oil. ¶49. Torchlight reiterated this claim over the following years, telling investors that it was focused on developing the Orogrande Assets with an estimated "3.7 billion barrels" of recoverable oil and between "5 and 8 Tcf of gas." ¶¶50-52 (excerpts of investor presentations and tweets authored by Defendant Brda).

Meta Materials issued the preferred shares for the O&G Assets in June 2021. ¶¶3, 32. In October 2021, the shares started trading on over-the-counter markets under the ticker symbol "MMTLP". ¶34. Investors understood that the MMTLP shares represented interests in Torchlight's O&G Assets. ¶34. Defendant Brda, who was Torchlight's CEO prior to the merger (¶25), told shareholders that they could invest in the O&G Assets by purchasing MMTLP shares because they were "basically the same thing." ¶34. The MMTLP shares traded publicly from October 2021 through December 2022. ¶34.

## C. <u>The Registration Statement.</u>

On July 14, 2022, while the preferred shares were trading publicly, NBH filed a registration statement on Form S-1. ¶4. On November 18, 2022, the SEC declared the registration statement "effective" (the "Registration Statement"). ¶4. Unbeknownst to shareholders at the time, the Registration Statement contained the following false and/or materially misleading statements.

<u>The Registration Statement represented that the O&G Assets were worth in excess of $47 million as of September 30, 2022 (¶81)</u>. The O&G Assets were not worth in excess of $47 million, or anything close to it at any point in time. Plaintiffs rely on three facts to support this contention. *First*, in its 2023 annual report, NBH restated the value of the O&G Assets to zero ($0). ¶56. Companies restate financial statements to correct material errors, thereby confirming that NBH's

---

¶38. The Hazel and Oklahoma Assets are not at issue in this case; there is no dispute that at all relevant times they were non-producing and/or did not generate any revenue for NBH. ¶¶42-47.

financial statements were false when made. ¶¶57-58. *Second*, Meta Materials likewise impaired the value of the O&G Assets in its 2022 annual report immediately following the spin-off. ¶¶62-65. *Third*, the O&G Assets have always been worthless based on the fact that the Orogrande Assets have never demonstrated any capacity to produce oil or gas. The Orogrande Assets comprising the O&G Assets were located miles away from the nearest gas pipeline, had been abandoned by previous owners and co-developers, and did not produce hydrocarbons at any profitable rate. ¶¶66-76. Indeed, according to internal emails, the best well in the Orogrande Assets had been shut-in because it produced only a "[s]kim of oil (not a barrel & none sold) & very little gas." ¶77. The other wells produced only "fresh water" and, at that, "were a nightmare to drill," according to Defendant McCabe. ¶78. Furthermore, records with the Texas Railroad Commission show zero oil and zero natural gas production. ¶79.

The Registration Statement represented that its financial statements fairly presented, in all material respects, NBH's financial position and had been checked by a qualified audit committee (¶¶83-85). NBH's financial statements did not fairly present its financial position. ¶86. Instead, the Registration Statement misstated the value of the O&G Assets on NBH's financial statements, claiming they were worth in excess of $47 million when in fact they were worth $0. Furthermore, the Registration Statement contained a lengthy recitation of the roles and responsibilities belonging to NBH's Audit Committee, including its responsibility for the review of NBH's financial statements to ensure their accuracy, and management's participation in presenting NBH's financial position. These descriptions of NBH's internal processes falsely portrayed the accuracy of its financial statements and audit controls. ¶86.

In violation of Regulation S-K, the Registration Statement concealed Defendant McCabe's financial interest in an agreement that diverted oil and gas revenue away from NBH (the "Option

Agreement") (¶¶89-94). Item 404 of Regulation S-K required NBH to disclose certain information about related-party transactions. ¶88. NBH disclosed the Option Agreement but omitted Defendant McCabe's full financial interest in it. Specifically, the Option Agreement required NBH to give all revenue generated from the Hazel Assets to a third-party entity named Masterson Hazel Partners, L.P. ¶¶89, 90. The Registration Statement did not disclose that McCabe held a material interest in Masterson Hazel Partners, L.P. Likewise, the Registration Statement did not disclose the amount of money McCabe was receiving under it. ¶¶91-94.

### D. Damages.

On December 14, 2022, Meta Materials completed the spin-off of the O&G Assets into NBH. ¶¶5, 35. Plaintiffs tendered their preferred shares in Meta Materials in exchange for shares in NBH believing that they owned an interest in oil and gas assets worth over $47 million. Their belief was misplaced not because of anything they did or failed to do, but because Defendants had falsely overvalued the O&G Assets despite knowing they were worth nothing. Consequently, Plaintiffs received shares in a company that was worth substantially less—actually nothing—than what was represented in the Registration Statement. This difference in value equates to Plaintiffs' damages and can be measured in several different ways, including but not limited to the change in book value on NBH's balance sheet and/or the difference between what Plaintiffs paid for the shares (either before the merger or while trading over-the-counter under the "MMTLP" ticker symbol) and present market value. *Compare* ¶56 (showing $79.7 million decrease in book value at time of restatement) *with* ¶¶36-37 (identifying MMTLP stock sales made by Defendants McCabe and Brda prior to spin-off at prices between $2.90/share and $11.65/share).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be denied where the plaintiffs plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Claims under Sections 11 and 12 are evaluated under Rule 8(a)(2)'s "notice" pleading standard. *In re Franklin Bank Corp. Sec. Litigation*, 782 F. Supp. 2d 364, 382 (S.D. Tex. 2011).

