IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TODD TARGGART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXT BRIDGE HYDROCARBONS, INC., ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, GREGORY MCCABE, and JOHN BRDA,<br><br>Defendants. | § § § § § § § § § § § § § § § § § | Case No. 4:24-cv-00767-P |

---

**PLAINTIFFS' APPENDIX IN OPPOSITION TO MOTIONS TO DISMISS**

---

Lead Plaintiffs Todd Targgart, Mohammed Limon, and Steven Martinez file this Appendix in support of their opposition to Defendants' motions to dismiss, which contains the following:

| Exhibit No. | Document | Page Range |
|---|---|---|
| N/A | Declaration of Adam M. Apton | |
| A | Declaration of Paul A. Parsons (including curriculum vitae as Exhibit A to Declaration) | Pl. App. 001-012 |
| B | Next Bridge Hydrocarbons, Inc. Form 8-K filed June 21, 2023 | Pl. App. 013-017 |
| C | Next Bridge Hydrocarbons, Inc. Form 8-K filed January 19, 2024 | Pl. App. 018-024 |

| | | |
|---|---|---|
| D | Email dated March 1, 2024, from defense counsel in *In re Meta Materials Inc. Securities Litigation*, No. 1:21-cv-07203-CBA-JRC (E.D.N.Y.) | Pl. App. 025-026 |
| E | Settlement website relating to the settlement in *In re Meta Materials Inc. Securities Litigation*, No. 1:21-cv-07203-CBA-JRC (E.D.N.Y.) | Pl. App. 027-029 |
| F | Meta Materials, Inc. Form 10-K filed March 1, 2022 (excerpt) | Pl. App. 030-037 |
| G | Declaration of Ryan D. Lantry filed in *SEC v. John Brda, et ano.*, No. 4:24-cv-01048-SDJ (E.D. Tex.) | Pl. App. 038-042 |

DATED: September 14, 2026

**MOSES, PALMER & HOWELL, L.L.P.**

/s/ Shayne D. Moses
Shayne D. Moses
State Bar No. 14578980
smoses@mph-law.com
David A. Palmer
State Bar No. 00794416
dpalmer@mph-law.com
Fort Worth Club Building
306 West 7th Street, Suite 504
Fort Worth, Texas 76102
Tel.: (817) 255-9101
Fax: (817) 255-9199
Email: smoses@mph-law.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*admitted pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Lead Plaintiffs and Lead Counsel for the Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TODD TARGGART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXT BRIDGE HYDROCARBONS, INC., ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, GREGORY MCCABE, and JOHN BRDA,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:24-cv-00767-P |

**DECLARATION OF ADAM M. APTON**
**IN OPPOSITION TO MOTIONS TO DISMISS**

I, Adam M. Apton, declare and state as follows:

1. I am a partner of the law firm Levi & Korsinsky, LLP, counsel for Lead Plaintiffs Todd Targgart, Mohammed Limon, and Steven Martinez ("Plaintiffs") in the above-captioned matter. I submit this declaration in opposition to Defendants' motions to dismiss. If called upon to testify about the matters set forth herein, I would do so competently.

2. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Paul A. Parsons, including his curriculum.

3. Attached hereto as Exhibit B is a true and correct copy of the Form 8-K filed with the SEC by Next Bridge Hydrocarbons, Inc. ("NBH") on June 21, 2023.

4. Attached hereto as Exhibit C is a true and correct copy of NBH's Form 8-K filed with the SEC on January 19, 2024.

5. Attached hereto as Exhibit D is a true and correct copy of an email dated March 1, 2024, from defense counsel in *In re Meta Materials Inc. Securities Litigation*, No. 1:21-cv-07203-CBA-JRC (E.D.N.Y.), to the undersigned confirming that the settlement in that action did not relate to "claims concerning the subsequent spin-off of legacy Torchlight oil and gas assets involving Meta Materials preferred shares," *i.e.*, claims relating to Next Bridge Hydrocarbons, Inc. securities.

6. Attached hereto as Exhibit E is a true and correct copy of the settlement website relating to the settlement in *In re Meta Materials Inc. Securities Litigation*, No. 1:21-cv-07203-CBA-JRC (E.D.N.Y.), notifying potential settlement class members that the settlement in that action did not relate to "claims concerning the subsequent spin-off of legacy Torchlight oil and gas assets involving Meta Materials preferred shares," *i.e.*, claims relating to Next Bridge Hydrocarbons, Inc. securities, as agreed by counsel in that action.

7. Attached hereto as Exhibit F is a true and correct copy of an excerpt from the 2021 annual report on Form 10-K filed with the SEC by Meta Materials, Inc. on March 1, 2022.

8. Attached hereto as Exhibit G is a true and correct copy of the Declaration of Ryan D. Lantry filed in *SEC v. John Brda, et ano.*, No. 4:24-cv-01048-SDJ (E.D. Tex.), describing the SEC's investigation prior to filing suit against John Brda for securities fraud.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of September, 2026.

Adam M. Apton

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TODD TARGGART, individually and on behalf of all others similarly situated, | § | |
| Plaintiff, | § | Case No. 4:24-cv-00767-P |
| v. | § | |
| NEXT BRIDGE HYDROCARBONS, INC., ROBERT L. COOK, CLIFTON DUBOSE, JR., JOSEPH DEWOODY, LUCAS T. HAWKINS, DELVINA OELKERS, MIA PITTS, KRISTIN WHITLEY, GREGORY MCCABE, and JOHN BRDA, | § | |
| Defendants. | § | |

**DECLARATION OF PAUL A. PARSONS**

I, PAUL A. PARSONS, declare as follows:

1. I submit this declaration in support of Plaintiffs' opposition to Defendants' motions to dismiss.

2. I am the Founder and Managing Director of Energy Training Resources, LLC, a company that provides oil and gas training services to oil and gas companies and other industry organizations/institutions, including but not limited to operational, commercial, accounting and sustainability topics in the upstream and midstream sectors of the oil and gas industry. I also presently teach at the University of Texas at Austin, McCombs School of Business. I instruct an Oil and Gas Accounting and Sustainability course and a Corporate Sustainability course for the Master in Professional Accountancy (MPA) program. I hold a BBA/Accounting degree from the University of Texas at Austin (1979) and an MBA/Finance degree from the University of Houston (1982). I have a certificate in Petroleum Land Management from the Petroleum Extension Service of the University of Texas (PETEX) and have obtained an Accredited Petroleum Accounting (APA) certification from the Council of Petroleum Accounting Societies (COPAS). I am a Certified Public Accountant licensed in the State of Texas. My professional and educational background is described in further detail in my curriculum vitae attached hereto as Exhibit A.

3. I have been retained by Plaintiffs in this action to review the content and character of the 2021 and 2022 "Oil and natural gas properties, net" ("Net PP&E") Consolidated Balance Sheet line items, along with supporting disclosures, in the Next Bridge Hydrocarbons, Inc. ("NBH") registration statement and prospectus (the "Registration Statement") filed in conjunction with its spin-off from Meta Materials Inc. ("Meta Materials"). The Registration Statement indicates that the Net PP&E amounts were derived from historical costs using the Full Cost oil and

gas accounting method ("Full Cost") which, in addition to the more-conservative "Successful Efforts" method, is one of the two available methods to account for and report oil and gas costs under U.S. GAAP. I have been asked to determine, to the best of my knowledge, whether the "Full Cost" accounting method has been correctly and reasonably applied to the NET PP&E in the Registration Statement. In exchange for my services, I am being compensated at an hourly rate of $350.

4. As part of my review, in addition to the Registration Statement, I examined the annual reports on Form 10-K for the periods of 2013 through 2020 for NBH's predecessor company (prior to Meta Materials) Torchlight Energy Resources, Inc. ("Torchlight"). 10-K Forms provide useful information but they are in summary form and do not provide all of the project-specific cost details that would have been useful for my review. Also, NBH has entered into multiple transactions, many involving complex funding and cost-sharing arrangements – including the issuance of shares and warrants, and some of those agreements were subsequently renegotiated. These transactions make it difficult to verify the purchase price of some transactions that were described but not individually valued in the 10-Ks.