## ARGUMENT

### A. The Registration Statement Contained False Financial Statements, Misrepresented NBH's Internal Audit Controls, and Violated Regulation S-K's Disclosure Rules Concerning Related-Party Transactions.

1. Plaintiffs only need to satisfy Rule 8(a)(2)'s notice pleading standard.

Section 11 of the Securities Act "requires only notice pleading under Federal Rule of Civil Procedure 8," *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 664 (N.D. Tex. 2013), under which a complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hile a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 U.S. App. LEXIS 27250, at *3 (2d Cir. Oct. 28, 2024) (internal quotations omitted); *see also Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004) ("Section 11 only requires notice pleading under Fed. R. Civ. P. 8 rather than the detailed pleading mandated by Fed. R. Civ. P. 9(b) or the Private Securities Litigation Reform Act"). Plaintiffs' claims do not rely upon "averments of fraud" and, therefore, are not subject to Rule 9(b). *See* ¶80 ("The Registration Statement was negligently prepared . . . .").

Defendants do not dispute the applicability of Rule 8(a)(2) or otherwise argue that Rule 9(b) should apply to Plaintiffs' allegations. Consequently, Defendants have waived that argument

and concede that Plaintiffs' allegations should be evaluated under Rule 8(a)(2). *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Vandling v. XRC, LLC*, No. 3:16-CV-1399-BK, 2019 U.S. Dist. LEXIS 239972, at *10 n.3 (N.D. Tex. June 10, 2019) (refusing to consider argument "raised for the first time" in reply).

2. NBH should not have listed the O&G Assets as a $47 million asset in its balance sheets—regardless of whether it was claiming to list their "value" or "cost".

The Securities Act "impos[es] a stringent standard of liability on the parties who play a direct role in a registered offering" while placing "a relatively minimal burden on a plaintiff." *Herman & MacLean*, 459 U.S. at 381-82 (footnotes omitted). Plaintiffs "need only show a material misstatement or omission to establish [their] prima facie case" and liability is "virtually absolute." *Id.* at 382; *see also Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 756 (S.D. Tex. 2001). A representation or omission is material if "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). Materiality is a "fact-specific" inquiry—determining "the significance of the inferences a reasonable investor would draw . . . is peculiarly within the competence of the trier of fact." *SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 465 (5th Cir. 2022) (internal quotation marks and citations omitted); *see also In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 649 (S.D. Tex. 2021) ("There is no bright-line rule" and materiality "requires a fact-intensive inquiry into 'the source, content, and context'") (citation omitted).

Regardless of how Defendants want to describe it, investors saw NBH's balance sheet with the number $47,293,607 next to the O&G Assets. *See* ¶81; Dkt. No. 81-2 (App. 0237). Whether that number was intended to present the O&G Assets' "costs" or "value," it was false and/or materially misleading for the same reasons—the O&G Assets at all relevant times were essentially

worthless. ¶82. Plaintiffs support this allegation with three facts: 1) NBH subsequently wrote down the value of the O&G Assets to $0 as of December 31, 2022; 2) Meta Materials similarly impaired the value of the O&G Assets to $0 immediately after the spin-off was effected; and 3) historical data and internal documentation showed that the O&G Assets were worthless because, put simply, there was never produceable oil or gas. ¶82; *see also* ¶¶54-79 (alleging basis for "worthless" valuation). Plaintiffs' allegations easily satisfy Rule 8(a)(2)'s pleading requirements. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) ("[T]his is an ordinary notice pleading case, subject only to the 'short and plain statement' requirements of Federal Rule of Civil Procedure 8(a).").

First, Defendants restated NBH's financial statements, thereby conceding that they contained a material error. *See* ¶¶57-58 (citing ASC 250-10-50-7). "By definition, a restatement corrects financial data that was false when made. The complaint adequately alleges the originally reported financial data, the restated financial data, and the difference between the two. The complaint adequately alleges falsity." *Hemmer Grp. v. Sw. Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013); *see also Fresno Cty. Emples. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 549 (S.D.N.Y. 2017) ("The very fact of the restatement and thus comScore's conclusion that the financials were materially misstated at the time [defendant] made alleged misrepresentations 'belies any suggestion that any misstatement or omission was not material.'" (quoting *S.E.C. v. Kelly*, 663 F. Supp. 2d 276, 285 (S.D.N.Y. 2009))); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made.").

Second, Meta Materials similarly impaired the value of the O&G Assets. In conjunction

with the spin-off (approximately two years *prior* to the restatement described above), Meta Materials wrote-off notes secured (collateralized) by the O&G Assets. *See* ¶¶60-65. Thus, in addition to NBH's restatement, Meta Materials likewise recognized and told investors that the value of the O&G Assets was "not substantive." ¶61. In pertinent part, Meta Materials reported in its SEC filings that: "The note receivables have been recognized at their fair value, as of December 14, 2022 [the date of the spin-off]" and "determined that except for the security interest in our shares . . . , the other collateral [the O&G Assets] is not substantive and therefore should not serve as the basis for concluding that the loan is well secured and collateralized." ¶62. Meta Materials' balance sheet reflected a "notes receivable" value of $2.2 million based exclusively on the value of the security interest and without any value assigned to the O&G Assets. ¶¶63-65.