5. Based on my review, it appears that the NET PP&E amounts in the Registration Statement are materially overstated from a Full Cost accounting-method perspective. It appears to me that Torchlight began treating some exploration wells as development wells and some exploration costs as development costs beginning around 2017, and used that distinction to defer amortization of some, if not most, of its unproductive costs. If my assessment is correct, Torchlight understated its annual DD&A while elevating its Net PP&E amounts. That practice would have also resulted in the capitalization of interest costs that should have been expensed. Perhaps even

more importantly, it appears that Torchlight used a similar line of reasoning to avoid recognizing deep impairments that should have occurred under Full Cost PP&E "Ceiling Test" procedures.

6. The rules for classification of wells and treatment of costs are fairly rigid in the SEC's description of the Full Cost accounting method contained in Regulation S-X [17 CFR Part 210] 4-10 ("Regulation S-X"). Regulation S-X states that a "Development Well" is "A well drilled within the proved area of an oil or gas reservoir to the depth of a stratigraphic horizon known to be productive." A "Proved Area" is "The part of a property to which proved reserves have been specifically attributed." Development costs" are "Costs incurred to obtain access to proved reserves." Torchlight drilled wells on unproved acreage in the Orogrande and Hazel projects and referred to the costs in their 10-K as "Development Costs" and referred to the wells as "Development Test Wells." Development Test Wells is a category that doesn't exist in the SEC's description of the Full-Cost method.

7. Wells drilled in the search for hydrocarbons on acreage without proved reserves attribution are called "Exploratory Wells." Regulation S-X states that an "Exploratory Well" is "a well drilled to find a new field or to find a new reservoir in a field previously found to be productive of oil or gas in another reservoir." This definition is consistent with most of the wells drilled by Torchlight. For example, the Orogrande project was in a remote area with unconfirmed production potential. Torchlight listed "wildcat," an exploration designation, in the field-name category on drilling permit applications filed with the Texas Railroad Commission. NBH's Registration Statement also describes Orogrande as a "frontier area" which is term used in the area to describe a little-explored, high-risk exploration area.

8. The distinction between exploratory wells and related costs versus development wells and related costs becomes important if an exploratory well results in an unsuccessful "dry

hole." A dry hole does not necessarily mean that no hydrocarbons were discovered. It means that the results lack the economic viability or other factors required to meet the criteria for booking "proved reserves," which requires a high degree of certainty of future economic value. For example, the Registration Statement describes that two Orogrande horizontal wells have gas production potential, but a gas well requires a pipeline connection, which would require substantial additional cost that has to be factored into the estimation of their economic viability. A reasonable amount of time is allowed to evaluate exploration wells to determine whether proved reserves have been established, but the undertaking must be sincere, the evaluation efforts must remain active, and the funding for completion must be reasonably feasible. Dry hole conditions exist if the well does not have proved reserves potential, or if it does but there are no plans for further work that would be required to establish production. The Registration Statement indicates that 11 (gross) of the wells that NBH called "Development Test Wells" had no production potential and the two gas wells are classified as "productive" even though no associated proved reserves were booked.

9. The Registration Statement may be attempting to position some of the 11 (gross) "Development Test Wells" as "Service Wells" which Regulation S-X describes as "A well drilled or completed for the purpose of supporting production in an existing field. Specific purposes of service wells include gas injection, water injection, steam injection, air injection, salt-water disposal, water supply for injection, observation, or injection for in-situ combustion." Torchlight drilled those wells as exploratory wells to produce hydrocarbons, so they do not qualify as Service Wells. There is an additional "development dry hole" category used in the industry, but a well cannot be categorized as a development dry hole unless it begins as a development well drilled on proved acreage.

10. Regulation S-X states that "The costs of drilling exploratory dry holes shall be included in the amortization base immediately upon determination that the well is dry." The "amortization base" is a cost category where amortization must begin on a unit of production basis with production as the numerator and total proved reserves as the denominator. This calculation is done on a countrywide basis, and since all of NBH's reserves are in the U.S., it would be done on a total-company basis. As stated previously, it appears that NBH did not place all of its dry hole costs in the amortization base and kept at least a portion of the costs in a suspended category as either a project under evaluation or a project under development (see further below). As also stated previously, undue suspension of those costs would cause Torchlight to understate its DD&A expense while elevating its Net PP&E amounts. That practice would have also capitalized interest costs that should have been expensed because there was no "development project" underway to support further interest capitalization.

11. A high-level review of the Net PP&E amount is also suggestive of under-amortization of costs. At the end of 2016, Torchlight had already acquired property interests in both Orogrande and Hazel and its Net PP&E amount was $9,392,288. By the end of 2020, Torchlight had drilled several more unproductive wells, recorded zero proved reserves and had virtually no production, yet its Net PP&E value had climbed to $30,857,959.

12. The Full Cost method includes a "limitation on capitalized costs" formula which is commonly called a "Ceiling Test." The objective of the Ceiling Test is to prevent reporting of a Net PP&E amount on the balance sheet that exceeds the market value of the underlying assets. The result of the calculation is not the same as market value but the method roughly emulates the discounted cash flow valuation method commonly used in the industry to value producing assets. The Ceiling Test formula for developed properties includes estimated future cash flows from

proved reserves only, with fixed product sales prices based on the prior-year historical average, discounted to present value at 10%. The result of the Ceiling Test calculation is generally considered to be more conservative than market value, primarily because actual purchasers of proved properties would likely place additional value on probable and possible reserves because proved reserves only include the portion of estimated future production that is 90%+ certain to occur under economic conditions as determined using fixed future product prices. Purchasers might also use escalated prices, which could further elevate the market value above the ceiling test value. There are potential circumstances that could cause the Ceiling Test value to temporarily exceed market value, such as if the market outlook for oil and gas prices fell sharply below the prior-year historical average. However, that disparity should rebalance in future reporting periods.

13. It appears that the Net PP&E amount reported by NBH and its predecessors exceeded the allowable Ceiling Test value at the end of 2017 and every year since. The situation has been particularly acute since the end of 2020 because there have been no proved reserves whatsoever to generate any Ceiling Test value.

14. It is possible to exempt from the Ceiling Test costs "directly associated with the acquisition and evaluation of unproved properties… until it is determined whether or not proved reserves can be assigned to the properties." That exemption expressly excludes any incurred dry hole costs but it appears that NBH included dry hole costs as an exempted amount.

15. It is also possible to exempt from the Ceiling Test costs of "major development projects" in progress but neither the Orogrande or Hazel project have sufficient characteristics to support exemption under that category.

16. Thus, based on my review, it appears that the Net PP&E value in the Registration Statement is materially overstated according to the rules of the Full Cost accounting method. I reserve the right to supplement and/or revise my analysis if/when I receive additional information.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of November 2024 in Houston, Texas.

PAUL A. PARSONS

# [Exhibit A to Declaration]

**Paul A. Parsons**
**713-380-2891, paul@energy-train.com**

**Energy Training Resources, LLC (www.energytrainingresources.com)**

**Founder and Managing Director** (Houston, October 2007 - Present) – Energy Training Resources provides oil and gas training services to oil and gas companies and other industry organizations/institutions. Activities include:

- Develop training materials and instruct live and virtual courses covering operational, commercial, accounting and sustainability topics in the upstream and midstream sectors of the oil and gas industry. Have presented at a variety of U.S. and international locations and have done biannual courses at NAPE organized by the Independent Petroleum Association of America (IPAA).
- Produced and market the industry's most-comprehensive drilling video, titled "Oil and Gas Drilling: From Planning to Production." In two hours, shows rig-floor footage and down-hole animations of the drilling, hydraulic fracturing and completion of a horizontal well. Have sold individual copies and intranet licenses to over 500 companies, educational institutions, and other organizations.
- Develop and market e-Learning courses on oil and gas industry topics.