Third, Plaintiffs further support their claim with a detailed synopsis of the history behind the O&G Assets, showing that they never produced oil or gas volumes of value at any point in time and therefore could never have substantiated a $47 million carrying value under any acceptable method of accounting. Indeed, the Orogrande Assets (which comprised the bulk of the O&G Assets) were located far away from all commercial drilling in the Permian Basin and miles from the closest gas pipeline. ¶66. Property records for the Orogrande Assets reflected deeply discounted purchase prices, virtually no commercial interest, and instances in which the properties had been abandoned. ¶¶69-72. NBH's predecessor parent company, Torchlight, attempted to develop the Orogrande Assets but efforts proved unsuccessful and Torchlight's "wildcatting" partner at the time, Founders Oil & Gas LLC, abandoned the project. ¶¶74-75. McCabe's internal correspondence provides the final nail in the coffin showing that the main three wells within the Orogrande Assets (#A35, #A25, and #A39) *never* produced meaningful amounts of oil or gas at any relevant point in time. ¶¶76-78 (McCabe and engineering partner writing in emails that wells

produced "fresh water," were a "nightmare to drill," and had been shut-in); *see also* ¶79 (University Lands and Texas Railroad Commission data showing zero oil and gas production).

Defendants do not address these allegations head-on but instead attempt to sidestep them with the argument that NBH's balance sheet "merely reflected the unevaluated capitalized costs associated with [the O&G Assets]" without making any representations about their "market value or expected production." Dkt. No. 81 at 12. Even if that were true, and it is not, NBH's balance sheet in the Registration Statement still would have been false and/or materially misleading. Under SEC Regulation S-X Rule 4-10, the "cost" accounting method used by NBH allows for capitalization of costs only in certain circumstances while *disallowing* them in others, including where (as here) Defendants had no intent or ability to continue exploring or developing the O&G Assets. *See* 17 C.F.R. §210.4-10(c). It is indisputable that by September 30, 2022, every test well had failed (¶41), completion reports showed zero oil and gas production (¶79), internal correspondence by/between Defendants confirmed no hydrocarbons (¶78), and the acreage was miles from the nearest pipeline with no supporting infrastructure (¶66). Without any "proved" resources, Rule 4-10 only allowed Defendants to keep the "costs" on NBH's balance sheet if they were less than the O&G Assets' fair value. *See* 17 C.F.R. §210.4-10(c)(4)(C). But the fair value of the O&G Assets were, as alleged, effectively nil. *See* ¶¶61-65 (Meta Materials concluded O&G Assets "not substantive"); ¶70 (adjacent acreage unleased); ¶72 (prior owner released property as non-productive); ¶75 (venture partner abandoned development after investing $9.5 million).

Plaintiffs' argument is supported by the accompanying declaration from Paul Parsons. Mr. Paul Parsons is a licensed CPA who specializes in oil and gas accounting. Among other things, he runs a private consulting business and teaches at the University of Texas at Austin, McCombs School of Business. As explained by Mr. Parsons, expenses cannot be capitalized if they were

incurred in connection with a "dry hole." Declaration of Adam M. Apton ("Apton Decl."), Exhibit A, ¶¶7-10 (Pl. App. 005-007). Moreover, NBH was required to conduct "ceiling tests," which effectively capped the value it was allowed to report on its balance sheet for the O&G Assets. *Id.* at ¶12 (Pl. App. 007-008). NBH did not adhere to these "ceiling test" rules, thereby resulting in overreporting the value of the O&G Assets. *Id.* at ¶¶13-16 (Pl. App. 008-009).[3]

Defendants also misplace reliance on NBH's cautionary language about the "potential expiration of the underlying leases" for the O&G Assets. Dkt. No. 81 at 14, 16. That cautionary language does not insulate Defendants from liability when, in fact, the lease expiration was not the driving force behind the misrepresentation. Plaintiffs detail how and why the value of the O&G Assets was nothing at all relevant times; those allegations do *not* discuss the expiration of the O&G Assets' underlying leases. *See* ¶¶48-79.[4] Instead, Plaintiffs' allegations discuss the historical operations of the O&G Assets and show that Defendants knew they were non-producing properties with no expectation of future development or revenues. Accepting those allegations as true for the purposes of the pleading, Defendants cannot escape liability simply because they warned about the potentiality of leases expiring. Thus, Defendants' reliance on *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016), which invokes the "bespeaks caution" doctrine, is misguided. That doctrine applies only to forward-looking statements and not to

[3] Notably, Plaintiffs filed Mr. Parsons' declaration in support of their opposition on the first round of briefing back in November 2024. *See* Dkt. No. 57-5. Despite having had it for nearly two years, Defendants did not respond to Mr. Parsons' conclusions in their motion or otherwise attempt to argue that he was incorrect. Thus, consideration of Mr. Parsons' declaration is appropriate given Defendants' renewal of their accounting methodology argument. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257-58 (5th Cir. 2005), *opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005) (reversing the district court's dismissal of fraud claims where plaintiff's accounting allegations were "adequately supported by expert opinion").