**The University of Texas at Austin, McCombs School of Business**

**Assistant Professor of Instruction** (Fall 2022 to Present)
Teach an *Oil and Gas Accounting and Sustainability* course and a *Corporate Sustainability* course for the Master in Professional Accountancy (MPA) program

**Occidental Petroleum Corporation (Oxy)**

**Finance Manager, Permian Basin** (Houston, March 2000 - October 2007) – Divisional CFO responsible for all accounting, finance and planning for Oxy's largest division. Led Sarbanes-Oxley implementation. Member of the multi-function leadership team. Operations included over 200,000 barrels of daily oil production, waterfloods, $CO_2$ floods, gas plants and large capital projects over a wide area of West Texas and SE New Mexico.

**Manager, Operations Support** (Los Angeles, October 1998 - March 2000) – Supported the VP of Worldwide Operations on a variety of issues including activity coordination, policy development, project evaluations, project support, planning and budgeting.

**Vice President of Finance, Netherlands** (Zoetermeer, December 1994 - October 1998) – Divisional CFO based in the Netherlands. Responsible for all accounting, finance and planning for an offshore gas production and pipeline operation.

**Director of International Finance** (Bakersfield, June 1991 - December 1994) – Responsible for financial planning, project evaluations and acquisitions/divestitures for all international operations. Worked on projects in a variety of contract/fiscal regimes including Argentina, Colombia, Venezuela, Bangladesh, Oman, Qatar, Algeria, and Russia.

**Oxy (Continued)**

**Manager, Acquisition and Divestiture Analysis** (Los Angeles, June 1988 - June 1991) – Performed acquisition reviews and worked on divestiture activities from Oxy's corporate headquarters. Was extensively involved in the initial public offering of IBP Inc., which was the largest IPO in U.S. history at the time. Worked closely on Oxy's $1.5 billion divestiture of its UK operation.

**Sr. Financial Analyst** (Los Angeles, October 1985 - June 1988) – Coordinated headquarters-level planning and budgeting with business units and performed capital project evaluations.

**Auditor** (October 1983 - October 1985) – Performed oil-and-gas-related internal audits at multiple Oxy locations. International locations included China, Bolivia, UK, Spain and the Netherlands.

## EDUCATION

BBA/Accounting, University of Texas at Austin (1979)
MBA/Finance, University of Houston (1982)

## CERTIFICATIONS

Certified Public Accountant, Licensed in the State of Texas
Fundamentals of Sustainability Accounting (FSA) Credential Holder (SASB/ISSB/IFRS)
GRI Certified Sustainability Professional
Certificate in Petroleum Land Management (PETEX)
Certifications Previously Obtained but Not Actively Maintained (Stopped Annual Renewals)
- COPAS Accredited Petroleum Accountant (APA)
- Certified Management Accountant (CMA)
- Certified Treasury Professional (Association for Financial Professionals)

## OTHER

Former chairman of the API Upstream Accounting Subcommittee
Served on the COPAS Board of Examiners for the Accredited Petroleum Accountant Program
Served on the IPAA/PESA Energy Education Center Board of Advisors
Member of the Association of International Energy Negotiators (AIEN)

# EXHIBIT "B"

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# FORM 8-K

**CURRENT REPORT**
**Pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): **June 20, 2023**

# Next Bridge Hydrocarbons, Inc.

(Exact name of registrant as specified in its charter)

**Nevada**
(State or other jurisdiction
of incorporation)

| | |
|---|---|
| **333-266143**<br>(Commission File Number) | **87-2538731**<br>(IRS Employer Identification No.) |
| **6300 Ridglea Place, Suite 950**<br>**Fort Worth, Texas**<br>(Address of principal executive offices) | **76116**<br>(Zip Code) |

**(817) 438-1937**
Registrant's telephone number, including area code

**Not applicable**
(Former name or former address, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act: **None**

Check the appropriate box below if the form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

o Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

o Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

o Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

o Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company x

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. o

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On June 21, 2023, Next Bridge Hydrocarbons, Inc. (the "Company") announced that the Board of Directors of the Company (the "Board") voted to increase the size of the Board to six members and appoint Gregory McCabe to fill the newly created directorship as a director and as the Chairman of the Board to be effective on June 20, 2023, and to serve until the Company's 2023 Annual Meeting (when he will stand for election). In connection with such appointment as Chairman of the Board, Clifton DuBose, Jr. will step down as the Chairman, but he will continue to serve as a director as well as the Chief Executive Officer of the Company. Mr. DuBose will also continue to serve as a member of the Environmental, Social and Governance Committee of the Board. Mr. DuBose's decision to resign as Chairman is not the result of any disagreement with the Company or the Board.

Mr. McCabe will be compensated in accordance with the Company's standard compensation policies and practices for non-employee members of the Board. There are no arrangements or understandings between Mr. McCabe and any other person pursuant to which Mr. McCabe was appointed as a director.

Transactions with Mr. McCabe

Mr. McCabe is a significant shareholder of the Company, holding 27.8% of the outstanding shares of common stock of the Company as of March 31, 2023.

*Acquisition of Working Interests*

In connection with the terms of the Purchase Agreement, dated August 7, 2014, among Hudspeth Oil Corporation ("Hudspeth"), McCabe Petroleum Corporation ("MPC") and Mr. McCabe and pursuant to the Participation Agreement, dated September 23, 2014, by and between MPC, Mr. McCabe and Hudspeth, Mr. McCabe has, at his option, a 10% working interest back-in after payout and a reversionary interest if drilling obligations are not met, all under the terms and conditions of a participation and development agreement among Hudspeth, MPC and Mr. McCabe. Mr. McCabe also holds a 4.5% overriding royalty interest in the Orogrande acreage.

Pursuant to the Settlement & Purchase Agreement with Founders Oil & Gas Operating, LLC, whereby Hudspeth and Wolfbone Investments LLC ("Wolfbone"), subsidiaries of the Company, obtained a collective 50% working interest in the oil and gas leases of the Orogrande Project, with each entity receiving 25% working interest.

Under that certain Farmout Agreement, by and among Hudspeth, Pandora Energy LP, Founders Oil & Gas, LLC, MPC and Mr. McCabe dated as of September 23, 2015, as amended, future well capital spending obligations remained the same 50% contribution from Hudspeth and 50% from Wolfbone until such time as the $40.5 million to be spent on the project. With such $40.5 million threshold being met, Wolfbone will bear 25% of the costs of the wells being drilled in the Orogrande acreage going forward provided that Wolfbone elects to participate in drilling such wells.

Additionally, Mr. McCabe owns a controlling interest in Magdalena, an entity that holds a 4.5% overriding royalty interest in the Orogrande acreage. Magdalena's overriding royalty interest in the Orogrande acreage, which was obtained prior to, and was not a part of any of the transactions with the Company or its subsidiaries.

Torchlight Energy Inc., a subsidiary of the Company, previously acquired from MPC a 66.66% working interest in approximately 12,000 acres in the Midland Basin. As part of that transaction, MPC, Torchlight Energy Inc. and Imperial Exploration, LLC entered into a Participation Agreement effective as of May 1, 2016. MPC and another unrelated working interest owner retained a back-in after payout working interest of 25% in that same acreage, and the interest will be triggered back to MPC upon the proceeds from production equal the costs of developing the project area.

PL. APP. 015

On December 21, 2022, the Company entered into a Merger Agreement, pursuant to which in a series of transactions the Orogrande Properties (as defined in the Merger Agreement) owned by Wolfbone were assigned to Hudspeth (or its designated assignee) in consideration of (1) treating the Orogrande Obligations (as defined in the Merger Agreement) as having been irrevocably satisfied and discharged in full with respect to MPC and (2) an issuance of 56,297,638 shares of our common stock to Mr. McCabe (such series of transactions collectively, the “Merger”). The Merger was completed in April 2023 in accordance with the Texas Business Organizations Code, whereby Wolfbone became a direct and wholly-owned subsidiary of the Company and the Company acquired Wolfbone’s 22.6249% working interest in the oil and natural gas properties covering approximately 134,000 acres located in the Orogrande Basin in West Texas in Hudspeth County, Texas.