[4] The closest Plaintiffs come to discussing the expiration of the leases is to note that NBH *extended* certain of its lease terms on November 7, 2022, which contradicts any notion that they were on the verge of expiration. *See* ¶40.

historical financial statements. *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 (2d Cir. 2004) ("It would be perverse indeed if an offeror could knowingly misrepresent historical facts but at the same time disclaim those misrepresented facts with cautionary language."); *Chen v. Missfresh Ltd.*, 701 F. Supp. 3d 236, 248 (S.D.N.Y. 2023) ("The bespeaks caution doctrine only applies to forward-looking statements, not historical financial results such as these.").[5]

Similarly, Plaintiffs' allegations also stand in the way of Defendants' *Omnicare* argument. Dkt. No. 81 at 15-17. By definition, presenting a $47 million "cost" for the O&G Assets in NBH's balance sheet carried the "embedded facts" that the fair value for the O&G Assets was greater than their costs, which was not true. As previously explained, NBH was required to state the lower of cost or estimated fair value once it was determined that the O&G Assets were not "proved" resources. *See* 17 C.F.R. §210.4-10(c)(4)(C). And because the fair value of the O&G Assets was effectively nil at all relevant times (for reasons unrelated and in addition to the lease expiration risk), Defendants face liability under *Omnicare*. *See In re Agilon Health, Inc. Sec. Litig.*, No. 1:24-CV-297-DAE, 2025 U.S. Dist. LEXIS 158673, at *71-72 (W.D. Tex. Aug. 15, 2025) (holding opinions about "patient utilization" were actionable because they "concealed material facts" about demand and backlog); *In re Apache Corp. Sec. Litig.*, No. 4:21-cv-00575, 2022 U.S. Dist. LEXIS 166588, at *19-20 (S.D. Tex. Sep. 15, 2022) (statements actionable under *Omnicare* because defendants omitted contradictory information, such as that geologists did not believe data supported projections).

Defendants' argument also misses the mark because NBH's financial statements were prepared incorrectly and, as such, are presumed to be misleading and inaccurate. *See* 17 C.F.R.

[5] Defendants' reliance on lease expirations does not explain why Meta Materials wrote down the loans based on its determination that the collateral, *i.e.*, the O&G Assets, were "not substantive." ¶¶60-65. Notably, Meta Materials made this determination in its annual report for fiscal 2022, which was filed with the SEC approximately two years before NBH's restatement.

§210.4-01(a)(1) ("[f]inancial statements filed with the [SEC] which are not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate."); *see also In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1224 (N.D. Cal. 2015) ("Financial statements filed with the SEC which are not consistent with GAAP are presumed misleading."). The "full-cost method of accounting" rules are cut-and-dry when it comes to classifying wells as exploratory or developmental which, in turn, leads to clear determinations as to how NBH should have capitalized and/or amortized its expenses. *See* Apton Decl., Exhibit A at ¶¶6, 10, 12-16 (Pl. App. 005-009). Without any "exercise of judgment" in this regard, the balance sheet did not contain any statements of "opinion." *See In re Perrigo Co. PLC Sec. Litig.*, 435 F. Supp. 3d 571, 587 (S.D.N.Y. 2020) (rejecting *Omnicare* defense because tax liability was "established as a matter of fact" and not subject to "judgment").

The Second Circuit's decision in *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158 (2d Cir. 2023), is instructive on this point. In that case, the Second Circuit held that "the Appellants have plausibly alleged that AmTrust's method of deferring the recognition of expenses related to bonuses until the bonuses were paid (thus delaying the charge to income) was objectively improper rather than an exercise of subjective judgment. . . . And the fact that these GAAP standards, together or alone, are subject to misreading, misinterpretation, or misapplication, as happened here, does not necessarily mean that they entail an exercise of subjective judgment." *Id.* at 175. Consequently, Defendants' failure to correctly account for its O&G Assets leads to the same conclusion—a false statement that did not entail an exercise of subjective judgment. *See In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 543-46 (S.D.N.Y. 2024) (holding "postmerger financial-performance-related statements" false and misleading

because "'misreported financial data are false statements of fact'") (collecting cases).[6]

3. NBH did not have adequate audit controls in place.

NBH's description of its Audit Committee functions and management's oversight of its internal controls over financial reporting created a misleading impression, namely that the financial statements contained in the Registration Statement had been vetted and "present[ed] fairly, in all material respects, the financial position of the Company . . . in conformity with accounting principles generally accepted in the United States." ¶¶83-85. In truth, the financial statements did not fairly and accurately present NBH's financial position and were not in conformance with GAAP. ¶86. "The failure to disclose these problems in the [Registration Statement] could be found by a trier of fact to be an omission that renders misleading the comforting statements in the prospectus about [NBH's audit controls]." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014); *see also Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1024 (N.D. Cal. 2020) (holding that a SOX certification "attesting to the accuracy of the reports, the disclosure of any weakness or change in the company's internal controls over financial reporting" was false or misleading where in fact the internal controls were deteriorating).