*Reimbursement Obligations*

Pursuant to an Option Agreement, dated August 13, 2020, by and among Masterson Hazel Partners, LP, Torchlight Energy, Inc. and Torchlight Hazel, LLC, Masterson Hazel Partners, LP is entitled to reimbursement for its cost of the development activity to the extent that the wells produced revenues beyond the date of the option’s lapse until the total amount of development expenses are reimbursed. As of March 31, 2023, there was an outstanding cost reimbursement balance in the amount of $3,671,688. Additionally, MPC holds a reversionary interest burdening our proportionate interest in the Hazel Project of 20% pursuant to the terms of the Option Agreement.

*The Company’s 2022 Note*

On December 22, 2022, the Company issued an unsecured promissory note in the principal amount of up to $20 million in favor of Mr. McCabe (the “2022 Note”). The 2022 Note bears interest at 5% per annum, computed on the basis of a 365-day year, maturing October 3, 2023. As of March 31, 2023, the Company had $16,875,000 in principal amount outstanding and $3,125,000 of available borrowings under the 2022 Note.

A copy of the press release announcing the appointment of Mr. McCabe is attached as Exhibit 99.1 to this Form 8-K and incorporated herein by reference.

**Item 9.01 Financial Statements and Exhibits.**

(d) Exhibits.

| *Exhibit Number* | *Description* |
|---|---|
| 99.1 | Press release dated June 21, 2023 |
| 104 | Cover Page Interactive Data File (embedded within the Inline XBRL document). |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

NEXT BRIDGE HYDROCARBONS, INC.

Date: June 20, 2023

By: /s/ Clifton DuBose, Jr.
Name: Clifton DuBose, Jr.
Title: Chief Executive Officer

# EXHIBIT “C”

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# FORM 8-K

**CURRENT REPORT**
**Pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): **January 15, 2024**

# Next Bridge Hydrocarbons, Inc.

(Exact name of registrant as specified in its charter)

**Nevada**
(State or other jurisdiction
of incorporation)

| | |
|---|---|
| **333-266143**<br>(Commission File Number) | **87-2538731**<br>(IRS Employer Identification No.) |
| **6300 Ridglea Place, Suite 950**<br>**Fort Worth, Texas**<br>(Address of principal executive offices) | **76116**<br>(Zip Code) |

**(817) 438-1937**
Registrant's telephone number, including area code

**Not applicable**
(Former name or former address, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act: **None**

Check the appropriate box below if the form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

o Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

o Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

o Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

o Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered. |
|---|---|---|
| N/A | N/A | N/A |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company x

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. o

**PL. APP. 019**

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

***Resignations of Mr. Clifton DuBose, Jr. and Mr. Luke Hawkins***

On January 15, 2024, Clifton DuBose, Jr. provided to Next Bridge Hydrocarbons, Inc. (the "Company") a notice of his resignation from the Board of Directors (the "Board") and as Chief Executive Officer and President of the Company and all positions held at each of its subsidiaries. In addition, Luke Hawkins provided to the Company a notice of his resignation as Chief Financial Officer of the Company and all positions held at each of its subsidiaries, each effective as of January 15, 2024. Each of Messrs. DuBose's and Hawkins' decision to resign did not result from any disagreement with the Company on any matter relating to the Company's operations, policies or practices.

***Appointment of Mr. Gregory McCabe, Mr. Edward Pocock III and Mr. Roger Wurtele***

On January 19, 2024, the Board announced that it has appointed Gregory McCabe, the current Chairman of the Board, as Chief Executive Officer of the Company, effective as of January 15, 2024. Mr. McCabe will serve as the Company's principal executive officer and will continue to serve on the Board. The Board also announced the appointment of Edward Pocock III as a director to serve on the Board until the next annual meeting and the appointment of Roger Wurtele as the Chief Financial Officer of the Company. Mr. Wurtele will serve as the Company's principal financial and accounting officer. There is no arrangement or understanding between Mr. McCabe, Mr. Pocock and Mr. Wurtele, on the one hand, and any other person, on the other hand, pursuant to which they were selected as a director or officer of the Company, as applicable, and there are no family relationships between any of them and any of the Company's other directors or executive officers. There are no transactions to which the Company is a party and in which either Mr. Pocock or Mr. Wurtele has a direct or indirect material interest that would be required to be disclosed under Item 404(a) of Regulation S-K. In connection with his appointment, the Company will enter into an indemnification agreement with Mr. Pocock that is substantially the same as those entered into with other directors of the Company.

*Gregory McCabe*

Mr. McCabe, age 63, has served as Chair of the Board since June 2023. Mr. McCabe owns and is the President of McCabe Petroleum Corporation ("MPC"). Mr. McCabe has active ownership in several other oil and gas entities including Manix Royalty, Texas Rock Oil, TRO-X, and McCabe Minerals and Royalties. Working with geologist, Rich Masterson, Mr. McCabe was extremely active in the early development of the Wolfbone play in the Delaware Basin portion of the Permian Basin. The experience and knowledge learned in the Wolfbone play helped formulate Mr. McCabe and Mr. Masterson's theories and concepts regarding the Orogrande Basin. In addition to his work in the Orogrande and Delaware Basins of Texas and New Mexico, Mr. McCabe has explored for oil and gas throughout the U.S., including Louisiana, Utah, Arizona, Montana, and Nebraska. Mr. McCabe has been involved in numerous oil and gas ventures throughout his career and has a vast experience in technical evaluation, operations and acquisitions and divestitures. Mr. McCabe received his Bachelor of Science degree in Geology in 1984 from Sul Ross State University.

Transactions between the Company and Stockholder Gregory McCabe

Mr. McCabe is a significant shareholder and holds 27.8% of the outstanding shares of common stock of the Company as of December 21, 2023.

*McCabe Contribution Agreement*

The Company, MPC and Mr. McCabe entered into a Contribution Agreement, dated July 25, 2023 (the "Contribution Agreement"), pursuant to which (i) Mr. McCabe agreed to contribute to the Company (i) up to one hundred percent (100%) of the interest currently held by MPC in the drilling project located on over 1,150 acres in Vermillion Parish, Louisiana (the "Bronco Prospect") and (ii) up to ten percent (10%) back-in working interest option for the Orogrande Project exercisable following the point in time at which the proceeds of all production from all operations conducted on the Orogrande Project (exclusive of royalty, overriding royalty and taxes chargeable to the working interest) equals the actual cost incurred by the Company and its predecessors in drilling, testing, equipping and the cost of operating the wells located on the Orogrande Prospect, inclusive of overhead charges (the "Back-In Interest"), in each case, in proportion to the percentage of shares of common stock of the Company that are directly registered in the name of the beneficial owner on the books and records of the Company's transfer agent, whether previously registered directly or previously held through a bank, broker or other nominee who instruct such bank, broker or other nominee and transferred to the beneficial owner on the books and records maintained by its transfer agent on or prior to the record date, provided that such shares remain directly registered for the holding period.

*Acquisition of Working Interests*

In connection with the terms of a Purchase Agreement, dated August 7, 2014, among Hudspeth Oil Corporation, a Texas corporation and wholly owned subsidiary of the Company ("Hudspeth"), MPC and Mr. McCabe and pursuant to a participation agreement, dated September 23, 2014, as amended, Mr. McCabe has, at his option, the Back-In Interest after payout and a reversionary interest if drilling obligations are not met, all under the terms and conditions of a participation and development agreement among Hudspeth, MPC and Mr. McCabe. Mr. McCabe also holds a 4.5% overriding royalty interest in the Orogrande acreage. Such Back-In Interest is subject to the above-referenced Contribution Agreement and may be contributed to the Company as described above.