Defendants respond to this allegation by claiming the statements about NBH's Audit Committee could not have misled anyone because the Registration Statement was published before the Audit Committee was formed. Dkt. No. 81 at 17-18. This argument is unsupported by the record. Instead, while NBH's initial registration statement says "We *plan to establish* an audit committee," the final prospectus states "We *have established* an audit committee" directly

---

[6] The facts at bar are also materially different than *Hunt v. PricewaterhouseCoopers LLP (PwC)*, 159 F.4th 603, 611 (9th Cir. 2025), where the court held that an *accountant* was not *strictly liable* under Section 11, unlike an issuer, officer or director. Moreover, the line items at issue in the registration statement related to whether certain agreements should have been "classified as operating or capital leases," which was a matter of judgment and markedly different from the accounting violation alleged here.

contradicting Defendants. *Compare* Dkt. No. 81-2 (App. 0065) *with* Dkt. No. 81-2 (App. 0197). Furthermore, even in the initial registration statement, NBH states that "Until such committees are established, matters otherwise addressed by such committees will be acted upon by the whole board" thereby communicating to investors that the Audit Committee functions were still being carried out. *See* Dkt. No. 81-2 (App. 0065). Thus, the statements at hand are not like the vague "internal processes and procedures" concerning oil spills at issue in *Police & Fire Ret. Sys. v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019), that were held inactionable, but instead concrete descriptions of audit controls. *See Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1160 (W.D. Wash. 2006).

4. Defendant McCabe held an undisclosed interest in the Hazel Assets.

Item 404 of Regulation S-K required NBH to disclose specific information in the Registration Statement concerning its transactions with related persons. ¶¶87-88. In violation of Item 404, the Registration Statement did not disclose that Defendant McCabe held an interest in the Hazel Assets which consisted of NBH's only revenue generating wells. ¶89. Specifically, while the Registration Statement disclosed that all revenue generated by the Hazel Assets was paid to Masterson Hazel Partners, LP, it concealed the fact that McCabe was a part owner of that entity. ¶¶90-93. Consequently, the Registration Statement violated Item 404 by failing to provide a complete description of McCabe's interests in the Hazel Assets by *inter alia* disclosing his ownership in Masterson Hazel Partners, LP. ¶94. The "overriding principle of disclosure" is to disclose McCabe's full interest in the Hazel Assets. *See Nykredit Portefølje Admin. v. Propetro Holding Corp.*, No. MO:19-CV-217-DC, 2021 U.S. Dist. LEXIS 259633, at *59 (W.D. Tex. Sep. 13, 2021) (proxy statement omitted related party transactions); *Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 711 (N.D. Tex. 2008) (requiring disclosure of related party

transactions).

Defendants claim that disclosure was not necessary because McCabe acquired the undisclosed interest through an "Option Agreement" that was entered into prior to "the beginning of [NBH's] last fiscal year." Dkt. No. 81 at 18. The date the "Option Agreement" is not determinative because McCabe continued to receive money from NBH throughout 2021. Additionally, while Defendants argue that McCabe's interest did not exceed the $120,000 threshold (*id.*), that argument overlooks the materiality of the interest given that the Hazel Assets were the *only* revenue producing oil and gas interests owned by NBH. *See Zagami*, 540 F. Supp. 2d at 711 ("it does not follow that, because certain dollar amounts might be immaterial in one context, they are necessarily immaterial in the context of the present litigation").

**B. <u>Defendants McCabe, Hawkins, and Oelkers Face Liability under Section 11.</u>**

Section 11 allows Plaintiffs to sue "every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner." 15 U.S.C. §77k(a)(3). This most certainly includes Defendant McCabe who despite not having signed the Registration Statement, was named in it approximately 50 times. *See generally* Dkt. No. 81-2 (App. 0130-0263). More importantly, McCabe was at all relevant times the largest shareholder of NBH owning approximately 27.4% of its stock, owned and/or controlled the majority of NBH's O&G Assets, and became NBH's Chairman just six months after the spin-off and its CEO seven months after that. *See* ¶23; *see also* Apton Decl., Exhibit B (Pl. App. 015) & Exhibit C (Pl. App. 020). These facts render McCabe a liable party under Section 11. *See In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1366 n.21 (S.D. Fla. 2001) (Section 11 against individual who did not sign registration statement but "qualifie[d] as someone named in the registration statement about to become a person performing similar functions to a director").

Hawkins and Oelkers served as NBH's CFO and COO. *See* ¶¶19, 20. Consequently, along with McCabe, they controlled NBH's operations, directed NBH's affairs, and owed duties of loyalty and care to NBH's shareholders. *See FDIC v. Jacobs*, No. 3:13-cv-00084-RCJ-VPC, 2014 U.S. Dist. LEXIS 157449, at *13 (D. Nev. Nov. 5, 2014) (citing *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006)).[7] Their roles within NBH are "similar" to that of the company's directors and, therefore, make them potentially liable under Section 11. *C.f. Obasi Inv., Ltd. v. Tibet Pharms., Inc.*, 931 F.3d 179, 189-90 (3d Cir. 2019) (holding "board observers" not "similar" to directors because they could not "direct and manage the company's affairs" and did not "owe[] duties of care and loyalty," unlike McCabe, Hawkins and Oelkers in NBH).

## C. <u>Defendants Argue Incorrectly that Plaintiffs Have Not Been Damaged.</u>

Defendants listed NBH's O&G Assets as a $47 million asset when in reality they were worth $0. *See* ¶¶81-82. Instead of owning stock in a company with valuable oil and gas interests, Plaintiffs were left holding shares in what amounted to a shell company with no operational assets and no ability to generate revenue. Congress designed the Securities Act to protect against this risk by "assur[ing] compliance with the disclosure provisions . . . by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & Maclean*, 459 U.S. at 381-82. Thus, where a registration statement contains a misrepresentation or omits required information, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id.* This is why courts do not require plaintiffs "to prove the precise amount of any damages at the pleading stage. Indeed, §11 works the other way: It presumes that any diminution in value is attributable to the alleged misrepresentations and places the burden on defendants to *disprove* causation." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs &*

[7] NBH was at all relevant times a Nevada corporation. *See* ¶15.