Under that certain Farmout Agreement, by and among Hudspeth, Pandora Energy LP, Founders Oil & Gas, LLC, MPC and Mr. McCabe dated as of September 23, 2015, as amended, future well capital spending obligations remained the same 50% contribution from Hudspeth and 50% from Wolfbone Investments, LLC, a Texas limited liability company ("Wolfbone") until such time as the $40.5 million to be spent on the project. With such $40.5 million threshold being met, Wolfbone will bear 25% of the costs of the wells being drilled in the Orogrande acreage going forward provided that Wolfbone elects to participate in drilling such wells.

Additionally, Mr. McCabe owns a controlling interest in Magdalena, an entity that holds a 4.5% overriding royalty interest in the Orogrande acreage. Magdalena's overriding royalty interest in the Orogrande acreage, which was obtained prior to, and was not a part of any of the transactions with the Company or its subsidiaries.

Torchlight Energy Inc., a subsidiary of the Company, previously acquired from MPC a 66.66% working interest in approximately 12,000 acres in the Midland Basin. As part of that transaction, MPC, Torchlight Energy Inc. and Imperial Exploration, LLC entered into a Participation Agreement effective as of May 1, 2016. MPC and another unrelated working interest owner retained a back-in after payout working interest of 25% in that same acreage, and the interest will be triggered back to MPC upon the proceeds from production equal the costs of developing the project area.

On December 21, 2022, the Company entered into a Merger Agreement, pursuant to which in a series of transactions the Orogrande Properties (as defined in the Merger Agreement) owned by Wolfbone were assigned to Hudspeth (or its designated assignee) in consideration of (1) treating the Orogrande Obligations (as defined in the Merger Agreement) as having been irrevocably satisfied and discharged in full with respect to MPC and (2) an issuance of 56,297,638 shares of the Company's common stock to Mr. McCabe (such series of transactions collectively, the "Merger"). The Merger was completed in April 2023 in accordance with the Texas Business Organizations Code, whereby Wolfbone became a direct and wholly-owned subsidiary of the Company and the Company acquired Wolfbone's 22.6249% working interest in the oil and natural gas properties covering approximately 134,000 acres located in the Orogrande Basin in West Texas in Hudspeth County, Texas.

*Reimbursement Obligations*

In August 2020, the Company's subsidiaries entered into an Option Agreement with MHP (the "Option Agreement"), pursuant to which MHP is entitled to reimbursement for its cost of the development activity to the extent that the wells produced revenues beyond the date of the option's lapse until the total amount of development expenses are reimbursed. As of September 30, 2023, there was an outstanding cost reimbursement balance in the amount of $3,524,467. Additionally, MPC holds a reversionary interest burdening the Company's proportionate interest in the Hazel Project of 20% pursuant to the terms of the Option Agreement.

**PL. APP. 021**

*Indebtedness*

On December 22, 2022, the Company issued an unsecured promissory note in the principal amount of up to $20 million in favor of Mr. McCabe (the "2022 Note"). The 2022 Note bears interest at 5% per annum, computed on the basis of a 365-day year, maturing March 31, 2024. As of September 30, 2023, the Company had $20 million in principal amount outstanding under the 2022 Note.

On August 7, 2023, Mr. McCabe and Meta Materials, Inc. ("Meta") entered into a Loan Sale Agreement whereby Mr. McCabe purchased from Meta (i) a $15 million note which bears interest at 8% per annum and matures March 31, 2024 (the "2021 Note"), and (ii) all outstanding loans made to the Company by Meta pursuant to a Loan Agreement, dated September 2, 2022 (the "Loan Agreement"), between the Company and Meta (the "Loan Purchase"). As a result of the Loan Purchase, Mr. McCabe replaced Meta as the lender and secured party under the 2021 Note and the Loan Agreement. Additionally, as part of the Loan Purchase, Meta assigned to Mr. McCabe its lien on 25% of the Orogrande Prospect. The Company's obligations and responsibilities under the 2021 Note and the Loan Agreement remain unchanged.

*Participation Agreement*

Effective as of October 6, 2023, the Company and certain investor participants (each a "Participant" and collectively the "Participants") entered into twenty-five separate Participation Agreements (the "Participation Agreements") to conduct drilling of wells in the Company's approximately 17,000 acre Johnson Prospect in Hudspeth County, Texas, which is a portion of the Company's Orogrande Project. Pursuant to the Participation Agreements, MPC, controlled by Mr. McCabe, along with the other Participants collectively funded $7,000,000, which will be used to (i) acquire the rights to drill on the Johnson Prospect and (ii) finance the drilling of five (5) vertical wells in the Johnson Prospect in connection with the Company's 2023 drilling program requirements under its University Lands Drilling and Development Unit Agreement. Mr. McCabe and the other Participants will have the right to participate in the drilling of additional wells on the Johnson Prospect in the future, including an additional five (5) vertical wells in locations determined by Hudspeth Operating, LLC, a Texas limited liability company and wholly owned subsidiary of Hudspeth, in its sole discretion, in 2024. The Participation Agreements provide for an initial allocation of the working interests and net revenue interests among each Participant and the Company and then a re-allocation upon payout or payment to such Participant of drilling and completion costs for each well drilled. Following payout, the Company will own 25% of working interest as described below and 18.75% net revenue interest in each well.

*Edward Pocock III*

Edward Pocock III, age 56, is a veteran and public servant with expertise in governmental relations. Mr. Pocock became a police officer in 1989, finishing his career as a Captain of Police in Southington, Connecticut, commanding both Patrol and Detective Divisions. During Mr. Pocock's tenure in law enforcement, he gained extensive investigative experience in a multitude of disciplines, including the investigation of embezzlement, fraud, theft, and the misapplication of funds. Administratively, Mr. Pocock upheld high ethical standards as the police evidence room manager, developing auditing procedures to meet or exceed state compliance standards. Additionally, Mr., Pocock provided counsel on multiple database development projects for the state and National Incident Reporting System (NIBRS) and has acted as an independent consultant for the last five years. Recognized by his community for strong leadership and integrity, Mr. Pocock's ability to match 'street' application with ethical and honest public policy is evident in his actions, where he was responsible for finances, policies, and lobbying efforts at both state and federal levels. Mr. Pocock received a B.S. degree from the Florida Institute of Technology, an M.S. from the University of Louisville, and holds a Six Sigma Black Belt from Villanova University.

*Roger Wurtele*

Since the formation of the Company in August 2022, Mr. Wurtele, age 76, has served as an independent financial consultant to the Company. Prior to the spin-off of the Company from its previous parent, Meta, in December 2022, Mr. Wurtele served as the Chief Financial Officer of Torchlight Energy Resources, the Company's predecessor, from September 2013 until its merger with Meta in June 2021. He is a versatile, experienced finance executive that has previously served as Chief Financial Officer for several public and private companies. He has a broad range of experience in public accounting, corporate finance and executive management. Mr. Wurtele previously served as CFO of Xtreme Oil & Gas, Inc. from February 2010 to September 2013. From May 2013 to September 2013 he worked as a financial consultant for the Company's predecessor. From November 2007 to January 2010, Mr. Wurtele served as CFO of Lang and Company LLC, a developer of commercial real estate projects. He graduated from the University of Nebraska and has been a certified public accountant for over 40 years.

**Item 7.01 Regulation FD**

On January 19, 2024, the Company issued a press release announcing the resignations of Messrs. DuBose and Hawkins, and the appointments of Messrs. McCabe, Pocock and Wurtele as described in Item 5.02.

The Company also announced preliminary results of its Johnson prospect drilling program. A copy of the press release is attached to this Current Report on Form 8-K as Exhibit 99.1.

The information furnished in this Item 7.01 shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, or otherwise subject to the liabilities of that section, nor shall such information be deemed incorporated by reference in any filing under the Securities Act of 1933, as amended, regardless of any general incorporation language in such filing, except as shall be expressly set forth by specific reference in such filing.