*Co.*, 693 F.3d 145, 167 (2d Cir. 2012) (emphasis in original); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009) ("Once a plaintiff establishes a prima facie case under the Securities Act, loss causation is presumed."); *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009) ("Section 11 does not require a showing of individualized loss causation, because injury and loss are presumed under §11.").

NBH was materially less valuable at the time of the spin-off than Defendants represented, namely due to the misrepresented valuation of the O&G Assets. *See* ¶¶81-82. Although this diminution in value translates to damages, Defendants argue that Plaintiffs have no recoverable losses because they did not pay anything for their NBH shares. Dkt. No. 81 at 20-21. Defendants are wrong. Plaintiffs paid for their NBH shares by buying Meta Materials' preferred stock while it was trading over-the-counter under the ticker "MMTLP" and/or purchasing Torchlight shares prior to the merger and holding it through the special dividend (which then gave them the preferred stock). Plaintiffs Targgart and Martinez bought thousands of shares of "MMTLP" while it was trading over-the-counter at various prices (as low as $1.11/share and as high as $12.09/share) on the basis that it was "basically the same thing" as NBH. *See* ¶¶12 (Targgart spent approx. $35,000), 14 (Martinez spent approx. $33,000), 34 (Brda tweet to investors). Plaintiff Limon meanwhile purchased thousands of shares of Torchlight and held those shares through the merger and special dividend. *See* ¶13. In both scenarios, Plaintiffs paid for shares that were then converted into NBH stock. *See* ¶¶5, 32-35. By claiming Plaintiffs paid nothing for their stock, Defendants ignore the realities of how Plaintiffs came to own their shares.

Defendants also conflate Section 11's statutory standing rules with a requirement to plead damages, which does not exist. "A prima facie case under [Section] 11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's

registration statement." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 782 (3d Cir. 2009) (citing *Herman & Maclean*, 459 U.S. at 382). Damages are not an element of the claim. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-7658 (MAS)(LHG), 2021 U.S. Dist. LEXIS 180161, at *27 (D.N.J. Sep. 21, 2021); *accord In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 778 (N.D. Cal. 2020); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1168. If anything, absence of damages is an *affirmative* defense that is rarely granted. *See In re Snap Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2018 U.S. Dist. LEXIS 97704, at *20 (C.D. Cal. June 7, 2018) ("[L]ack of damages . . . is an affirmative defense that places a 'heavy burden' of proof on the defense." (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994))). "'Defendants' heavy burden reflects Congress' desire to allocate the risk of uncertainty to the defendants in these cases.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 383 (S.D.N.Y. 2006) (quoting *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 340-41 (2d Cir. 1987)).

Defendants' argument on this point is undermined by numerous cases around the country where, like here, a plaintiff can pursue Section 11 claims in a stock-for-stock exchange. For example, in *Freedman v. Value Health, Inc.*, 190 F.R.D. 33 (D. Conn. 1999), the court granted class certification to plaintiffs who acquired shares of stock in a stock-for-stock merger. The plaintiffs consisted of investors who purchased shares of stock on the open market as well as those who received shares in exchange for the shares they already owned. In construing Section 11's damages provisions, the court held that plaintiffs who exchanged their shares in the merger would be "entitled to a measure of damages that relies on the market price . . . of their Diagnostek stock at the time that they exchanged it for shares of Value Health." *Id.* at 35-36. Similarly, Plaintiffs can rely on the purchase prices for their preferred "MMTLP" shares in advance of the spin-off. *See* ¶¶12-14 (including Appendices A & B listing purchase prices).

The Ninth Circuit's decision in *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013), provides further support. In that case, the plaintiff sought leave to assert a Section 11 claim to recover losses from a stock-for-stock merger. The Ninth Circuit reversed the lower court's decision because the defendants failed to carry their "heavy burden" on the affirmative defense of "negative causation." *Id.* at 860-61. Although the plaintiff owned his shares before the registration statement for the merger was published, he could have "avoided the exchange of shares" had the "accounting irregularities" not been concealed. *Id.* at 861-62. Likewise, Plaintiffs were not "obliged to obtain [NBH] stock at the time the Registration Statement was filed" but instead could have sold the shares prior to the spin-off's completion while it was trading over-the-counter under the "MMTLP" ticker symbol. *Id.* at 862-63 (citing *SEC v. National Student Marketing Corp.*, 457 F. Supp. 682 (D.D.C. 1978)). Importantly, Plaintiffs' exchange of "MMTLP" shares for NBH stock in the spin-off constituted a "sale" under the Securities Act. *See* 17 C.F.R. §230.145 ("transfer of assets" subject to Securities Act per Rule 145).