**Item 9.01 Financial Statements and Exhibits.**

(d) Exhibits

| **Exhibit** | **Description** |
|---|---|
| 99.1 | Press Release, dated January 18, 2024. |
| 104 | Cover Page Interactive Data File (embedded within Inline XBRL document). |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

NEXT BRIDGE HYDROCARBONS, INC.

Date: January 19, 2024

By: /s/ Gregory McCabe
Name: Gregory McCabe
Title: Chairman and Chief Executive Officer

# EXHIBIT "D"

| | |
|---|---|
| **From:** | Watts, Greg <GWatts@wsgr.com> |
| **Sent:** | Friday, March 1, 2024 2:17 PM |
| **To:** | Adam M Apton |
| **Cc:** | Rowe, Betty |
| **Subject:** | [External]Meta Materials Securities Class Action |

Adam,

I have conferred with Meta Materials and it has approved the revised statement below for posting on the claims administrator's website. Please let me know if you have any questions.

Greg

----

*NOTE: This Settlement resolves a lawsuit **by shareholders** against Meta Materials **related to the** merger **between Metamaterial Technologies and** Torchlight Energy Resources and shares purchased between September 21, 2020 and June 24, 2022. The Settlement does not relate to claims concerning the **subsequent** spin-off **of legacy Torchlight oil and gas assets involving** Meta Materials preferred shares ($MMTLP) or FINRA's trading halt on or around December 9, 2022. Your Meta Materials preferred shares and claims concerning FINRA's trading halt will remain unaffected regardless of whether you participate in the Settlement or exclude yourself from it. Please review the <u>Notice</u> carefully for further information concerning the Settlement.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT "E"

# Meta Materials Inc. Securities Litigation



## Home

***NOTE: This Settlement resolves a lawsuit by shareholders against Meta Materials related to the merger between Metamaterial Technologies and Torchlight Energy Resources and shares purchased between September 21, 2020 and June 24, 2022. The Settlement does not relate to claims concerning the subsequent spin-off of legacy Torchlight oil and gas assets involving Meta Materials preferred shares ($MMTLP) or FINRA's trading halt on or around December 9, 2022. Your Meta Materials preferred shares and claims concerning FINRA's trading halt will remain unaffected regardless of whether you participate in the Settlement or exclude yourself from it. Please review the Notice carefully for further information concerning the Settlement.***

**TO: ALL PERSONS OR ENTITIES WHO PURCHASED META MATERIALS INC. F/K/A TORCHLIGHT ENERGY RESOURCES, INC. SECURITIES FROM SEPTEMBER 21, 2020 TO JUNE 24, 2022, INCLUSIVE, OR HELD TORCHLIGHT ENERGY RESOURCES, INC. STOCK AT THE TIME OF ITS MERGER WITH METAMATERIAL, INC. ON JUNE 28, 2021.**

PLEASE READ THE NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION. PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE OF THE PROCEEDS OF THE SETTLEMENTS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM **POSTMARKED OR SUBMITTED ONLINE ON OR BEFORE JUNE 5, 2024 TO THE CLAIMS ADMINISTRATOR**.

A federal court authorized the Notice. This is not a solicitation from a lawyer.

**Shares and Time Period:** (I) Meta Materials Inc. f/k/a Torchlight Energy Resources, Inc. ("Meta Materials") (MMAT) common stock (CUSIP: 59134N104) and other Meta Materials securities purchased between September 21, 2020 and June 24, 2022, inclusive (the "Class Period"); (II) Torchlight Energy Resources, Inc. ("Torchlight") stock held as of May 5, 2021, the record date for shares eligible to vote on the merger with Metamaterial, Inc.; and (III) Torchlight stock held as of June 28, 2021, the date the merger with Metamaterial, Inc. closed.

**Settlement Fund:** $3,000,000.00 in cash. Your recovery will depend on the amount of shares purchased and the timing of your purchases and any sales. Depending on the number of eligible shares that participate in the settlement and when those shares were purchased and sold, Plaintiffs estimate the average cash recovery per share of common stock will be approximately $0.015 per share (assuming claims representing shares are filed) before deduction of court-approved fees and expenses.

**Reasons for Settlement:** Lead Plaintiffs' principal reason for entering into the settlement is the substantial certain cash benefit for the Settlement Class and the avoidance of the costs and risks associated with continued litigation, including the danger of no recovery for Members of the Class. Defendants are entering into the settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

**If the Class Action Had Not Settled:** Continuing with the case could have resulted in dismissal or loss at trial. The two sides do not agree on the amount of money that could have been won if Plaintiffs prevailed at trial. The parties also disagree about: (1) the method for determining whether the price of Meta Materials common stock was artificially inflated during the relevant period; (2) the amount of any such inflation; (3) the extent that various statements and/or omissions alleged by Plaintiffs were materially false or misleading; (4) the extent that various statements and/or omissions alleged by Plaintiffs influenced the trading price of Meta Materials securities during the Class Period; and (5) whether the statements and/or omissions alleged were material, false, misleading, or otherwise actionable under the securities laws.

**Attorneys' Fees and Expenses:** Plaintiffs are represented by Lead Counsel. Lead Counsel has not received any payment for their work investigating the facts, conducting this litigation or negotiating the settlement on behalf of Plaintiffs and the Settlement Class. Court-appointed Lead Counsel will ask the Court for an award of attorneys' fees equal to or less than $1,000,000 which amounts to one-third of the Settlement Fund, reimbursement of out-of-pocket litigation expenses not to exceed $60,000 to be paid from the Settlement Fund, and awards to Plaintiffs and other plaintiff representatives be approved up to $10,000. If the above amounts are requested and approved by the Court, the average cost per share of common stock will be $0.00535.

**Deadlines:**
Submit Claim: June 5, 2024
Request Exclusion: April 23, 2024
File Objection: April 23, 2024

**Court Hearing on Fairness of Settlement:** May 21, 2024 at 10:00 a.m.

**Claims Administrator:**
Meta Materials Inc. Securities Litigation
c/o Strategic Claims Services, Inc.
600 N. Jackson Street, Suite 205
Media, PA 19063
Toll-free: (866) 274-4004
Fax: (610) 565-7985
info@stategicclaims.net

**Lead Counsel:**
Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
aapton@zlk.com

© 2026 Meta Materials Inc. Securities Litigation. All Rights Reserved.

# EXHIBIT "F"

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, DC 20549**

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2021**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE TRANSITION PERIOD FROM TO**

**Commission File Number: 001-36247**

# Meta Materials Inc.

**(Exact Name of Registrant as Specified in its Charter)**

| | |
|---|---|
| **Nevada**<br>**(State or other jurisdiction of incorporation or organization)** | **74-3237581**<br>**(I.R.S. Employer Identification No.)** |
| **1 Research Drive**<br>**Dartmouth, Nova Scotia**<br>**(Address of principal executive offices)** | **B2Y 4M9**<br>**(Zip Code)** |

**Registrant's telephone number, including area code: (902) 482-5729**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, par value $0.001 per share** | **MMAT** | **Nasdaq Capital Market** |

Securities registered pursuant to Section 12(g) of the Act: **None**

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☒ NO ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. YES ☐ NO ☒

Indicate by check mark whether the Registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☒ NO ☐

Indicate by check mark whether the Registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the Registrant was required to submit such files). YES ☒ NO ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). YES ☐ NO ☒

The aggregate market value of the voting and non-voting common equity held by non-affiliates of the Registrant, based on the closing price of the shares of common stock on June 30, 2021, was $1,523,026,255.

The number of shares of Registrant's Common Stock outstanding as of March 1, 2022 is 284,812,797.

DOCUMENTS INCORPORATED BY REFERENCE

The information called for by Part III of this Form 10-K will be included in an amendment to this Form 10-K, which will be filed within 120 days after the registrant's fiscal year ended.