The Fifth Circuit's decision in *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211 (5th Cir. 1994), provides yet another example confirming that Section 11 applies whenever a registration statement contains material misrepresentations, and not strictly in initial public offerings with public offering prices. In that case, the Fifth Circuit reversed the lower court's decision on summary judgment, holding that the plaintiffs' "exchange[]" of "units for stock" constituted a sale for the purposes of stating a claim under Section 11. *Id.* at 224-25. The Fifth Circuit also rejected the defendants' arguments on injury and causation. Although the defendants argued that the plaintiffs "actually profited" from the transaction, the court noted it would be "hesitant to conclude that there has been no injury--or merely speculative injury--to the plaintiffs" based on the allegations in the complaint. *Id.* at 225 & n.17.

This concept applies equally to Plaintiffs' Section 12 claim. In *In re Old Banc One Shareholders Securities Litigation*, No. 00 C 2100, 2004 U.S. Dist. LEXIS 7563 (N.D. Ill. Apr. 29, 2004), the plaintiffs sued under Section 12 of the Securities Act for misleading statements in a registration statement issued by the defendants in conjunction with a merger. The court allowed the plaintiffs to pursue claims on behalf of shareholders who received shares in the merged company through a stock-for-stock exchange. Importantly, the court held that shareholders who purchased shares in the pre-merger company *after* the misleading registration statement was issued, but *before* the exchange occurred, could pursue claims against the defendants because they "suffered an actual loss of the type meant to be protected under Section 12." *Id*. at *19-20.

Defendants' authority does not change the outcome on this issue. In *In re Safety-Kleen Corp. Bondholders Litigation*, No. L 3:00-1145-17, 2002 U.S. Dist. LEXIS 26735 (D.S.C. Mar. 27, 2002), the court dismissed the Section 11 claims because the bonds were "unregistered" and therefore not subject to Section 11. *Id.* at *2-3. Moreover, the portion of the case relied on by Defendants was subsequently reversed on reconsideration, thereby allowing the plaintiffs to pursue the defendants for Section 11 damages. *See In re Safety-Kleen Bondholders Litigation*, No. 3:00-1145-17, 2002 U.S. Dist. LEXIS 29490, at *6-9 (D.S.C. June 14, 2002) (allowing plaintiffs to pursue Section 11 claims on behalf of "aftermarket" purchasers of bonds following "exchange and registration"). In *In re Levi Strauss & Co. Sec. Litigation*, 527 F. Supp. 2d 965, 977 (N.D. Cal. 2007), the securities transactions at issue were "exempt from any registration requirements or liability," thereby precluding the plaintiffs from pursuing Section 11 claims. Unlike these cases, NBH registered its stock thereby unquestionably subjecting Defendants to Securities Act liability. *See* 17 C.F.R. §230.145 (SEC Rule 145).

As the Supreme Court noted in *Slack Technologies*, Section 11's damages provisions are "tie[d] . . . to the *value* of the registered shares alone" and not strictly the *market* price. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767-68 (2023) (citing 15 U.S.C. 77k(e)) (emphasis added). Thus, where market price is not available, courts examine the underlying value of the security. *See*, *e.g.*, *Campton v. Ignite Rest. Grp., Inc.*, No. 4:12-2196, 2014 U.S. Dist. LEXIS 1751, at *17-20 (S.D. Tex. Jan. 7, 2014) (plaintiffs adequately alleged damages by showing decrease in value irrespective of stock price). And in this case, NBH's value cannot be the same if its assets are $47 million less than represented on its balance sheet.

**D. <u>Negative Causation Defenses Are Rarely Granted at the Pleading Stage.</u>**

Once a plaintiff establishes a prima facie case under the Securities Act, loss causation is presumed. If a defendant can show that any portion or all of such damages represents other than the depreciation in value of [the] security resulting from [the material misstatement] of the registration statement, the presumption is rebutted for so much of the loss as is not attributable to the misstatement. The burden on the defendants to prove the affirmative defense in § 11(e) is heavy . . . ." *Flowserve Corp.*, 572 F.3d at 234 (internal quotations and citations omitted). Defendants cannot meet that burden at this stage of the case, primarily because Plaintiffs' damages arise from the value of the O&G Assets (or lack thereof) which is the precise subject of the Registration Statement's misrepresentations.

Defendants do not dispute this point but instead appear to argue that the O&G Assets were always "worthless," meaning that there was no change in value after the Registration Statement became effective so Plaintiffs could not have suffered any loss. Dkt. No. 81 at 23. But that argument disregards Section 11's purpose and application. *See Flowserve*, 572 F.3d at 234 (noting "Congress' desire to allocate the risk of uncertainty to the defendants") (internal quotations

omitted). In sum, Defendants' liability stems from their misrepresentations about the O&G Assets and not, as Defendants argue, the "exchange" of shares. *See* ¶¶80-94. By misrepresenting the O&G Assets, Plaintiffs were misled about their investment in NBH which then resulted in damages once the truth about the O&G Assets' value became publicly known. Unless and until Defendants can prove with evidence that Plaintiffs did not sustain *any* damages, their negative causation defense fails. *See Hildes*, 734 F.3d at 863-64 ("Because the misrepresentations contained in the Registration Statement allegedly caused the ultimate exchange of Hildes' Harbinger shares for Peregrine stock, we disagree with the district court's conclusion that the negative causation defense applies. And because the exchange of shares—which occurred after the Registration Statement was filed—constituted Hildes' acquisition of those securities pursuant to a registration statement, he has stated a potentially meritorious Section 11 claim."); *In re Dynegy, Inc.*, 339 F. Supp. 2d 804, 869 (S.D. Tex. 2004) (rejecting negative causation defense where defendants failed to point to any "allegations in the pleadings that explain what, other than the misrepresentations, could have caused the loss allegedly suffered").