**PL. APP. 031**

| | | Page |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 3 |
| Item 1A. | Risk Factors | 9 |
| Item 1B. | Unresolved Staff Comments | 17 |
| Item 2. | Properties | 18 |
| Item 3. | Legal Proceedings | 19 |
| Item 4. | Mine Safety Disclosures | 20 |
| **PART II** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 21 |
| Item 6. | [Reserved] | 22 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 23 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 32 |
| Item 8. | Financial Statements and Supplementary Data | 32 |
| Item 9. | Changes in and Disagreements With Accountants on Accounting and Financial Disclosure | 82 |
| Item 9A. | Controls and Procedures | 82 |
| Item 9B. | Other Information | 84 |
| Item 9C. | Disclosure Regarding Foreign Jurisdictions that Prevent Inspections | 84 |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 84 |
| Item 11. | Executive Compensation | 84 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 84 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 84 |
| Item 14. | Principal Accounting Fees and Services | 84 |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 84 |
| Item 16. | Form 10-K Summary | 86 |

**NOTE ABOUT FORWARD-LOOKING STATEMENTS**

This Annual Report on Form 10-K contains forward-looking statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. All statements contained in this Annual Report on Form 10-K other than statements of historical fact, including statements regarding the Company's future results of operations and financial position, its business strategy and plans, and its objectives for future operations, are forward-looking statements. The words "believe," "may," "will," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions are intended to identify forward-looking statements. The Company has based these forward-looking statements largely on its current expectations and projections about future events and trends that it believes may affect its financial condition, results of operations, business strategy, short-term and long-term business operations and objectives, and financial needs. These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those described in Part I, Item 1A, "Risk Factors" in this Annual Report on Form 10-K. Moreover, the Company operates in a very competitive and rapidly changing environment. New risks emerge from time to time. It is not possible for management to predict all risks, nor can they assess the impact of all factors on the Company's business or the extent to which any factor, or combination of factors, may cause actual results to differ materially from those contained in any forward-looking statements the Company may make. In light of these risks, uncertainties and assumptions, the future events and trends discussed in this Annual Report on Form 10-K may not occur and actual results could differ materially and adversely from those anticipated or implied in the forward-looking statements.

**Item 1. Business.**

**Business Overview**

Meta Materials Inc. (the “Company” or “META” or “Resulting Issuer”) is a developer of high-performance functional materials and nanocomposites.

The Company’s registered office is located at 85 Swanson Road, Boxborough, Massachusetts 01719, and its principal executive office is located at 1 Research Drive, Halifax, Nova Scotia, Canada.

The Company has generated a portfolio of intellectual property and is now moving toward commercializing products at a performance and price point combination that has the potential to be disruptive in multiple market verticals. The Company’s platform technology includes holography, lithography, and medical wireless sensing. The underlying approach that powers the Company’s platform technologies comprises advanced materials, metamaterials and functional surfaces. These materials include structures that are patterned in ways that manipulate light, heat, and electromagnetic waves in unusual ways. The Company’s advanced structural design technologies and scalable manufacturing methods provide a path to broad commercial opportunities in aerospace and defense, automotive, energy, healthcare, consumer electronics, and data transmission.

Controlling light, heat, electricity, and radio waves have played key roles in technological advancements throughout history. Advances in electrical and electromagnetic technologies, wireless communications, lasers, and computers have all been made possible by challenging the understanding of how light and other types of energy naturally behave, and how it is possible to manipulate them.

Over the past 20 years, techniques for producing nanostructures have matured, resulting in a wide range of groundbreaking solutions that can control light, heat, and electromagnetic waves at very small scales. Some of the areas of advancement that have contributed to these techniques are photonic crystals, nanolithography, plasmonic phenomena and nanoparticle manipulation. From these advances, a new branch of material science has emerged – metamaterials. Metamaterials are composite structures, consisting of conventional materials such as metals and plastics, which are engineered by scientists to exhibit new or enhanced properties relating to reflection, refraction, diffraction, filtering, conductance and other properties that have the potential for multiple commercial applications.

A metamaterial typically consists of a multitude of structured unit nano-cells that are comprised of multiple individual elements. These are referred to as meta-atoms. The individual elements are usually arranged in periodic patterns that, together, can manipulate light, heat, or electromagnetic waves. Development strategies for metamaterials and functional surfaces focus on structures that produce unusual and exotic electromagnetic properties by manipulating light and other forms of energy in ways that have never been naturally possible. They gain their properties not as much from their composition as from their exactingly designed structures. The precise shape, geometry, size, orientation, and arrangement of these nanostructures affect the light and other electromagnetic waves to create material properties that are not easily achievable with conventional materials.

The Company has many product concepts currently in various stages of development with multiple potential customers in diverse market verticals. The Company’s business model is to co-develop innovative products or applications with industry leaders that add value. This approach enables the Company to understand market dynamics and ensure the relevance and need for its products.

***Continuing Drilling Obligations Under Leases May Not be Met.***

The leases for the Orogrande properties include additional drilling requirements for 2022 and 2023. The Company is intending to sell or spin out the leases in 2022 and transfer the ongoing obligations to the new owners of the leases. If such a transfer is not completed in a timely manner in 2022, the Company may be forced to seek an extension from the lessor of the lease drilling obligations or fund the additional activities out of working capital which could adversely impact the Company’s financial condition.

***The Company's Ability to Maintain its Rights Under the Leases is Dependent on Numerous Factors Outside of its Control.***

The leased assets are held for sale. The Company's ability to attract capital to enable on-going compliance with the lease obligations depends upon numerous factors largely beyond our control. These factors include:

- oil, NGLs and natural gas prices;
- global supply and demand for oil, NGLs and natural gas;
- the overall state of the financial markets, including investor appetite for debt and equity securities issued by oil and natural gas companies and the effects of economic recessions or depressions;
- the ability to secure and maintain financing on acceptable terms;
- legislative, environmental and regulatory matters;
- oil and natural gas reservoir quality;
- the availability of drilling rigs, completions equipment and other facilities and equipment;
- the ability to access lands;
- the ability to access water for hydraulic fracturing operations;
- reliance on vendors, suppliers, contractors and service providers;
- shortages of sufficiently skilled labor, or labor disagreements resulting in unplanned work stoppages;
- changes to free trade agreements;
- inflation and other unexpected cost increases, including with respect to materials and labor;
- prevailing interest and foreign exchange rates;
- royalty and tax rates;
- physical impacts from adverse weather conditions and natural disasters;
- transportation and processing interruptions or constraints, including the availability and proximity of pipeline and processing capacity;
- technology failures; and accidents

**Risks Related to Legal Matters**

***Litigation***

The Company is currently subject to securities class action litigation and may be subject to similar or other litigation in the future, all of which will require significant management time and attention, result in significant legal expenses and may result in unfavorable outcomes, which may have a material adverse effect on the Company's business, operating results and financial condition, and negatively affect the price of its common stock.

The Company is, and may in the future become, subject to various legal proceedings and claims that arise in or outside the ordinary course of business. For example, the Company currently has securities class action complaints pending against itself, its chief executive officer, and its chief financial officer, asserting that they made false or misleading statements. The complaints seek monetary damages, costs and expenses. For more information, see “Item 3. Legal Proceedings” in this Annual Report on Form 10-K and “Note 28 – Commitments and Contingencies” of the Company's consolidated financial statements included elsewhere in this report.

The Company cannot predict the outcome of these proceedings or provide an estimate of potential damages, if any. The Company believes that the claims in the securities class actions are without merit and intend to defend against them vigorously. Regardless, failure by the Company to obtain a favorable resolution of the claims set forth in the complaints could require it to pay damage awards or otherwise enter into settlement arrangements for which its insurance coverage may be insufficient. Any such damage awards or settlement arrangements in current or future litigation could have a material adverse effect on the Company's business, operating results or financial condition. Even if plaintiffs' claims are not successful, defending against class action litigation is expensive and could divert management's attention and resources, all of which could have a material adverse effect on its business, operating results and financial condition and negatively affect the price of its common stock. In addition, such lawsuits may make it more difficult for the Company to finance its operations in the future.