**E. <u>The Meta Materials Settlement Did Not Release Claims against Defendants.</u>**

In January 2024, a class of Meta Materials investors settled a class action case against Meta Materials, George Palikaras, Greg McCabe, John Brda, and Kenneth Rice over claims relating to the merger between Metamaterial and Torchlight and the performance of Meta Materials' high-tech products (*e.g.*, laser protective sunglasses). The settlement released claims arising from "the purchase, sale, or ownership of Torchlight and/or Meta Materials securities" and *not* NBH stock. Dkt. No. 81-2 (App. 0960). Additionally, the parties agreed that the settlement "[did] not relate to claims concerning the subsequent spin-off of legacy Torchlight oil and gas assets involving Meta Materials preferred shares ($MMTLP)" and that any related claims would "remain unaffected."

*See* Apton Decl., Exhibit D (Pl. App. 026). This exclusion was posted conspicuously on the settlement website by the plaintiffs' claims administrator. *See* Apton Decl., Exhibit E (Pl. App. 028). Thus, contrary to Defendants' take on the Meta Materials' release, it was never intended to include (but in fact excluded) the claims asserted in this case. *See In re GE Co. Sec. Litig.*, 998 F. Supp. 2d 145, 155 (S.D.N.Y. 2014) (limiting release to "what would be reasonable and appropriate in the litigation"); *see also Kay Strategies v. Ubiquity, Inc.*, No. 15-cv-2720-H-DHB, 2016 U.S. Dist. LEXIS 144999, at *9 (S.D. Cal. July 15, 2016) (release argument "better suited for summary judgment"); *H&H Acquisition Corp. v. Fin. Intranet Holdings*, No. 98 Civ. 5269 (BSJ), 1999 U.S. Dist. LEXIS 16861, at *10 (S.D.N.Y. Oct. 21, 1999) (release "ambiguous" as to which claims it applied to).

**F. <u>NBH's Officers and Directors Are Subject to Control Person Liability.</u>**

Plaintiffs adequately pleaded Section 11 and 12 violations against Defendants, meaning that control person liability under Section 15 attaches. *See In re Netsolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 699 (W.D. Tex. 2001); *Griffin v. GK Intelligent Sys., Inc.*, 87 F. Supp. 2d 684, 689 (S.D. Tex. 1999) (defendants included vice president, chief financial officer and chief administrative officer "had actual power or influence over GK and the ability to control corporate policy"). Each of the Individual Defendants had the power to control, or did control, NBH prior to and during the spin-off. *See* ¶¶16-23, 113.

"At the pleading stage, Plaintiffs must only show authority to exercise such power, rather than actual exercise of such power. Here, the complaint sufficiently alleges that the executives were control persons based on their role in the company." *Hemmer Grp.*, 527 F. App'x at 627. The complaint confirms that Defendants Cook, DuBose, DeWoody, Pitts, and Whitley were NBH's directors during or immediately after the spin-off (¶¶16-18, 21-22) and Defendants

Hawkins and Oelkers served as NBH's CFO and COO (¶¶19-20). McCabe, meanwhile, controlled NBH's O&G Assets at all relevant times, thereby giving him power to control the company (not to mention he also owned 27.4% of NBH's stock and assumed the positions of Chairman and CEO after the spin-off). ¶23. These allegations are sufficient to establish control-person liability. *See Griffin*, 87 F. Supp. 2d at 689; *see also G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981) ("control person" liability for a corporate officer who was a 24% stockholder, an officer, a director, and who was involved in the day-to-day operations of the business because he had the "requisite power to directly or indirectly control or influence corporate policy"); *Aubrey v. Barlin*, No. A-10-CA-076-SS, 2011 U.S. Dist. LEXIS 15332, at *15-16 (W.D. Tex. Feb. 16, 2011) (declining to dismiss control person claim at pleading stage where defendant was founder and active owner of corporation).

Defendants try to shift the blame onto Meta Materials' executives. Dkt. No. 81 at 25. However, their argument is contradicted by the Registration Statement, which explains that NBH was at all relevant times prior to the spin-off "operated" by or through companies owned and/or controlled by McCabe—Torchlight Energy, Inc., Hudspeth Oil Corporation, Torchlight Hazel, LLC, and Hudspeth Operating, LLC. *See* Dkt. No. 81-2 (App. 0173). Consequently, Defendants have no basis for accusing Meta Materials' executives of being responsible for the day-to-day operations and control of NBH's business.

## **CONCLUSION**

Plaintiffs respectfully request that Defendants' motion be denied in its entirety for the reasons set forth above.

DATED: September 14, 2026

**MOSES, PALMER & HOWELL, L.L.P.**

/s/ Shayne D. Moses
Shayne D. Moses
State Bar No. 14578980
smoses@mph-law.com
David A. Palmer
State Bar No. 00794416
dpalmer@mph-law.com
Fort Worth Club Building
306 West 7th Street, Suite 504
Fort Worth, Texas 76102
Tel.: (817) 255-9101
Fax: (817) 255-9199
Email: smoses@mph-law.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*admitted pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Lead Plaintiffs and*
*Lead Counsel for the Class*