***Ongoing Government Investigation by the SEC***
In September 2021, the Company received a subpoena from the Securities and Exchange Commission, Division of Enforcement, in a matter captioned *In the Matter of Torchlight Energy Resources, Inc.* The subpoena requests that the Company produces certain documents and information related to, among other things, the merger involving Torchlight Energy Resources, Inc. and Metamaterial Inc. The Company is cooperating and intends to continue to cooperate with the SEC's investigation. Investigations of this nature are inherently uncertain and their results cannot be predicted. Regardless of the outcome, the SEC Investigation has had and may continue to have an adverse impact on the Company because of legal costs, diversion of management resources, and other factors. The SEC Investigation could also result in reputational harm to the Company, which, among other things, may limit its ability to obtain new customers and enter into new agreements with its existing customers, or its ability to obtain financing, and have a material adverse effect on its current and future business, financial condition, results of operations and prospects.

**Risks Related to Financial Reporting**

***Material Weakness in Internal Controls over Financial Reporting***
Management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) and for evaluating and reporting on the effectiveness of our system of internal control. Effective internal controls are necessary for the Company to provide timely, reliable and accurate financial reports, identify and proactively correct any deficiencies, material weaknesses or fraud and meet our reporting obligations. As disclosed in Part II, Item 9A, Management identified material weaknesses during fiscal year 2021. Remediation efforts place a significant burden on management and add increased pressure on its financial reporting resources and processes. If the Company is unable to successfully remediate this material weakness in a timely manner, or if any additional material weaknesses in our internal control over financial reporting are identified, the accuracy of our financial reporting and the Company's ability to timely file with the SEC may be adversely impacted. In addition, if the Company's remedial efforts are insufficient, or if additional material weaknesses or significant deficiencies in its internal controls occur in the future, the Company could be required to restate our financial statements, which could materially and adversely affect its business, results of operations and financial condition, restrict its ability to access the capital markets, require it to expend significant resources to correct the material weaknesses or deficiencies, subject the Company to regulatory investigations and penalties, harm its reputation, cause a decline in investor confidence or otherwise cause a decline in its stock price.

**Item 1B. Unresolved Staff Comments.**
None.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

| | | |
|---|---|---|
| | | Meta Materials Inc. |
| Dated: March 1, 2022 | By: | /s/ George Palikaras |
| | | George Palikaras<br>*President, Chief Executive Officer and*<br>*(Principal Executive Officer)* |
| Dated: March 1, 2022 | By: | /s/ Ken Rice |
| | | Ken Rice<br>*Chief Financial Officer and Executive Vice President*<br>*(Principal Financial and Accounting Officer)* |

**POWER OF ATTORNEY**

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints George Palikaras and Ken Rice and each of them, as his or her true and lawful attorneys-in-fact and agents, with full power of substitution and resubstitution, for him or her and in his or her name, place and stead, in any and all capacities, to sign any and all amendments to this Annual Report on Form 10-K, and to file the same, with all exhibits thereto, and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents, and each of them, full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection therewith, as fully to all intents and purposes as he or she might or could do in person, hereby ratifying and confirming that all said attorneys-in-fact and agents, or any of them or their or his or her substitute or substitutes, may lawfully do or cause to be done by virtue hereof.
Pursuant to the requirements of the Securities Exchange Act of 1934, this Annual Report on Form 10-K has been signed by the following persons on behalf of the Registrant and in the capacities and on the dates indicated:

| Signature | Title | Date |
|---|---|---|
| /s/ Georgios Pallifaras<br>**Georgios Palikaras** | Chief Executive Officer<br>*(Principal Executive Officer)* | 1-Mar-22 |
| /s/ Kenneth Rice<br>**Kenneth Rice** | Chief Financial Officer<br>*(Principal Financial Officer)* | 1-Mar-22 |
| /s/ Jonathan Waldern<br>**Jonathan Waldern** | Chief Technology Officer<br>*(Principal Technology Officer)* | 1-Mar-22 |
| /s/ Ram Ramkumar<br>**Ram Ramkumar** | Chairman and Director | 1-Mar-22 |
| /s/ Maurice Guitton<br>**Maurice Guitton** | Director | 1-Mar-22 |
| /s/ Allison Christilaw<br>**Allison Christilaw** | Director | 1-Mar-22 |
| /s/ Steen Karsbo<br>**Steen Karsbo** | Director | 1-Mar-22 |
| /s/ Eric Leslie<br>**Eric Leslie** | Director | 1-Mar-22 |
| /s/ Ken Hannah<br>**Ken Hannah** | Director | 1-Mar-22 |

# EXHIBIT “G”

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- v -<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>Defendants. | Civ. Action No. 4:24-cv-1048-SDJ |

**DECLARATION OF RYAN D. LANTRY IN SUPPORT OF DEFENDANT BRDA'S MOTION TO EXCLUDE IMPROPERLY OBTAINED EVIDENCE**

I, Ryan D. Lantry, declare and state as follows:

1. I am an attorney of the law firm DLA Piper LLP (US) and counsel for Defendant John Brda in the above-captioned matter. I have personal knowledge of every fact stated in this Affidavit, each of which is within my personal knowledge and is true and correct to the best of my ability. I submit this declaration in support of Defendant John Brda's Motion to Exclude Improperly Obtained Evidence.

2. I am an attorney in good standing, licensed to practice law in the State of Texas by the Supreme Court of Texas, and I have continuously practiced law in Texas since my licensing in October 2021. I am also licensed to practice law in all federal courts in the State of Texas.

3. The Securities and Exchange Commission (the "**SEC**") issued a Formal Order of Investigation, styled *In the Matter of Torchlight Energy Resources, Inc.* (FW-04461) dated August 3, 2021.

**EXHIBIT**
**A**

4. Mr. Brda received a document subpoena dated April 14, 2022, as well as a testimony subpoena dated July 19, 2022.

5. Attached as **Exhibit A-1** is a true and correct copy of a document subpoena dated April 14, 2022 and a testimony subpoena dated July 19, 2022.

6. Mr. Brda produced responsive documents and sat for testimony on August 18, 2022 conducted.

7. On July 20, 2023, the SEC sent Mr. Brda a Wells Notice.

8. On January 17, 2024, Rogers notified Mr. Brda's counsel that the SEC had requested and received an extension of their deadline to file a case against Mr. Brda until April 16, 2024.

9. On May 20, 2024, Mr. Brda received a subpoena from the SEC for an investigation styled *In the Matter of MMTLP* (FW-04625), signed by Rogers.

10. On June 7, 2024, Rogers and Martin provided a copy of the SEC's Formal Order in the MMTLP Matter.

11. On June 18, 2024, counsel for Mr. Brda served an objection to the MMTLP Subpoena. Attached as **Exhibit A-2** is a true and correct copy of that objection.

12. Mr. Brda's counsel never received any response to the objection to the MMTLP Subpoena.

13. The SEC issued a subpoena to a third-party on or around December 2024, signed by Rogers. Attached as **Exhibit A-3** is a true and correct copy of the subpoena the SEC sent.

14. The SEC issued a subpoena to another third-party on or around December 2024, signed by Rogers. Attached as **Exhibit A-4** are true and correct excerpts of the subpoena the SEC sent.

15. In addition to the two subpoenas noted above, Mr. Brda is aware of at least two other subpoenas that the SEC has served on third parties and has reason to believe that additional subpoenas have been served.

16. Attached as **Exhibit A-5** is a true and correct copy of an Order issued in *In Matter of Morgan Asset Mgmt., Inc.*, Admin. Proceeding File No. 3-13847 (July 12, 2010).

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge.

Executed this 26th day of February, 2025, in Dallas, Texas.

Ryan D. Lantry

Ryan D. Lantry